Stephen W. Feingold (SF 2763)
Richard H. Brown (RB 5858)
Mark S. Morgan (MM 8799)
**DAY PITNEY LLP**
7 Times Square
New York, New York  10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc.*
*relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GMA ACCESSORIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> QUIKSILVER, INC., NORDSTROM, INC., SWELL, INC., JILL STUART, INC., and GURU DENIM, INC. <br><br> Defendants. | Case No. 07 CV 11527 (VM) <br><br><br> **ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS BY QUIKSILVER, INC., NORDSTROM, INC. AND SWELL, INC.** |

Defendants Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell,

Inc. ("Swell") (collectively referred to as "Defendants") by and through their counsel, as and for

their Answer to the Second Amended Complaint filed by plaintiff GMA Accessories, Inc. ("GMA"), sets forth the Answer and Affirmative Defense shown below. This Answer and Affirmative Defenses are asserted on behalf of Nordstrom and Swell only to the extent that the allegations in the Second Amended Complaint allege infringement by Nordstrom and/or Swell based on their sale advertising, or promotion of Quiksilver products bearing the name "Charlotte."

## NATURE OF THE CASE

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the unnumbered paragraph entitled NATURE OF THE CASE with respect to all the allegations therein except (i) Swell and Nordstrom admit that they each acquired from Quiksilver and Quiksilver admits that it sold to Swell and Nordstrom a limited number of hats and hoodies for which the word "charlotte" was used in lieu of a style number to identify the product to customers and (ii) Quiksilver admits that it owns a federal registration for ROXY, and (iii) to the extent that the last sentence of the NATURE OF THE CASE applies to any or all of them, Defendants collectively and individually deny that they have engaged in any "infringing conduct."

## PARTIES

1.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore deny the allegations of Paragraph 1.

2.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2, and therefore deny the allegations of Paragraph 2.

3.     Quiksilver admits that Quiksilver, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate offices located at 15202 Graham Street,

Huntington Beach, California 92649. Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

4.    Nordstrom admits that Nordstrom, Inc. is a corporation existing under the laws of the State of Washington with its principal corporate offices located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.  Quiksilver and Swell are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

5.    Swell admits that Swell, Inc. is a corporation existing under the laws of the State of Delaware with its principle corporate offices located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.  Quiksilver and Nordstrom are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

6.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 and therefore deny the same.

7.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 and therefore deny the same.

8.    Quiksilver admits that it sold to Swell and Nordstrom, and Swell and Nordstrom admit that they bought from Quiksilver "hats" and "hoodies" identified by the word "charlotte" in lieu of a style number and that they sold limited numbers of those products to consumers.  As to the remaining allegations in Paragraph 8, denied.

9.    Defendants deny as to themselves and are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 9 and therefore deny the same.

10.    Quiksilver denies the allegations in Paragraph 10, but Nordstrom and Swell are both without knowledge or information sufficient to form a belief as to the trusty or falsity of the allegations in Paragraph 10 and therefore deny the same.

11.    Nordstrom denies the allegations in Paragraph 11, but Quiksilver and Swell are both without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and therefore deny the same.

12.    Swell denies the allegations in Paragraph 12, but Quiksilver and Nordstrom are both without knowledge or information sufficient to form a belief as to the trusty or falsity of the allegations in Paragraph 12 and therefore deny the same.

13.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore deny the same.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 and therefore deny the same.

## JURISDICTION AND VENUE

15.    Defendants admit that this Court has jurisdiction over this action. Defendants deny the remaining allegations in Paragraph 15.

16.    Defendants admit that venue is proper in this District.

## FACTS

17.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 with respect to GMA's date of first use or the "date

4

of GMA's CHARLOTTE federal registrations" or the date of first use (if any) by any defendants not a party to this Answer, and deny that Defendants have used "charlotte" at any time in a trademark manner to designate a source.

18.     Denied.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and therefore deny the same.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 20 and therefore deny the same.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore deny the same.

22.     Defendants admit only that Plaintiff is the registered owner of Reg. No. 3,242,358.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 22 and therefore deny the same.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore deny the same.

24.     Defendants are unable to respond to the allegations of Paragraph 24 of the Second Amended Complaint because GMA uses the term "GMA Products" without having defined it in the Second Amended Complaint.  To the extent that "GMA Products" refers only to those items specifically identified in Paragraph 24, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore deny the same.

25.     Quiksilver admits the allegations in Paragraph 25, but Defendants Nordstrom and Swell state that they are without knowledge or information sufficient to form a belief as to the truth or falsity of Paragraph 34 and therefore deny same.

26.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore deny the same.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 and therefore deny the same.

28.     Denied.

29.     Denied.

30.     Defendants deny the allegations in Paragraph 30 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 with respect to any third parties and therefore deny the same.

31.     Quiksilver denies the allegations in Paragraph 31 to the extent that they refer to Quiksilver and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and therefore deny the same.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 and therefore deny the same.

32.     Denied.

33.     Defendants deny the allegations in Paragraph 33 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 with respect to any third parties and therefore deny the same.

34.     Defendants deny the allegations in Paragraph 34 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 with respect to any third parties and therefore deny the same.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Defendants deny the allegations in Paragraph 38 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 with respect to any third parties and therefore deny the same.

39.     Quiksilver denies the allegations in Paragraph 39, but Defendants Nordstrom and Swell state that they are without knowledge or information sufficient to form a belief as to the truth or falsity of Paragraph 39 and therefore deny same.

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 and therefore deny the same.

41.     Denied.

42.     Defendants deny the allegations in Paragraph 42 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 with respect to any third parties and therefore deny the same.

43.     Denied.

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and therefore deny the same.

45.     Quiksilver admits the allegations of Paragraph 45, but is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 45 and therefore deny the same, including any suggestion or implication that it had a duty or obligation to conduct a trademark search.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

46.     Nordstrom admits the allegations set forth in Paragraph 46.  Quiksilver and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

47.     Swell admits the allegations set forth in Paragraph 47.  Nordstrom and Quiksilver are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 47 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

48.     Denied.

49.     Quiksilver admits that it received cease and desist letters from GMA, but denies the remaining allegations in Paragraph 49**.** Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49 and therefore deny the same.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50 and therefore deny the same.

51.     Quiksilver admits that on September 26, 2007 it requested that GMA provide proof of its use in commerce of CHARLOTTE on hats and on each of the other goods in GMA's registrations.  See Ex. F. to Feingold Dec.  By a letter dated October 16, 2007, GMA provided pictures of hats with CHARLOTTE on hangtags.  GMA did not provide any evidence of any other use of CHARLOTTE.  Quiksilver denies the remaining allegations of Paragraph 51. Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51 and therefore deny the same.

52.     Quiksilver admits that it received a letter from GMA in November of 2007 and denies all other allegations in Paragraph 42.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52 and therefore deny the same.

53.     Defendants deny the allegations in Paragraph 53 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53 with respect to any third parties and therefore deny the same.

54.     Defendants admit that headgear, clothing, and bags are within Class 25 or Class 18 of the International Classification system used in the United States Patent and Trademark Office.  Defendants deny the remaining allegation in Paragraph 54.

55.     Denied.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56 and therefore deny the same.

9

57.    Denied.

58.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 58 and therefore deny the same.

## COUNT – I TRADEMARK INFRINGEMENT (FEDERAL)

59.    Denied.  Defendants repeat and reallege their responses to Paragraphs 1 through 58 as if fully set forth herein.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

## COUNT – II VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

69.    Denied.  Defendants further repeat and reallege their responses to Paragraphs 1 through 68 as if fully set forth herein.

70.    The allegations in Paragraph 70 are conclusions of law to which no response is required. To the extent the allegations of Paragraph 70 call for an answer, Defendants admit that GMA has selectively cited Section 360-1 of the New York General Business Law, but otherwise deny the remaining allegations in Paragraph 70.

71.    Denied.

10

72.    Denied.

73.    Denied.

74.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74 and therefore deny the same.

75.    Denied.

## COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

76.    Denied.  Defendants further repeat and reallege their responses to Paragraphs 1 through 75 as if fully set forth herein and otherwise deny the allegations in paragraph 76.

77.    Denied.

78.    Denied.

79.    Denied.

80.    Denied.

81.    Denied.

82.    Denied.

83.    Denied.

84.    Denied.

85.    Denied.

86.    Denied.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

11

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails to state any claims upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

GMA is barred from recovering damages or obtaining injunctive relief by the doctrines of estoppel, laches, waiver, acquiescence and/or unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Defendants adopt and incorporate by reference any and all presumptions and defenses which are or may become available to them pursuant to the Uniform Trade Secrets Act, Lanham Act, or any other applicable law, as a bar to GMA's claims.

## FOURTH AFFIRMATIVE DEFENSE

The conduct alleged in the Second Amended Complaint does not give rise to trademark infringement because it concerns the use of words in a non-designating source manner.

## FIFTH AFFIRMATIVE DEFENSE

GMA is not entitled to monetary damages because of a lack of willful infringement.

## SIXTH AFFIRMATIVE DEFENSE

GMA has not sustained any injury or damages as a result of any act or conduct by Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

GMA cannot recover for loss of customers or business occasioned by fair competition permitted by applicable law.

41871321.1

## EIGHTH AFFIRMATIVE DEFENSE

On information and belief, before filing this action, and before Defendants sold products bearing the CHARLOTTE name, GMA abandoned whatever rights it enjoyed in the CHARLOTTE name.  GMA ceased bona fide use in commerce of the CHARLOTTE name with an intent not to resume such use.

## NINTH AFFIRMATIVE DEFENSE

The CHARLOTTE name is not a protectable trademark in that it used as a style designation by multiple entities, some of whom, on information and belief, commenced use prior to GMA's alleged first use of the mark, that it has no source meaning to consumers for apparel and related products.

## TENTH AFFIRMATIVE DEFENSE

GMA's Federal Registrations for CHARLOTTE are subject to cancellation under the doctrine of fraud on the Trademark Office.

## ELEVENTH AFFIRMATIVE DEFENSE

CHARLOTTE is a generic term in the apparel industry when used as a style designation.

## TWELFTH AFFIRMATIVE DEFENSE

CHARLOTTE is primarily merely a surname without secondary meaning.

## THIRTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is geographically descriptive and lacks secondary meaning.

## FOURTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is geographically misdescriptive and therefore not protectable as a trademark.

41871321.1

## FIFTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is a common personal name and lacks secondary meaning.

## SIXTEENTH AFFIRMATIVE DEFENSE

The CHARLOTTE name is not a famous mark and lacks the requisite level of distinctiveness to qualify for protection under the New York State Anti-Dilution statute.

## SEVENTEENTH AFFIRMATIVE DEFENSE

On information and belief, one or more of the trademarks at issue is, or may be, unenforceable by reason of GMA's inequitable conduct, acts or omissions before the United States Patent and Trademark Office.

Defendants reserve the right to amend this Answer and to add, delete, or modify these defenses based upon legal theories that may, might or will be divulged through clarification of GMA's claims, through discovery, or through further legal analysis of GMA's position in this litigation.

## COUNTERCLAIMS

As and for their Counterclaims against Plaintiff and Counterclaim Defendant, GMA Accessories, Inc. ("GMA"), Defendants and Counterclaim Plaintiffs, Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell, Inc. ("Swell") (collectively "Counterclaimants") allege and says as follows:

## NATURE OF ACTION

1.      By way of these Counterclaims, Counterclaimants seek a declaratory judgment of non-infringement with respect to the use of "Charlotte" on Quiksilver products as a style designation.   Counterclaimants further seek cancellation of Plaintiff's federal trademark

14

registrations based on GMA's fraud before the U.S. Patent and Trademark Office and GMA's trademark misuse.

## JURISDICTION AND VENUE

2.        This is an action for that seeks the cancellation of certain trademarks pursuant to 15 U.S.C. §§ 1119 and 1120.  Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Counterclaimants seek a declaration of rights and/or other legal relations of the parties to this litigation with respect to an actual and justiciable controversy arising under the trademark laws of the United States, 15 U.S.C. 1051 *et seq.*

3.        This Court has jurisdiction over this matter pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq.*); 28 U.S.C. §§ 1331, 1338, and 1367; and the Declaratory Judgment Act (28 U.S.C. § 2201).

4.        Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because GMA resides within this judicial district.

## THE PARTIES

5.        Defendant/Counter-Claimant Quiksilver, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate offices located at 15202 Graham Street, Huntington Beach, California 92649.

6.        Defendant/Counter-Claimant Nordstrom, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate office located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.

7.        Defendant/Counter-Claimant Swell, Inc. is a corporation existing under the laws of the State of Delaware with its principle corporate office located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.

15

8.      Plaintiff and Counterclaim Defendant GMA Accessories, Inc. is a corporation existing under the laws of the State of New York with its principal corporate offices located at 1 East 33rd Street, New York, New York, 10016.

**GMA'S ALLEGED USE OF THE MARK CHARLOTTE**

9.      According to GMA's website (www.capelli-ny.com), it does business as Capelli New York and is in the business of selling fashion accessories and novelty items, such as hair accessories, socks, leg warmers, sandals, flip flops, slippers, plush toys, and pet accessories.

10.     Counterclaimants were not aware of GMA or its products until 2007 when GMA's counsel sent a cease and desist letter to Quiksilver. At that time, it came to Quiksilver's attention that GMA owned certain trademark registrations for CHARLOTTE and CHARLOTTE & FRIENDS.

11.     GMA asserts rights to the following U.S. trademark registrations and applications pending before the U.S. Patent and Trademark Office (collectively referred to as the "GMA Charlotte Marks"):

a.      U.S. Registration No. 2,216,405 issued on January 5, 1999, for the mark CHARLOTTE in International Class 26 for hair, accessories, namely, hair clips, scrunches, ribbons and braids.

b.      U.S. Registration No. 2,217,341 issued on January 12, 1999, for the mark CHARLOTTE in International Class 18 for sacks and bags, namely, handbags made of textiles and beads.

c.      U.S. Registration No. 2,535,454 issued on February 5, 2002, for the mark CHARLOTTE in International Class 25 clothing, footwear and headgear, namely hats, scarves, gloves and socks.

16

d.     U.S. Registration No. 2,561,025 issued on April 16, 2002, for the mark CHARLOTTE in International Class 9 for sunglasses.

e.     U.S. Registration No. 3,242,358 issued on May 15, 2007, for the mark CHARLOTTE in International Class 22 for bags for securing valuables; bands for wrapping or binding; belts, not of metal, for handling loads; fabric and polyester mesh net used for storing toys and other household items; garment bags for storage; mesh bags for storage; multi-purpose cloth bags; packaging bags of textile material; rice straw bags (kamasu); shoe bags for storage; string.

f.     Use-based Application filed on June 30, 2006 bearing Serial No. 78/921503 for the mark CHARLOTTE in International Class 14 for the following goods: bonnet pins of precious metal; bracelets of precious metal; brooches; buckles for watchstraps; charms; chokers; costume jewelry; cuff-links; earrings; gemstones; gold and its alloys; hat pins of precious metal; iridium and its alloys; jewelry; jewelry for the head; jewelry pins for use on hats; lapel pins; necklaces; ornamental pins; ornaments of precious metal; osmium and its alloys; pendants; picture frames of precious metal; platinum and its alloys; precious metal alloys; purses and wallets of precious metal; rhodium and its alloys; rings being jewelry; silver and its alloys; tiaras.

g.     Use-based Application filed October 2, 2006 bearing Serial No. 77/012104 for the mark CHARLOTTE in International Class 24, for the following goods: Bath linen; Bath sheets; Bath towels; Beach towels; Bed blankets; Bed linen; Bed Sheets; Blanket throws; Chenille fabric; Children's blankets; Children's towels; Cloth coasters; Cloth napkins for removing make-up; Comforters; Contoured mattress covers; Cotton based mix fabrics; Cotton fabric; Covered rubber yarn fabrics; Crepe cloth; Crib bumpers; Crib canopies; Curtain fabric;

Curtain loops of textile material; Curtains; Curtains made of textile fabrics; Diaper changing mats; Diaper changing pads not of paper; Dining linens; Dish cloths; Draperies; Dust ruffles; Duvet covers; Duvets; Eiderdown covers; Eiderdowns; Fabric diaper stackers; Fabric flags; Fabric for boots and shoes; Fabric of imitation animal skin; Fabric table runners; Fabric table toppers; Fabric valances; Fabric window coverings and treatments, namely curtains, draperies, sheers, swags and valances; Face towels; Feather beds; Felt and non-woven textile fabrics; Fiberglass fabrics for textile use; Fireproof upholstery fabrics; Fitted toilet lid covers; Flannel; Flax fabrics; Frieze; Gauze fabric; Gift wrap of fabric; Hand towels; Hand-towels made of textile fabrics; Hemp base mixed fabrics; Hemp yarn fabrics; Household linen; Inorganic fiber mixed fabrics; Jeans fabric; Jersey fabrics for clothing; Jersey material; Jute fabrics; Kitchen linens; Kitchen towels; Knitted fabrics; Knitted fabrics of chemical-fiber yarn; Knitted fabrics of cotton yarn; Knitted fabrics of wool yarn; Labels of cloth; Lap rugs; Mixed fiber fabrics; Narrow woven fabrics; Net curtains; Nylon fabric; Oil cloths; Pillow cases; Pillow covers; Pillow shams; Pillowcases; Place mats of textile material; Polyester fabric; Pot holders; Puffs; Quilts; Ramie fabric; Rayon fabric; Receiving blankets; Regenerated fiber yarn fabrics; Rubberized cloths; Sackcloth; Sail cloth; Semi-synthetic fiber fabrics; Shams; Shower curtains; Silk-cotton mixed fabrics; Synthetic fiber fabrics; Table cloths not of paper; Table linen; Taffeta; Tapestries of textile; Terry towels; Textile fabric of animal skins imitations; Textile fabrics for home and commercial interiors; Textile fabrics for lingerie; Textile fabrics for the manufacture of clothing; Textile labels; Throws; Ticking fabric; Towel sets; Towels; Traced cloths for embroidery; Tricot quilts; Tulle; Unfitted fabric furniture covers; Upholstery fabrics; Velvet; Wash cloths; Washcloths; Washing gloves; Washing mitts; Window curtains; Wool base mixed fabrics; Wool yarn fabrics; Woolen fabric; Woolen blankets; Worsted fabrics; Woven fabrics; Zephyr fabric.

h.    U.S. Registration No. 2,412,362 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 3 for cosmetics, namely perfume, lip gloss, and hair lotions.

i.    U.S. Registration No. 2,412,360 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 25 for clothing, footwear and headgear, namely hats, scarves, gloves, and socks.

j.    U.S. Registration No. 2,412,359 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 26 for hair accessories, namely, hair clips, scrunchees, ribbons, and braids.

k.    U.S. Registration No. 2,444,120 issued on April 17, 2001 for the mark CHARLOTTE & FRIENDS in International Class 28 for toys, namely plush animals.

l.    U.S. Registration No. 2,682,145 issued on February 4, 2003, for the mark CHARLOTTE & FRIENDS in International Class 9 for sunglasses.

12.    In connection with several of these registrations, an authorized representative of GMA swore in Section 8 & 15 Declarations (hereinafter "8&15 Declarations") that "[t]he owner is using or is using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods and/or services identified above . . . ."

13.    GMA submitted 8&15 Declarations in which an authorized representative of GMA swore under oath that CHARLOTTE and CHARLOTTE & FRIENDS was used in

19

connection with *all* the goods identified in, among others, each of the following Registrations: Reg. No. 2,217,341 (filed November 26, 2004); Reg. No. 2,216,405 (filed January 5, 1999), Reg. No. 2,535,454 (filed February 14, 2007); and Reg. No. 2,561,025 (filed May 22, 2007).

14.     An authorize representative of GMA further swore under oath that when filing these trademark applications for the GMA Charlotte Marks and related Statements of Use with respect to its intent-to-use applications that GMA was using the mark in connection with *all* the goods identified in those applications as of the date claimed.

15.     Upon information and belief, GMA's sworn statements in its intent-to-use applications, Statements of Use and 8&15 Declarations that it was using the GMA CHARLOTTE Marks on all the goods identified in those applications and registrations as of the dates claimed were false.

16.     In connection with at least some of the Section 8 and 15 Affidavits submitted by GMA relating to the Charlotte Marks, GMA submitted the identical specimen it submitted when it filed the underlying application approximately five years earlier.  On information and belief, GMA was no longer using said specimens in commerce when they were submitted in connection with these Section 8 and 15 Affidavits.

17.     Based on the foregoing acts of fraud, all of the GMA registrations obtained by it for the Charlotte Marks are subject to cancellation and GMA is not entitled to any of the presumptions that apply to marks deemed "incontestable" under Section 15 of the Lanham Act.

### "CHARLOTTE" IS A WEAK MARK AND CONSUMERS ARE NOT LIKELY TO CONFUSE ITS SOURCE, ORIGIN, OR SPONSORSHIP

18.     "Charlotte" is a popular female first name and, as a result, it is commonly used as a style designation in the apparel and jewelry industry.

19.    "Charlotte" also has a geographic significance as the capital of the State of North Carolina, the 20th largest city in the Untied States and home to Charlotte campus of the University of North Carolina.

20.    "Charlotte" is also a common surname.  For instance, a search of "charlotte" as a last name on <www.whitepages.com> yields more than 300 results.  The Trademark Trial and Appeal Board routinely finds that the use of a word as a surname by more than 300 persons is evidence that the word is primarily merely a surname and not registerable without evidence of secondary meaning.

21.    It is common in the apparel industry for specific items to be given first names or geographic names as style designations in lieu of a number because they are easier to remember.

22.    Section 1202.16 of the Trademark Manual of Examining Procedure specifically states that:  "Subject matter used solely as a model, style or grade designation within a product line does not function as a trademark."

23.    The use of "Charlotte" in the apparel and accessories business is widespread and multiple companies use "Charlotte" as a style designation for their various fashion products.

24.    Several designers use the name "Charlotte" as brands in connection with their apparel and accessories lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE SLONICKI, and CHARLOTTE CORDAY.

25.    Charlotte Russe owns several U.S. federal trademark registrations for the mark CHARLOTTE RUSSE, including: Reg. No. 2,416,273 in Class 25 for clothing; Reg. No. 2,416270 in Class 26 for hair ornaments; Reg. No. 2,416,268 in Class 14 for costume jewelry; Reg. No. 2,416,268 in Class 18 for handbags and other related goods; Reg. Nos. 2,414,477 and

1,485,692 in Class 42 for retail store services specializing in women's apparel and accessories; and Reg. No. 2,451,427 in Class 3 for cosmetics.

26.     Additionally, Charlotte Russe began using the CHARLOTTE RUSSE mark before GMA's use of CHARLOTTE and thus its use is senior to GMA's use.

27.     Another third party with no relation to the present action, Ehringer-Schwarz GMBH & Co. KG, owns the trademark registration for CHARLOTTE in Class 14 for jewelry bearing Reg. No. 2,117,619 issued on December 2, 1997.  The 8&15 Declaration for this trademark  was filed on April 14, 2003 and acknowledged on July 12, 2003.

28.     Charlotte Ford also owned a registration for CHARLOTTE FORD in Class 25 for clothing at the time GMA obtained its CHARLOTTE registrations.

29.     Also, upon information and belief, the owner of the mark CHARLOTTE TARANTOLA has prior common law rights to GMA in the name CHARLOTTE.

30.     Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag, or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products.

## COUNT I OF COUNTERCLAIM

### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON TRADEMARK MISUSE)

31.     Counterclaimants repeat and reallege the allegations set forth in Paragraphs 1 through 30 of their Counterclaim as if fully set forth herein.

32     Notwithstanding the fact that the GMA CHARLOTTE Marks lack significance as single source identifiers, GMA has continued to sue and threaten to sue companies who use the

41871321.1

word CHARLOTTE in connection with other words and continues to sue and threaten to sue retailers for selling said goods. The suits and threatened suits are both objectively and subjectively without merit and are interposed by GMA with bad faith and the intent to directly injure and harass Counterclaimants' business relationships through the use of governmental process as an anticompetitive weapon. As a result, Counterclaimants have been injured by GMA's actions.

33.    Pursuant to 15 U.S.C. § 1119, Counterclaimants seek an order directing cancellation of the federal registrations of the GMA CHARLOTTE Marks.

## COUNT II OF COUNTERCLAIM

## <u>(CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)</u>

34.    Counterclaimants repeat and reallege the allegations set forth in Paragraphs 1 through 33 of their Counterclaim as if fully set forth herein.

35.    In GMA's 8 & 15 Declarations, trademark applications, and Statements of Use filed with the United States Patent and Trademark Office, authorized representatives of GMA declared that they were aware "that willful statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this document."

36.    In GMA's 8 & 15 Declarations, trademark applications, and Statements of Use filed with the United States Patent and Trademark Office, authorized representatives of GMA stated that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

37.    As of the dates of its use-based applications, Statements of Use and/or the 8&15 Declarations for the various GMA CHARLOTTE Marks, GMA was not using the marks in

connection with all of the goods listed in the applications/registrations, despite its sworn and material statements to the contrary.

38.     Additionally, the dates of first use set forth in the applications for the GMA CHARLOTTE Marks are fraudulent.

39.     Additionally, in connection with those Section 8 and 15 Affidavits where GMA filed the same specimen with that Affidavit as it did with the underlying application to register the mark, GMA fraudulently misled the U.S. Patent and Trademark Office about its continued use of the CHARLOTTE Mark.

40.     Upon information and belief, GMA knew that its representations were false when made and intended for the U.S. Patent and Trademark Office to rely on its statements to issue its registrations.  In the alternative, GMA's misrepresentations were objectively fraudulent regardless of its actual intent or knowledge when it submitted the declarations containing untruthful information.

41.      The U.S. Patent and Trademark Office reasonably relied on GMA's statements in issuing the CHARLOTTE registrations to GMA, causing harm to Defendants.

42.     As set forth above, GMA's actions constitute fraud on the U.S. Patent and Trademark Office.  Accordingly, pursuant to 15 U.S.C. § 1119, Defendants seek an order from the Court directing the cancellation of the federal registrations of the GMA CHARLOTTE Marks and for civil damages pursuant to 15 U.S.C. § 1120.

## COUNT III OF COUNTERCLAIM

## (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

43.     Defendants repeat and reallege the allegations set forth in Paragraphs 1 through 42 of their Counterclaim as if fully set forth herein.

44.     As set forth above, Charlotte Russe, Charlotte Tarantola, and Charlotte Ford, among others, used marks containing "Charlotte" prior to GMA's use of CHARLOTTE.

45.     GMA knew, or should have known, of the existence of these prior uses.

46.     As a part of its applications which led to the GMA CHARLOTTE Mark Registrations, GMA swore to the U.S. Patent and Trademark Office that no one else had the right to use a mark that was likely to cause confusion with its applied-for marks.

47.     GMA knew that this statement of material fact was false when made and intended for the U.S. Patent and Trademark Office to rely on its statement to issue its registrations. The U.S. Patent and Trademark Office reasonable relied on GMA's statement in issuing the CHARLOTTE registrations to GMA, causing harm to Defendants.

48.     The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark Office.  Accordingly, pursuant to 15 U.S.C. § 1119, Defendants seek an order from the Court directing the cancellation of the federal registrations of the GMA CHARLOTTE Marks and for civil damages pursuant to 15 U.S.C. § 1120.

## COUNT IV OF COUNTERCLAIM

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

49.     Defendants repeat and reallege the allegations set forth in Paragraphs 1 through 48 of their Counterclaim as if fully set forth herein.

50.     Because Quiksilver's manufacture of apparel and related products including "hats" and "hoodies" bearing the word "Charlotte" is displayed as a style name on a hang-tag and not as a designation of source, origin, or sponsorship, GMA has no cause of action against Counterclaimants for any infringing use of Charlotte.

41871321.1

51.    In the alternative, in the event that the use of Charlotte on Quiksilver products is deemed to be a trademark use, GMA cannot assert any claims of trademark infringement because Charlotte is not an enforceable trademark because it is used by so many entities in the apparel industry as a style designation in lieu of a style number that Charlotte has no source designating power.

52.    In the alternative, in the event that Charlotte is found to be a valid trademark, it is a very weak mark with a narrow zone of protection.  The nature of Counterclaimants use on Quiksilver products is sufficiently distinct from GMA's use of CHARLOTTE that consumers are not likely to be confused as to the source, connection or sponsorship of either GMA's or Counterclaimants' products.

53.    GMA has asserted, directly and indirectly, that the Quiksilver Charlotte products infringe the GMA CHARLOTTE Marks.  GMA's actions in filing its Complaint against Quiksilver and later filing an Amended Complaint and Second Amended Complaint to add Quiksilver's retailers of those products, and insisting that injunctions be entered, illustrates that an actual controversy exists.

54.    The rights of the parties are dependent upon the facts and application of the law thereto.

55.    Accordingly, pursuant to 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure, Defendants are entitled to a declaratory judgment that the manufacture, marketing, offer for sale, and/or sale of the Quiksilver Charlotte products by Quiksilver or any of its retailers does not infringe GMA's trademark rights or the GMA CHARLOTTE Marks.

26

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray that:

1.      GMA's Second Amended Complaint be dismissed with prejudice and that judgment be entered for Defendants.

2.      With respect to Count I of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE MARKS based on trademark misuse;

3.      With respect to Count II of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks based on fraud;

4.      With respect to Count III of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks based on fraud;

5.      With respect to Count IV of the Counterclaim, pursuant to 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure, a order declaring that the manufacture, marketing, offer for sale and/or sale of products or services using "Charlotte" by Quiksilver or its retailers does not infringe GMA's trademark rights and/or the GMA CHARLOTTE Marks;

6.      An award of damages to Counterclaimants as a consequence of Plaintiff's acts of false declarations and/or fraud in obtaining trademark registrations in an amount to be determined at trial or such other sum as this Court shall decide;

41871321.1

7.      Awarding Counterclaimants their reasonable attorneys' fees and costs;

8.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues and claims in the Second

Amended Complaint and in Counterclaimants' Counterclaims.

**DAY PITNEY LLP**

*Attorneys for Defendants
and Counterclaimants
Quiksilver, Inc. and, with respect to any allegations
 against Nordstrom, Inc. and/or Swell, Inc.
relating to Quiksilver products, for
Nordstrom, Inc. and
Swell, Inc.*

By:   ___s/ Stephen W. Feingold___
        Stephen W. Feingold (SF 2763)
        Richard H. Brown (RB 5858)
        Mark S. Morgan (MM 8799)
        7 Times Square
        New York, New York 10036-7311
        Phone: (212) 297-5800

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant
and Counterclaimant
Swell, Inc. relating to any non-Quiksilver
products*

Date:  June 16, 2008
        New York, New York

28