Stephen W. Feingold (SF 2763)
Richard H. Brown (RB 5858)
Mark S. Morgan (MM 8799)
**DAY PITNEY LLP**
7 Times Square
New York, New York  10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc.*
*relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GMA ACCESSORIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> QUIKSILVER, INC., NORDSTROM, INC., SWELL, INC., JILL STUART, INC., and GURU DENIM, INC. <br><br> Defendants. | Case No. 07 CV 11527 (VM) <br><br> **DECLARATION OF STEPHEN W. FEINGOLD** |

I, STEPHEN W. FEINGOLD, ESQ., hereby declare as follows:

1.   I am an attorney duly admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York.  I am a member of the firm of Day Pitney LLP, counsel for defendants Quiksilver, Inc., Nordstrom, Inc., and Swell, Inc. (hereinafter "Defendants"), in the above-referenced action.  I make this declaration in support of Defendant's Motion to Stay these proceedings.

2.   I am familiar with the pleadings and proceedings herein, as well as the facts and circumstances giving rise to Defendant's Motion to Stay.

3.   Attached hereto as Exhibit A is a true and correct copy of plaintiff's Second Amended Complaint.

4.   Attached as Exhibit B is a true and correct copy of Defendants' Answer to the Second Amended Complaint.

5.   On May 6, 2008, in *Guru Denim, Inc. v. GMA Accessories, Inc.*, in the Central District of California, Guru Denim filed a declaratory judgment action against GMA relating to the identical claims set forth the GMA's Second Amended Complaint.  Attached hereto as Exhibit C is a true and correct copy of the Complaint filed in that action.

6.   GMA is the plaintiff in *GMA Accessories, Inc. v. Croscill, Inc., et al.* filed on August 16, 2006 in the Southern District of New York.  GMA asserts ten CHARLOTTE registrations in that matter.  GMA is the plaintiff in *GMA Accessories, Inc. v. Bop, LLC, et al.* filed on April 23, 2007 in the Southern District of New York.  GMA asserts five CHARLOTTE registrations in that matter.  GMA is the defendant in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.* filed on October 26, 2007 in the Southern District of New York.  This matter involves ten CHARLOTTE registrations.  Attached hereto as Exhibit D are true and correct copies of the Complaint's filed in each of these matters.

7.   GMA is the plaintiff in *GMA Accessories, Inc. v. Charlotte Ronson, Inc. and Sanei Charlotte Ronson, LLC*, an opposition filed on October 31, 2005 in the United States Trademark Trial and Appeal Board.  GMA is the plaintiff in *GMA Accessories, Inc. v. Daily Sparkle, LLC*, an opposition filed on November 25, 2005 in the United States Trademark Trial and Appeal Board.  GMA is the plaintiff in *GMA Accessories, Inc. v. Charlotte Tillbury Ltd.*, an opposition filed on May 25, 2006 in the United States Trademark Trial and Appeal Board.  GMA is the plaintiff in *GMA Accessories, Inc. v. Annick Goutal*, an opposition filed on June 30, 2006 in the United States Trademark Trial and Appeal Board.  GMA is the plaintiff in *GMA Accessories, Inc. v. Ehinger Schwarz GmbH & Co. KG*, an opposition filed on July 25, 2007 in the United States Trademark Trial and Appeal Board.  GMA is the defendant in *Charlotte Tillbury Ltd., et al. v. GMA Accessories, Inc.*, an opposition filed on July 25, 2007 in the United States Trademark Trial and Appeal Board.  Attached hereto as Exhibit E are a true and correct copied of the docket sheets from the Trademark Trial and Appeal Board for each of these actions.

8.   GMA's counsel, John Bostany, signed the Combined Declarations of Use and Incontestability for Registration Nos. 2,216,405, 2,217,341.  GMA's CEO, George Altirs, signed the applications for Registration Nos. 2,535,454, 2,561,025, 3,242,358, 2,412,362, 2,412,360, 2,412,359, 2,444,120, 2,682,145, as well as Application Serial Nos. 78/921,503, 77/012,104, and the Combined Declarations of Use and Incontestability for Registration Nos. 2,535,454, 2,561,025, 2,412,360, 2,412,359.

9.   Attached as Exhibit F is a true and correct copy of a letter dated September 26, 2007 from Quiksilver, Inc. to counsel for GMA Accessories, Inc.

Executed on:  June 16, 2008                    s/ Stephen W. Feingold
                  New York, New York               Stephen W. Feingold

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GMA ACCESSORIES, INC.,

       Plaintiff,

             **SECOND AMENDED COMPLAINT**

 - against -

            Civil Action No.:  07CV11527 (VM)

QUIKSILVER, INC., NORDSTROM, INC.,
SWELL, INC., JILL STUART, INC.,
and GURU DENIM, INC.



       Defendants.
------------------------------------------------------------X

   Plaintiff, GMA Accessories, Inc., (hereinafter "GMA"), brings this complaint against Defendants QUIKSILVER, INC. (hereinafter "QUIKSILVER"), NORDSTROM, INC. (hereinafter "NORDSTROM"), SWELL, INC. (hereinafter "SWELL"), JILL STUART, INC. (hereinafter "JILL STUART"), GURU DENIM, INC. (hereinafter "GURU DENIM"), alleging upon information and belief as follows:

<u>NATURE OF THE CASE</u>

   This is a claim for infringement of the trademark CHARLOTTE which is registered to plaintiff in several classes including class 25 for "clothing, footwear and headgear" and class 18 for "sacks and bags." Defendant QUIKSILVER owns the registered trademark ROXY. Without permission from plaintiff, QUIKSILVER and its customers began using the plaintiff's CHARLOTTE mark along with the ROXY mark to identify clothing and headgear, misleading consumers into believing that both ROXY and CHARLOTTE brands belong to QUIKSILVER. Without permission from plaintiff, Defendant JILL STUART and its customers began using plaintiff's CHARLOTTE mark to identify bags, misleading customers into believing that both

JILL STUART and CHARLOTTE brands belong to JILL STUART. Without permission from plaintiff, GURU DENIM began using plaintiff's CHARLOTTE mark to identify clothing, in violation of the Lanham Act. These manufacturers resisted repeated attempts by GMA to persuade them to stop their infringing conduct.

## PARTIES

1. Plaintiff, GMA ACCESSORIES, INC. (hereinafter referred to as "GMA"), is a corporation, duly organized and existing under the laws of the State of New York, with a place of business at 1 East 33rd Street, New York, New York.

2. GMA does business as "Capelli".

3. Defendant QUIKSILVER is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 15202 Graham Street, Huntington Beach, California 92649.

4. Defendant NORDSTROM, is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.

5. Defendant SWELL, is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.

6. Defendant JILL STUART, is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 550 7th Avenue – 24th Floor, New York, New York 10018.

7. Defendant GURU DENIM, is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 2263

East Vernon Avenue, Vernon, California 90058.

8. Defendant, QUIKSILVER, and its customers, with full knowledge and consent of QUIKSILVER, have used CHARLOTTE to display, market, distribute, sell, and/or offer for sale merchandise to the public.

9. Defendants are now displaying, marketing, distributing, selling, and/or offering for sale merchandise in connection with the CHARLOTTE mark.

10. QUIKSILVER uses and has used the website www.roxy.com to further infringe upon the CHARLOTTE mark.

11. NORDSTROM uses and has used the website www.nordstrom.com to further infringe upon the CHARLOTTE mark.

12. SWELL uses and has used the website www.swell.com to further infringe upon the CHARLOTTE mark.

13. JILL STUART uses and has used the website www.jillstuart.com to further infringe upon the CHARLOTTE mark.

14. GURU DENIM uses and has used the website www.truereligionbrandjeans.com to further infringe upon the CHARLOTTE mark.


**JURISDICTION AND VENUE**

15. This is an action for unfair competition, federal trademark infringement, federal and state dilution, and common law infringement pursuant to the Lanham Act, 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331, 1338(a) and (b). The Court has supplemental jurisdiction over the common law trademark infringement and unfair competition claim and the trademark dilution claim under the laws of New York pursuant to 28 U.S.C. Section 1367.

3

16. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

**FACTS**

17. Each of the CHARLOTTE federal registrations owned by GMA pre-date the first use of the CHARLOTTE mark by Defendants.

18. Under Section 33(b) of the Lanham Act, registration of an incontestable mark is conclusive evidence of the ownership of the mark, the validity of the mark and the exclusive right of the owner to use the mark in commerce.

19. Since 1999, GMA has been and is now the title owner of Registration # 2,216,405 for the mark CHARLOTTE in International Class 26 for hair accessories. This mark was deemed incontestable pursuant to section 15 of the Lanham Act.

20. Since 1999, GMA has been and is now the title owner of Registration # 2,217,341 for the mark CHARLOTTE in International Class 18 for sacks and bags. This mark was deemed incontestable pursuant to section 15 of the Lanham Act.

21. Since 2002, GMA has been and is now the title owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25 for "clothing, footwear and headgear." This mark has been deemed incontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act. Since 2002, GMA has been and is now the title owner of Registration # 2,561,025 for the mark CHARLOTTE in International Class 9 for sunglasses. This mark has been deemed incontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act.

22. GMA has been and is now the title owner of Registration # 3,242,358 for the mark CHARLOTTE in International Class 22.

4

23. In November of 2001, GMA was assigned all rights to Registration # 1135037. Pursuant to said assignment, GMA's use in commerce of the CHARLOTTE mark dates back to January 2, 1979. (The registrations referred to in ¶11-16 are respectfully referred to herein as the "GMA marks").

24. The GMA Products consist of, among other things, clothing, headgear, bags and fashion accessories and GMA used the CHARLOTTE mark in commerce in connection with these goods before Defendant.

25. Defendant QUIKSILVER is the owner of the mark ROXY.

26. Defendant GURU DENIM uses the CHARLOTTE mark to advertise and/or sell its products.

27. Defendant JILL STUART uses the CHARLOTTE mark in conjunction with the JILL STUART mark in commerce.

28. Defendants were aware or should have been aware of the GMA marks before it began using CHARLOTTE to identify its headgear, clothing, and/or bags.

29. Defendants and numerous online stores are co-infringers and acting in concert to infringe CHARLOTTE, either failing to conduct a trademark search and/or ignoring the knowledge that GMA is the owner of the CHARLOTTE mark for the same goods that defendants decided to call CHARLOTTE and in addition continuing to infringe after receiving actual notice of GMA's claim that defendants' were indeed infringing upon GMA's trademarks.

30. Defendants QUICKSILVER, JILL STUART, and GURU DENIM and those acting in concert with it have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms and/or other brands to identify headgear, clothing, and/or bags.

5

31. Defendants QUICKSILVER, JILL STUART, and GURU DENIM along with its customers and agents are intentionally infringing and have in the past intentionally infringed upon the CHARLOTTE mark.

32. Defendants are infringing in bad faith.

33. After defendants, and those acting in concert with them, including but not limited to the named defendants, became aware of GMA's registration to the mark CHARLOTTE, they continued to use the mark to advertise, promote, display or sell headgear, clothing, and bags.

34. Defendants commenced use of the CHARLOTTE mark no earlier than 2006.

35. The CHARLOTTE mark is inherently distinctive as to GMA's clothing, headgear, and bags.

36. GMA's use of CHARLOTTE has substantial secondary meaning in the marketplace.

37. The use of the word CHARLOTTE in connection with GMA's clothing, headgear, bags and related products is arbitrary and strong.

38. Since at least 2006, Defendants used the CHARLOTTE mark as described herein.

39. Since at least 2006, Defendant QUICKSILVER sold an infringing line of "CHARLOTTE" headgear and clothing.

40. Since at least 2007, Defendants JILL STUART and GURU JEANS used the CHARLOTTE mark as described herein.

41. Defendants were aware or should have been aware of the GMA marks before they began using CHARLOTTE to identify their headgear and clothing, namely hats, jeans, and bags.

42. Defendants have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms to identify headgear, clothing, and bags.

43. Defendants have in the past intentionally infringed and are continued to intentionally infringing upon the CHARLOTTE mark with either actual or constructive notice of GMA's rights to the mark.

44. A search of the United States Patent and Trademark Office list of registered marks would have revealed that GMA was the owner of the mark CHARLOTTE with respect to headgear and clothing, and sacks and bags, and Defendants infringed and are infringing in bad faith.

45. Prior to using the CHARLOTTE mark, Defendants QUIKSILVER, JILL STUART, and GURU DENIM failed to search the United States Patent and Trademark Office website for CHARLOTTE.

46. Prior to using the CHARLOTTE mark, Defendant NORDSTROM failed to search the United States Patent and Trademark Office website for CHARLOTTE.

47. Prior to using the CHARLOTTE mark, Defendant SWELL failed to search the United States Patent and Trademark Office website for CHARLOTTE.

48. Defendants continued to infringe after learning that GMA owned the CHARLOTTE mark.

49. Defendant QUIKSILVER received cease and desist letters in August 2007 and October 2007. QUIKSILVER and its customers did not stop their infringement.

50. Defendants JILL STUART and GURU DENIM received similar cease and desist letters in 2007 and 2008.

51. On September 26, 2007, QUIKSILVER requested that plaintiff provide to it proof of its use in commerce of CHARLOTTE on hats. While plaintiff explained that its incontestable registration is conclusive evidence of its use and its exclusive right to use the mark, to facilitate an out of court settlement, GMA complied with the request.

52. QUIKSILVER received a final warning letter in November 2007.

53. The goods that Defendants advertise, promote, sell, or offer for sale in connection with the CHARLOTTE mark are products closely related to those for which GMA owns registered trademarks and are in the same Class for which GMA owns a trademark registration to the mark CHARLOTTE.

54. The Defendants' goods mentioned in paragraph 42 are in Class 25 or Class 18 and are goods identical or closely related to goods listed in GMA's trademark registration.

55. Since at least 2006, Defendant QUIKSILVER and its customers have used the CHARLOTTE mark as described herein and QUIKSILVER and its customers are co-infringers and acting in concert in the scheme to infringe as set forth herein.

56. Since at least 2007, Defendants JILL STUART and GURU DENIM and its customers have used the CHARLOTTE mark as described herein and JILL STUART and GURU DENIM and its customers are co-infringers and acting in concert in the scheme to infringe as set forth herein.

57. Since at least 2006, Defendants have sold an infringing line of headgear and clothing and bags which infringement was furthered and enhanced by Defendants' distribution of these infringing items, advertised, promoted, marketed or displayed in connection with the CHARLOTTE mark to Defendants' customers, who in turn peddled, displayed, marketed, offered for sale and sold the infringing goods at the retail level to the general public in connection with the CHARLOTTE mark.

58. GMA has priority over Defendants in the CHARLOTTE mark for the goods described in paragraph 41 and 42.

8

## <u>COUNT I – TRADEMARK INFRINGEMENT (FEDERAL)</u>

59. GMA repeats and realleges the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. Long after the adoption and use by GMA of the CHARLOTTE Trademark, and with at least constructive notice of the registration of the GMA Trademarks, Defendants knowingly and intentionally used reproductions, copies or colorable imitations of the CHARLOTTE Trademark to market, promote, identify design, manufacture, sell and distribute its products and either continue to do so or threaten to do so.

61. Defendants have been offering for sale products using a confusingly similar name, e.g., CHARLOTTE.

62. Defendants, by their acts as aforesaid, have taken advantage of the creativity of GMA in coining the CHARLOTTE mark, of the good will developed by GMA in the mark CHARLOTTE, and the advertisements for CHARLOTTE.

63. Defendants' use of GMA's word mark results in confusion as to sponsorship, association, source and origin of GMA and Defendants' products.

64. Having adopted and used the CHARLOTTE mark after GMA, Defendants and their co-infringers are junior users of the mark.

65. Defendants injected their products into commerce with the express intent of profiting from GMA's valuable registered trademarks and the manufacturer defendants' customers are acting in concert.

66. The acts of Defendants complained of herein have been without the authorization or consent of GMA.

67. Defendants' acts alone and via their customers have caused and will continue to cause irreparable harm and injury to GMA.

68. The activities of Defendants, complained of herein, constitute infringement of the GMA Trademarks in violation of Sections 35 and 43(a) of the Lanham Act, 15 U.S.C. Sections 1114(1) and 1125(a).

## COUNT II – VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

69. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 68 as if fully set forth herein.

70. Section 360-l of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark... or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-l.

71. Defendants have engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale products using the same or similar CHARLOTTE word mark and upon information and belief continue to fill purchase orders using the word CHARLOTTE.

72. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of GMA's products.

73. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to

affiliation, connection or association of GMA's products with Defendant's products.

74. GMA has not consented to any sponsorship, approval, status, affiliation, or connection with Defendant's products.

75. GMA has been irreparably damaged, and will continue to be damaged by Defendants' trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

## COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

76. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in acts of trademark infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 75 as if fully set forth herein.

77. Defendants have infringed GMA's trademarks by manufacturing, marketing and/or selling products that infringe the CHARLOTTE trademark.

78. Defendants' acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

79. Upon information and belief, Defendants intend that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

80. Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers.  Unless defendants' acts are restrained by this Court, Defendants' deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

81. Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to

affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by Defendant.

82. Defendants' acts have harmed GMA's reputation and have severely damaged GMA's goodwill.

83. Upon information and belief, Defendants' acts are an attempt to deceive the public. The public is likely to be confused as to the source and origin of GMA's products.

84. Defendants have misappropriated GMA's trade name, and upon information and belief continue to do so, by selling products that are ordered under a mark that is confusingly similar to GMA's line of "CHARLOTTE" products.

85. Defendants' trade name infringements are in violation of the common law of New York.

86. Defendants' aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of GMA's trademark, unfair competition, palming-off and passing-off against GMA, and unjust enrichment by Defendant, all in violation of GMA's rights under the common law of New York.

87. Defendants' aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by Defendant.

88. The public is likely to be confused as to the source, origin, sponsorship, approval or certification of the parties' products.

89. Upon information and belief, Defendants' actions have been willful and deliberate.

90. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore GMA is entitled to injunctive relief under New York Common Law.

WHEREFORE, the plaintiff, GMA ACCESSORIES, INC., prays:

A.    That this Court adjudge that Defendants have infringed, counterfeited, tarnished and diluted GMA's CHARLOTTE trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in GMA's counterclaims, in violation of GMA's rights under New York Law as well as the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1124 and 1125.

B.    That Defendants and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing products in connection with the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (3) holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "CHARLOTTE" Trademark or (4) from in any other way infringing GMA's "CHARLOTTE" word mark or (5) effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in numbers (1) through (4) hereof.

C.    That Defendants be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the

"CHARLOTTE" word mark, and any plates, molds, and other materials for making such infringing products.

D.    That Defendants be directed to file with this Court and to serve upon GMA within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs B and C, pursuant to 15 U.S.C. 1116(a).

E.    That GMA recover Defendants' profits arising from its acts of trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and business practices, and consumer fraud pursuant to both New York law and 15 U.S.C. 1117(a).

I.    That GMA recover its reasonable attorney fees incurred in this action pursuant to 15 U.S.C 1117(a).

J.    That GMA have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

K.    That GMA have such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 15, 2008


                              Respectfully Submitted,

                              THE BOSTANY LAW FIRM

                              By:    John P. Bostany (JB 1986)
                              Attorneys for Plaintiff GMA Accessories, Inc.
                              40 Wall Street, 61st Floor
                              New York, New York 10005
                              (212) 530-4400

                                        14

# EXHIBIT B

Stephen W. Feingold (SF 2763)
Richard H. Brown (RB 5858)
Mark S. Morgan (MM 8799)
**DAY PITNEY LLP**
7 Times Square
New York, New York  10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc.*
*relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GMA ACCESSORIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> QUIKSILVER, INC., NORDSTROM, INC., SWELL, INC., JILL STUART, INC., and GURU DENIM, INC. <br><br> Defendants. | Case No. 07 CV 11527 (VM) <br><br><br> **ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS BY QUIKSILVER, INC., NORDSTROM, INC. AND SWELL, INC.** |

Defendants Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell,

Inc. ("Swell") (collectively referred to as "Defendants") by and through their counsel, as and for

1

their Answer to the Second Amended Complaint filed by plaintiff GMA Accessories, Inc. ("GMA"), sets forth the Answer and Affirmative Defense shown below. This Answer and Affirmative Defenses are asserted on behalf of Nordstrom and Swell only to the extent that the allegations in the Second Amended Complaint allege infringement by Nordstrom and/or Swell based on their sale advertising, or promotion of Quiksilver products bearing the name "Charlotte."

## NATURE OF THE CASE

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the unnumbered paragraph entitled NATURE OF THE CASE with respect to all the allegations therein except (i) Swell and Nordstrom admit that they each acquired from Quiksilver and Quiksilver admits that it sold to Swell and Nordstrom a limited number of hats and hoodies for which the word "charlotte" was used in lieu of a style number to identify the product to customers and (ii) Quiksilver admits that it owns a federal registration for ROXY, and (iii) to the extent that the last sentence of the NATURE OF THE CASE applies to any or all of them, Defendants collectively and individually deny that they have engaged in any "infringing conduct."

## PARTIES

1.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore deny the allegations of Paragraph 1.

2.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2, and therefore deny the allegations of Paragraph 2.

3.    Quiksilver admits that Quiksilver, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate offices located at 15202 Graham Street,

Huntington Beach, California 92649. Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

4.      Nordstrom admits that Nordstrom, Inc. is a corporation existing under the laws of the State of Washington with its principal corporate offices located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.  Quiksilver and Swell are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

5.      Swell admits that Swell, Inc. is a corporation existing under the laws of the State of Delaware with its principle corporate offices located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.  Quiksilver and Nordstrom are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore deny the allegations therein.

6.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 and therefore deny the same.

7.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 and therefore deny the same.

8.      Quiksilver admits that it sold to Swell and Nordstrom, and Swell and Nordstrom admit that they bought from Quiksilver "hats" and "hoodies" identified by the word "charlotte" in lieu of a style number and that they sold limited numbers of those products to consumers.  As to the remaining allegations in Paragraph 8, denied.

9.      Defendants deny as to themselves and are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 9 and therefore deny the same.

10.     Quiksilver denies the allegations in Paragraph 10, but Nordstrom and Swell are both without knowledge or information sufficient to form a belief as to the trusty or falsity of the allegations in Paragraph 10 and therefore deny the same.

11.     Nordstrom denies the allegations in Paragraph 11, but Quiksilver and Swell are both without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and therefore deny the same.

12.     Swell denies the allegations in Paragraph 12, but Quiksilver and Nordstrom are both without knowledge or information sufficient to form a belief as to the trusty or falsity of the allegations in Paragraph 12 and therefore deny the same.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore deny the same.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 and therefore deny the same.

## JURISDICTION AND VENUE

15.     Defendants admit that this Court has jurisdiction over this action. Defendants deny the remaining allegations in Paragraph 15.

16.     Defendants admit that venue is proper in this District.

## FACTS

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 with respect to GMA's date of first use or the "date

4

of GMA's CHARLOTTE federal registrations" or the date of first use (if any) by any defendants not a party to this Answer, and deny that Defendants have used "charlotte" at any time in a trademark manner to designate a source.

18.     Denied.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and therefore deny the same.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 20 and therefore deny the same.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore deny the same.

22.     Defendants admit only that Plaintiff is the registered owner of Reg. No. 3,242,358.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 22 and therefore deny the same.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore deny the same.

24.     Defendants are unable to respond to the allegations of Paragraph 24 of the Second Amended Complaint because GMA uses the term "GMA Products" without having defined it in the Second Amended Complaint.  To the extent that "GMA Products" refers only to those items specifically identified in Paragraph 24, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore deny the same.

25.    Quiksilver admits the allegations in Paragraph 25, but Defendants Nordstrom and Swell state that they are without knowledge or information sufficient to form a belief as to the truth or falsity of Paragraph 34 and therefore deny same.

26.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore deny the same.

27.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 and therefore deny the same.

28.    Denied.

29.    Denied.

30.    Defendants deny the allegations in Paragraph 30 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 with respect to any third parties and therefore deny the same.

31.    Quiksilver denies the allegations in Paragraph 31 to the extent that they refer to Quiksilver and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and therefore deny the same.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 and therefore deny the same.

32.    Denied.

33.    Defendants deny the allegations in Paragraph 33 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 with respect to any third parties and therefore deny the same.

34.     Defendants deny the allegations in Paragraph 34 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 with respect to any third parties and therefore deny the same.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Defendants deny the allegations in Paragraph 38 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 with respect to any third parties and therefore deny the same.

39.     Quiksilver denies the allegations in Paragraph 39, but Defendants Nordstrom and Swell state that they are without knowledge or information sufficient to form a belief as to the truth or falsity of Paragraph 39 and therefore deny same.

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 and therefore deny the same.

41.     Denied.

42.     Defendants deny the allegations in Paragraph 42 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 with respect to any third parties and therefore deny the same.

43.     Denied.

41871321.1

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and therefore deny the same.

45.     Quiksilver admits the allegations of Paragraph 45, but is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 45 and therefore deny the same, including any suggestion or implication that it had a duty or obligation to conduct a trademark search.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

46.     Nordstrom admits the allegations set forth in Paragraph 46.  Quiksilver and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

47.     Swell admits the allegations set forth in Paragraph 47.  Nordstrom and Quiksilver are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 47 and therefore deny the same, including any suggestion or implication that any party had a duty or obligation to conduct a trademark search.

48.     Denied.

49.     Quiksilver admits that it received cease and desist letters from GMA, but denies the remaining allegations in Paragraph 49**.** Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49 and therefore deny the same.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50 and therefore deny the same.

51.     Quiksilver admits that on September 26, 2007 it requested that GMA provide proof of its use in commerce of CHARLOTTE on hats and on each of the other goods in GMA's registrations.  See Ex. F. to Feingold Dec.  By a letter dated October 16, 2007, GMA provided pictures of hats with CHARLOTTE on hangtags.  GMA did not provide any evidence of any other use of CHARLOTTE.  Quiksilver denies the remaining allegations of Paragraph 51.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51 and therefore deny the same.

52.     Quiksilver admits that it received a letter from GMA in November of 2007 and denies all other allegations in Paragraph 42.  Nordstrom and Swell are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52 and therefore deny the same.

53.     Defendants deny the allegations in Paragraph 53 to the extent those allegations are made against Defendants and are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53 with respect to any third parties and therefore deny the same.

54.     Defendants admit that headgear, clothing, and bags are within Class 25 or Class 18 of the International Classification system used in the United States Patent and Trademark Office.  Defendants deny the remaining allegation in Paragraph 54.

55.     Denied.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56 and therefore deny the same.

9

57.     Denied.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 58 and therefore deny the same.

## COUNT – I TRADEMARK INFRINGEMENT (FEDERAL)

59.     Denied.  Defendants repeat and reallege their responses to Paragraphs 1 through 58 as if fully set forth herein.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

## COUNT – II VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

69.     Denied.  Defendants further repeat and reallege their responses to Paragraphs 1 through 68 as if fully set forth herein.

70.     The allegations in Paragraph 70 are conclusions of law to which no response is required. To the extent the allegations of Paragraph 70 call for an answer, Defendants admit that GMA has selectively cited Section 360-1 of the New York General Business Law, but otherwise deny the remaining allegations in Paragraph 70.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74 and therefore deny the same.

75.     Denied.

**COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW**

76.     Denied.  Defendants further repeat and reallege their responses to Paragraphs 1 through 75 as if fully set forth herein and otherwise deny the allegations in paragraph 76.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails to state any claims upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

GMA is barred from recovering damages or obtaining injunctive relief by the doctrines of estoppel, laches, waiver, acquiescence and/or unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Defendants adopt and incorporate by reference any and all presumptions and defenses which are or may become available to them pursuant to the Uniform Trade Secrets Act, Lanham Act, or any other applicable law, as a bar to GMA's claims.

## FOURTH AFFIRMATIVE DEFENSE

The conduct alleged in the Second Amended Complaint does not give rise to trademark infringement because it concerns the use of words in a non-designating source manner.

## FIFTH AFFIRMATIVE DEFENSE

GMA is not entitled to monetary damages because of a lack of willful infringement.

## SIXTH AFFIRMATIVE DEFENSE

GMA has not sustained any injury or damages as a result of any act or conduct by Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

GMA cannot recover for loss of customers or business occasioned by fair competition permitted by applicable law.

41871321.1

## EIGHTH AFFIRMATIVE DEFENSE

On information and belief, before filing this action, and before Defendants sold products bearing the CHARLOTTE name, GMA abandoned whatever rights it enjoyed in the CHARLOTTE name. GMA ceased bona fide use in commerce of the CHARLOTTE name with an intent not to resume such use.

## NINTH AFFIRMATIVE DEFENSE

The CHARLOTTE name is not a protectable trademark in that it used as a style designation by multiple entities, some of whom, on information and belief, commenced use prior to GMA's alleged first use of the mark, that it has no source meaning to consumers for apparel and related products.

## TENTH AFFIRMATIVE DEFENSE

GMA's Federal Registrations for CHARLOTTE are subject to cancellation under the doctrine of fraud on the Trademark Office.

## ELEVENTH AFFIRMATIVE DEFENSE

CHARLOTTE is a generic term in the apparel industry when used as a style designation.

## TWELFTH AFFIRMATIVE DEFENSE

CHARLOTTE is primarily merely a surname without secondary meaning.

## THIRTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is geographically descriptive and lacks secondary meaning.

## FOURTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is geographically misdescriptive and therefore not protectable as a trademark.

41871321.1

## FIFTEENTH AFFIRMATIVE DEFENSE

CHARLOTTE is a common personal name and lacks secondary meaning.

## SIXTEENTH AFFIRMATIVE DEFENSE

The CHARLOTTE name is not a famous mark and lacks the requisite level of distinctiveness to qualify for protection under the New York State Anti-Dilution statute.

## SEVENTEENTH AFFIRMATIVE DEFENSE

On information and belief, one or more of the trademarks at issue is, or may be, unenforceable by reason of GMA's inequitable conduct, acts or omissions before the United States Patent and Trademark Office.

Defendants reserve the right to amend this Answer and to add, delete, or modify these defenses based upon legal theories that may, might or will be divulged through clarification of GMA's claims, through discovery, or through further legal analysis of GMA's position in this litigation.

## COUNTERCLAIMS

As and for their Counterclaims against Plaintiff and Counterclaim Defendant, GMA Accessories, Inc. ("GMA"), Defendants and Counterclaim Plaintiffs, Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell, Inc. ("Swell") (collectively "Counterclaimants") allege and says as follows:

## NATURE OF ACTION

1.    By way of these Counterclaims, Counterclaimants seek a declaratory judgment of non-infringement with respect to the use of "Charlotte" on Quiksilver products as a style designation.    Counterclaimants further seek cancellation of Plaintiff's federal trademark

14

registrations based on GMA's fraud before the U.S. Patent and Trademark Office and GMA's trademark misuse.

## JURISDICTION AND VENUE

2.    This is an action for that seeks the cancellation of certain trademarks pursuant to 15 U.S.C. §§ 1119 and 1120.  Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Counterclaimants seek a declaration of rights and/or other legal relations of the parties to this litigation with respect to an actual and justiciable controversy arising under the trademark laws of the United States, 15 U.S.C. 1051 *et seq.*

3.    This Court has jurisdiction over this matter pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq.*); 28 U.S.C. §§ 1331, 1338, and 1367; and the Declaratory Judgment Act (28 U.S.C. § 2201).

4.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because GMA resides within this judicial district.

## THE PARTIES

5.    Defendant/Counter-Claimant Quiksilver, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate offices located at 15202 Graham Street, Huntington Beach, California 92649.

6.    Defendant/Counter-Claimant Nordstrom, Inc. is a corporation existing under the laws of the State of Delaware with its principal corporate office located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.

7.    Defendant/Counter-Claimant Swell, Inc. is a corporation existing under the laws of the State of Delaware with its principle corporate office located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.

15

8.     Plaintiff and Counterclaim Defendant GMA Accessories, Inc. is a corporation existing under the laws of the State of New York with its principal corporate offices located at 1 East 33rd Street, New York, New York, 10016.

## GMA'S ALLEGED USE OF THE MARK CHARLOTTE

9.     According to GMA's website (www.capelli-ny.com), it does business as Capelli New York and is in the business of selling fashion accessories and novelty items, such as hair accessories, socks, leg warmers, sandals, flip flops, slippers, plush toys, and pet accessories.

10.     Counterclaimants were not aware of GMA or its products until 2007 when GMA's counsel sent a cease and desist letter to Quiksilver.  At that time, it came to Quiksilver's attention that GMA owned certain trademark registrations for CHARLOTTE and CHARLOTTE & FRIENDS.

11.     GMA asserts rights to the following U.S. trademark registrations and applications pending before the U.S. Patent and Trademark Office (collectively referred to as the "GMA Charlotte Marks"):

a.      U.S. Registration No. 2,216,405 issued on January 5, 1999, for the mark CHARLOTTE in International Class 26 for hair, accessories, namely, hair clips, scrunches, ribbons and braids.

b.     U.S. Registration No. 2,217,341 issued on January 12, 1999, for the mark CHARLOTTE in International Class 18 for sacks and bags, namely, handbags made of textiles and beads.

c.     U.S. Registration No. 2,535,454 issued on February 5, 2002, for the mark CHARLOTTE in International Class 25 clothing, footwear and headgear, namely hats, scarves, gloves and socks.

16

d.      U.S. Registration No. 2,561,025 issued on April 16, 2002, for the mark CHARLOTTE in International Class 9 for sunglasses.

e.      U.S. Registration No. 3,242,358 issued on May 15, 2007, for the mark CHARLOTTE in International Class 22 for bags for securing valuables; bands for wrapping or binding; belts, not of metal, for handling loads; fabric and polyester mesh net used for storing toys and other household items; garment bags for storage; mesh bags for storage; multi-purpose cloth bags; packaging bags of textile material; rice straw bags (kamasu); shoe bags for storage; string.

f.      Use-based Application filed on June 30, 2006 bearing Serial No. 78/921503 for the mark CHARLOTTE in International Class 14 for the following goods: bonnet pins of precious metal; bracelets of precious metal; brooches; buckles for watchstraps; charms; chokers; costume jewelry; cuff-links; earrings; gemstones; gold and its alloys; hat pins of precious metal; iridium and its alloys; jewelry; jewelry for the head; jewelry pins for use on hats; lapel pins; necklaces; ornamental pins; ornaments of precious metal; osmium and its alloys; pendants; picture frames of precious metal; platinum and its alloys; precious metal alloys; purses and wallets of precious metal; rhodium and its alloys; rings being jewelry; silver and its alloys; tiaras.

g.      Use-based Application filed October 2, 2006 bearing Serial No. 77/012104 for the mark CHARLOTTE in International Class 24, for the following goods: Bath linen; Bath sheets; Bath towels; Beach towels; Bed blankets; Bed linen; Bed Sheets; Blanket throws; Chenille fabric; Children's blankets; Children's towels; Cloth coasters; Cloth napkins for removing make-up; Comforters; Contoured mattress covers; Cotton based mix fabrics; Cotton fabric; Covered rubber yarn fabrics; Crepe cloth; Crib bumpers; Crib canopies; Curtain fabric;

17

Curtain loops of textile material; Curtains; Curtains made of textile fabrics; Diaper changing mats; Diaper changing pads not of paper; Dining linens; Dish cloths; Draperies; Dust ruffles; Duvet covers; Duvets; Eiderdown covers; Eiderdowns; Fabric diaper stackers; Fabric flags; Fabric for boots and shoes; Fabric of imitation animal skin; Fabric table runners; Fabric table toppers; Fabric valances; Fabric window coverings and treatments, namely curtains, draperies, sheers, swags and valances; Face towels; Feather beds; Felt and non-woven textile fabrics; Fiberglass fabrics for textile use; Fireproof upholstery fabrics; Fitted toilet lid covers; Flannel; Flax fabrics; Frieze; Gauze fabric; Gift wrap of fabric; Hand towels; Hand-towels made of textile fabrics; Hemp base mixed fabrics; Hemp yarn fabrics; Household linen; Inorganic fiber mixed fabrics; Jeans fabric; Jersey fabrics for clothing; Jersey material; Jute fabrics; Kitchen linens; Kitchen towels; Knitted fabrics; Knitted fabrics of chemical-fiber yarn; Knitted fabrics of cotton yarn; Knitted fabrics of wool yarn; Labels of cloth; Lap rugs; Mixed fiber fabrics; Narrow woven fabrics; Net curtains; Nylon fabric; Oil cloths; Pillow cases; Pillow covers; Pillow shams; Pillowcases; Place mats of textile material; Polyester fabric; Pot holders; Puffs; Quilts; Ramie fabric; Rayon fabric; Receiving blankets; Regenerated fiber yarn fabrics; Rubberized cloths; Sackcloth; Sail cloth; Semi-synthetic fiber fabrics; Shams; Shower curtains; Silk-cotton mixed fabrics; Synthetic fiber fabrics; Table cloths not of paper; Table linen; Taffeta; Tapestries of textile; Terry towels; Textile fabric of animal skins imitations; Textile fabrics for home and commercial interiors; Textile fabrics for lingerie; Textile fabrics for the manufacture of clothing; Textile labels; Throws; Ticking fabric; Towel sets; Towels; Traced cloths for embroidery; Tricot quilts; Tulle; Unfitted fabric furniture covers; Upholstery fabrics; Velvet; Wash cloths; Washcloths; Washing gloves; Washing mitts; Window curtains; Wool base mixed fabrics; Wool yarn fabrics; Woolen fabric; Woolen blankets; Worsted fabrics; Woven fabrics; Zephyr fabric.

18

h. U.S. Registration No. 2,412,362 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 3 for cosmetics, namely perfume, lip gloss, and hair lotions.

i. U.S. Registration No. 2,412,360 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 25 for clothing, footwear and headgear, namely hats, scarves, gloves, and socks.

j. U.S. Registration No. 2,412,359 issued on December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 26 for hair accessories, namely, hair clips, scrunchees, ribbons, and braids.

k. U.S. Registration No. 2,444,120 issued on April 17, 2001 for the mark CHARLOTTE & FRIENDS in International Class 28 for toys, namely plush animals.

l. U.S. Registration No. 2,682,145 issued on February 4, 2003, for the mark CHARLOTTE & FRIENDS in International Class 9 for sunglasses.

12. In connection with several of these registrations, an authorized representative of GMA swore in Section 8 & 15 Declarations (hereinafter "8&15 Declarations") that "[t]he owner is using or is using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods and/or services identified above . . . ."

13. GMA submitted 8&15 Declarations in which an authorized representative of GMA swore under oath that CHARLOTTE and CHARLOTTE & FRIENDS was used in

19

connection with *all* the goods identified in, among others, each of the following Registrations: Reg. No. 2,217,341 (filed November 26, 2004); Reg. No. 2,216,405 (filed January 5, 1999), Reg. No. 2,535,454 (filed February 14, 2007); and Reg. No. 2,561,025 (filed May 22, 2007).

14.    An authorize representative of GMA further swore under oath that when filing these trademark applications for the GMA Charlotte Marks and related Statements of Use with respect to its intent-to-use applications that GMA was using the mark in connection with *all* the goods identified in those applications as of the date claimed.

15.    Upon information and belief, GMA's sworn statements in its intent-to-use applications, Statements of Use and 8&15 Declarations that it was using the GMA CHARLOTTE Marks on all the goods identified in those applications and registrations as of the dates claimed were false.

16.    In connection with at least some of the Section 8 and 15 Affidavits submitted by GMA relating to the Charlotte Marks, GMA submitted the identical specimen it submitted when it filed the underlying application approximately five years earlier.  On information and belief, GMA was no longer using said specimens in commerce when they were submitted in connection with these Section 8 and 15 Affidavits.

17.    Based on the foregoing acts of fraud, all of the GMA registrations obtained by it for the Charlotte Marks are subject to cancellation and GMA is not entitled to any of the presumptions that apply to marks deemed "incontestable" under Section 15 of the Lanham Act.

### "CHARLOTTE" IS A WEAK MARK AND CONSUMERS ARE NOT LIKELY TO CONFUSE ITS SOURCE, ORIGIN, OR SPONSORSHIP

18.    "Charlotte" is a popular female first name and, as a result, it is commonly used as a style designation in the apparel and jewelry industry.

19.     "Charlotte" also has a geographic significance as the capital of the State of North Carolina, the 20th largest city in the Untied States and home to Charlotte campus of the University of North Carolina.

20.     "Charlotte" is also a common surname.  For instance, a search of "charlotte" as a last name on <www.whitepages.com> yields more than 300 results.  The Trademark Trial and Appeal Board routinely finds that the use of a word as a surname by more than 300 persons is evidence that the word is primarily merely a surname and not registerable without evidence of secondary meaning.

21.     It is common in the apparel industry for specific items to be given first names or geographic names as style designations in lieu of a number because they are easier to remember.

22.     Section 1202.16 of the Trademark Manual of Examining Procedure specifically states that:  "Subject matter used solely as a model, style or grade designation within a product line does not function as a trademark."

23.     The use of "Charlotte" in the apparel and accessories business is widespread and multiple companies use "Charlotte" as a style designation for their various fashion products.

24.     Several designers use the name "Charlotte" as brands in connection with their apparel and accessories lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE SLONICKI, and CHARLOTTE CORDAY.

25.     Charlotte Russe owns several U.S. federal trademark registrations for the mark CHARLOTTE RUSSE, including: Reg. No. 2,416,273 in Class 25 for clothing; Reg. No. 2,416270 in Class 26 for hair ornaments; Reg. No. 2,416,268 in Class 14 for costume jewelry; Reg. No. 2,416,268 in Class 18 for handbags and other related goods; Reg. Nos. 2,414,477 and

1,485,692 in Class 42 for retail store services specializing in women's apparel and accessories; and Reg. No. 2,451,427 in Class 3 for cosmetics.

26.    Additionally, Charlotte Russe began using the CHARLOTTE RUSSE mark before GMA's use of CHARLOTTE and thus its use is senior to GMA's use.

27.    Another third party with no relation to the present action, Ehringer-Schwarz GMBH & Co. KG, owns the trademark registration for CHARLOTTE in Class 14 for jewelry bearing Reg. No. 2,117,619 issued on December 2, 1997.  The 8&15 Declaration for this trademark  was filed on April 14, 2003 and acknowledged on July 12, 2003.

28.    Charlotte Ford also owned a registration for CHARLOTTE FORD in Class 25 for clothing at the time GMA obtained its CHARLOTTE registrations.

29.    Also, upon information and belief, the owner of the mark CHARLOTTE TARANTOLA has prior common law rights to GMA in the name CHARLOTTE.

30.    Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag, or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products.

### COUNT I OF COUNTERCLAIM

### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON TRADEMARK MISUSE)

31.    Counterclaimants repeat and reallege the allegations set forth in Paragraphs 1 through 30 of their Counterclaim as if fully set forth herein.

32    Notwithstanding the fact that the GMA CHARLOTTE Marks lack significance as single source identifiers, GMA has continued to sue and threaten to sue companies who use the

22

word CHARLOTTE in connection with other words and continues to sue and threaten to sue

retailers for selling said goods.  The suits and threatened suits are both objectively and

subjectively without merit and are interposed by GMA with bad faith and the intent to directly

injure and harass Counterclaimants'  business relationships through the use of governmental

process as an anticompetitive weapon. As a result, Counterclaimants have been injured by

GMA's actions.

33.     Pursuant to 15 U.S.C. § 1119, Counterclaimants seek an order directing

cancellation of the federal registrations of the GMA CHARLOTTE Marks.

## COUNT II OF COUNTERCLAIM

## (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

34.     Counterclaimants repeat and reallege the allegations set forth in Paragraphs 1

through 33 of their Counterclaim as if fully set forth herein.

35.     In GMA's 8 & 15 Declarations, trademark applications, and Statements of Use

filed with the United States Patent and Trademark Office, authorized representatives of GMA

declared that they were aware "that willful statements and the like are punishable by fine or

imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the

like may jeopardize the validity of this document."

36.     In GMA's 8 & 15 Declarations, trademark applications, and Statements of Use

filed with the United States Patent and Trademark Office, authorized representatives of GMA

stated that "all statements made of his/her own knowledge are true and that all statements made

on information and belief are believed to be true."

37.     As of the dates of its use-based applications, Statements of Use and/or the 8&15

Declarations for the various GMA CHARLOTTE Marks, GMA was not using the marks in

connection with all of the goods listed in the applications/registrations, despite its sworn and material statements to the contrary.

38.     Additionally, the dates of first use set forth in the applications for the GMA CHARLOTTE Marks are fraudulent.

39.     Additionally, in connection with those Section 8 and 15 Affidavits where GMA filed the same specimen with that Affidavit as it did with the underlying application to register the mark, GMA fraudulently misled the U.S. Patent and Trademark Office about its continued use of the CHARLOTTE Mark.

40.     Upon information and belief, GMA knew that its representations were false when made and intended for the U.S. Patent and Trademark Office to rely on its statements to issue its registrations.  In the alternative, GMA's misrepresentations were objectively fraudulent regardless of its actual intent or knowledge when it submitted the declarations containing untruthful information.

41.      The U.S. Patent and Trademark Office reasonably relied on GMA's statements in issuing the CHARLOTTE registrations to GMA, causing harm to Defendants.

42.     As set forth above, GMA's actions constitute fraud on the U.S. Patent and Trademark Office.  Accordingly, pursuant to 15 U.S.C. § 1119, Defendants seek an order from the Court directing the cancellation of the federal registrations of the GMA CHARLOTTE Marks and for civil damages pursuant to 15 U.S.C. § 1120.

## COUNT III OF COUNTERCLAIM

### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

43.     Defendants repeat and reallege the allegations set forth in Paragraphs 1 through 42 of their Counterclaim as if fully set forth herein.

24

44.     As set forth above, Charlotte Russe, Charlotte Tarantola, and Charlotte Ford, among others, used marks containing "Charlotte" prior to GMA's use of CHARLOTTE.

45.     GMA knew, or should have known, of the existence of these prior uses.

46.     As a part of its applications which led to the GMA CHARLOTTE Mark Registrations, GMA swore to the U.S. Patent and Trademark Office that no one else had the right to use a mark that was likely to cause confusion with its applied-for marks.

47.     GMA knew that this statement of material fact was false when made and intended for the U.S. Patent and Trademark Office to rely on its statement to issue its registrations. The U.S. Patent and Trademark Office reasonable relied on GMA's statement in issuing the CHARLOTTE registrations to GMA, causing harm to Defendants.

48.     The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark Office.  Accordingly, pursuant to 15 U.S.C. § 1119, Defendants seek an order from the Court directing the cancellation of the federal registrations of the GMA CHARLOTTE Marks and for civil damages pursuant to 15 U.S.C. § 1120.

## COUNT IV OF COUNTERCLAIM

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

49.     Defendants repeat and reallege the allegations set forth in Paragraphs 1 through 48 of their Counterclaim as if fully set forth herein.

50.     Because Quiksilver's manufacture of apparel and related products including "hats" and "hoodies" bearing the word "Charlotte" is displayed as a style name on a hang-tag and not as a designation of source, origin, or sponsorship, GMA has no cause of action against Counterclaimants for any infringing use of Charlotte.

25

51.     In the alternative, in the event that the use of Charlotte on Quiksilver products is deemed to be a trademark use, GMA cannot assert any claims of trademark infringement because Charlotte is not an enforceable trademark because it is used by so many entities in the apparel industry as a style designation in lieu of a style number that Charlotte has no source designating power.

52.     In the alternative, in the event that Charlotte is found to be a valid trademark, it is a very weak mark with a narrow zone of protection.  The nature of Counterclaimants use on Quiksilver products is sufficiently distinct from GMA's use of CHARLOTTE that consumers are not likely to be confused as to the source, connection or sponsorship of either GMA's or Counterclaimants' products.

53.     GMA has asserted, directly and indirectly, that the Quiksilver Charlotte products infringe the GMA CHARLOTTE Marks.  GMA's actions in filing its Complaint against Quiksilver and later filing an Amended Complaint and Second Amended Complaint to add Quiksilver's retailers of those products, and insisting that injunctions be entered, illustrates that an actual controversy exists.

54.     The rights of the parties are dependent upon the facts and application of the law thereto.

55.     Accordingly, pursuant to 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure, Defendants are entitled to a declaratory judgment that the manufacture, marketing, offer for sale, and/or sale of the Quiksilver Charlotte products by Quiksilver or any of its retailers does not infringe GMA's trademark rights or the GMA CHARLOTTE Marks.

26

**PRAYER FOR RELIEF**

WHEREFORE, Defendants and Counterclaimants pray that:

1.    GMA's Second Amended Complaint be dismissed with prejudice and that judgment be entered for Defendants.

2.    With respect to Count I of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE MARKS based on trademark misuse;

3.    With respect to Count II of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks based on fraud;

4.    With respect to Count III of the Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks based on fraud;

5.    With respect to Count IV of the Counterclaim, pursuant to 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure, a order declaring that the manufacture, marketing, offer for sale and/or sale of products or services using "Charlotte" by Quiksilver or its retailers does not infringe GMA's trademark rights and/or the GMA CHARLOTTE Marks;

6.    An award of damages to Counterclaimants as a consequence of Plaintiff's acts of false declarations and/or fraud in obtaining trademark registrations in an amount to be determined at trial or such other sum as this Court shall decide;

27

7.      Awarding Counterclaimants their reasonable attorneys' fees and costs;

8.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues and claims in the Second Amended Complaint and in Counterclaimants' Counterclaims.

**DAY PITNEY LLP**

*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc. relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

By:    s/ Stephen W. Feingold    
      Stephen W. Feingold (SF 2763)
      Richard H. Brown (RB 5858)
      Mark S. Morgan (MM 8799)
      7 Times Square
      New York, New York 10036-7311
      Phone: (212) 297-5800

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

Date:  June 16, 2008
      New York, New York

41871321.1

# EXHIBIT C



1   Christopher Q. Pham, Bar No.: 206697
2   Alexander S. Gareeb, Bar No.: 207473
    **GAREEB | PHAM, LLP**
3   707 Wilshire Boulevard, Suite 5300
4   Los Angeles, California 900017
    Telephone: (213) 455-2930
5   Facsimile: (213) 455-2940
6   Email: cpham@gareebpham.com
    Email: agareeb@gareebpham.com
7
    Attorneys for Plaintiff
8   GURU DENIM, INC.

9
              UNITED STATES DISTRICT COURT FOR THE
10
               CENTRAL DISTRICT OF CALIFORNIA
11

12   GURU DENIM, INC., a California          Case No.: **CV08 - 02970**   ABC
     Corporation,                                                        (MAN)
13
                    Plaintiff,               **COMPLAINT FOR**
14                                           **DECLARATORY JUDGMENT:**
            v.                               **(1) NON-INFRINGEMENT OF**
15                                           **TRADEMARK UNDER**
     GMA ACCESSORIES, INC., a New            **15** *U.S.C.* **§1114**
16   York Corporation,                       **(2) NON-DILUTION OF**
                                             **TRADEMARK UNDER**
17                  Defendant.               **15** *U.S.C.* **§1125(c)**
18

19

20   COMES NOW, through undersigned counsel, Plaintiff GURU DENIM, INC.

21   (hereinafter "Guru Denim"), which respectfully files this Complaint for declaratory

22   judgment pursuant to 28 U.S.C. §2201(a) as follows:

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                        1
     PLAINTIFF GURU DENIM INC.'S COMPLAINT FOR DECLARATORY JUDGMENT

## JURISDICTION

1.     This Court has jurisdiction over this matter under the Federal Declaratory Judgments Act, 28 U.S.C. §2201(a), in that an actual case or controversy exists between the parties due to the fact that on September 25, 2007 and March 5, 2008, Defendant GMA ACCESSORIES, INC. (hereinafter "GMA Accessories") threatened to enforce its trademark rights in court if Plaintiff did not cease and desist from its alleged use of the term "Charlotte" in connection with the sale of Guru Denim's apparel goods.

2.     This Court has federal question jurisdiction under 28 U.S.C. §1331, 28 U.S.C. §1338, and/or 28 U.S.C. §1121.

3.     This Court has personal jurisdiction over GMA Accessories in that (a) Guru Denim manufactured and distributed the allegedly infringing product in this judicial district between February 2007 through September 2007; (b) GMA Accessories conducts substantial business in this judicial district including selling its products in this judicial district and (c) GMA Accessories advertises and solicits sales of its products on a national basis through its interactive website located at http://www.capelli-ny.com/usa.

## VENUE

4.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events that gave rise to the alleged claims occurred in this judicial district.

## PARTIES

5.     Guru Denim is a California corporation, duly organized under the laws of California, with its principal place of business located at 2263 East Vernon Avenue, Vernon, California 90058.

6.     Guru Denim is a wholly owned subsidiary of TRUE RELIGION APPAREL, INC., and manufactures and distributes denim and non-denim men's and women's apparel, including jeans, pants, jackets, skirts, t-shirts, sweaters,

2

1   sweatshirts and other sportswear, under the brand name and trademark "True
2   Religion Brand Jeans."

3       7.    Guru Denim has been selling, distributing and marketing the above
4   items under the brand name and trademark "True Religion Brand Jeans" since
5   August of 2003.

6       8.    Defendant GMA Accessories, Inc., (hereinafter "GMA Accessories")
7   is, on information and belief, a New York corporation with its principal place of
8   business located at 1 East 33rd Street, New York, New York 10016, and according
9   to the company's website, http://capelli-ny.com/usa, manufactures and markets
10  private label and branded fashion products, including "fashion accessories, hosiery,
11  footwear, rainwear, sleepwear, home fashion and novelty gifts."

12                          **FACTUAL ALLEGATIONS**

13      9.    Since 1999, GMA Accessories allegedly owns the mark
14  CHARLOTTE for use in sacks, bags, footwear, headgear and sunglasses.

15      11.    The above-referenced CHARLOTTE® marks in all classes are
16  hereinafter collectively referred to as the CHARLOTTE Mark.

17      12.    The CHARLOTTE Mark consists of words only; with the dominant
18  word "CHARLOTTE" prominently appearing in block letters.

19      13.    Guru Denim previously used the proper first name "Charlotte" to
20  denote a particular style of jean skirt that it manufactured and distributed for a
21  seven month period from February 2007 to September 2007. Guru Denim had a
22  total of 496 pieces of the "Charlotte" style of jean skirt in its inventory at that time,
23  and 478 pieces of the "Charlotte" style of jean skirt were shipped out for sale during
24  the period from February 2007 to September 2007.

25      14.    On September 25, 2007, GMA Accessories sent a cease and desist
26  letter to Guru Denim demanding that Guru Denim "cease and desist all use of the
27  CHARLOTTE brand name," and that Guru Denim stop "purchasing, selling,

28

1  marketing, advertising, distributing or transferring products bearing the

2  CHARLOTTE mark."

3      15.   On September 27, 2007, Guru Denim notified GMA Accessories via

4  letter that it no longer had any of the "Charlotte" style of jean skirt in its inventory

5  and that, because Guru Denim was not interfering with the good will associated

6  with the CHARLOTTE mark, any concerns by GMA Accessories regarding

7  infringement had been sufficiently addressed.

8      16.   On March 5, 2008, GMA Accessories contacted Guru Denim by letter

9  demanding that Guru Denim "comply with the demands" contained in its

10  September 25, 2007, letter or GMA Accessories would seek "further legal action."

11                                **FIRST CAUSE OF ACTION**

12      **(Request for Declaratory Judgment of Non-Infringement of Trademark)**

13      17.   Guru Denim repeats and incorporates herein by reference the

14  allegations in the Paragraphs 1-16.

15      18.   Guru Denim seeks a declaratory judgment pursuant to 28 U.S.C.

16  §2201 and Federal Rule of Civil Procedure 57 for the purpose of determining and

17  adjudicating a dispute and actual controversy between the parties.  A real and actual

18  controversy exists as to whether Guru Denim's use of the common proper first

19  name, "Charlotte," to denote a particular style of jean skirt, which it manufactured

20  and distributed from February 2007 to September 2007, constitutes infringement of

21  the CHARLOTTE mark and whether Guru Denim is currently infringing on the

22  goodwill of the CHARLOTTE mark.

23      19.   Guru Denim contends that its use of the common proper first name,

24  "Charlotte" is not even remotely tantamount to infringement, nor is it likely to

25  result in consumer confusion.

26      20.   Guru Denim, in line with the custom of a multitude of other

27  manufacturers and distributors in the apparel industry, uses proper first names to

28  denote the different styles of denim and non-denim apparel it manufacturers and

sells, including but not limited to "Ava," "Becky," "Billy," "Bobby," "Coco," "Ella," "Grace," "Gwen," "Joey," "Johnny," "Julie," "Kate," "Megan," "Michelle," "Rosie," "Stella," "Stevie," and "Taylor," for women; "Billy," "Bobby," "Jacob," "Joey," "Johnny," and "Logan," for men; and "Billy," "Bobby," "Dolly," "Joey," "Julie," and "Kate," for kids.  These first names are used to differentiate between different cuts and styles of the True Religion Brand Denim Jeans line of apparel, and are not used to identify the source of the particular item of apparel.

21.   Guru Denim markets and sells, and has marketed and sold, all of its items under the "True Religion Brand Jeans" trademark.

22.   The "Charlotte" style of jean skirt was not marketed under the name "Charlotte," but instead, under the "True Religion Brand Jeans" trademark, which indicated that the source of the jean skirt was "True Religion Brand Jeans."

23.   Furthermore, the common proper first name "Charlotte" was not permanently affixed to any of the skirts, further preventing the likelihood of confusion among consumers.

24.   Thus, Guru Denim's use of the common proper first name "Charlotte," as a style name is not intended for the purpose of trademark, nor does it constitute infringement of the CHARLOTTE mark.

25.   Guru Denim contends that its use of the common proper first name "Charlotte" was lawful, consistent with the Lanham Act of the United States of America, including those laws prohibiting infringement, and judicial decisions construing such laws, doctrines, and provisions.

26.   Accordingly, Guru Denim requests that this Court determine and adjudge that Guru Denim's use of the common proper first name, "Charlotte," to denote the particular style of jean skirt it manufactured and distributed from February 2007 to September 2007, does not constitute infringement of the rights of GMA Accessories in the CHARLOTTE mark.

///

## SECOND CAUSE OF ACTION

### (Request for Declaratory Judgment of Non-Dilution of Trademark)

27.    Guru Denim repeats and incorporates herein by reference the allegations in the Paragraphs 1-26.

28.    Based on the facts set forth in the foregoing allegations, an actual controversy exists as to whether Guru Denim's use of the common first name "Charlotte" to denote a particular style of jean skirt for a seven month period from February 2007 to September 2007 has diluted the CHARLOTTE® mark.

29.    The CHARLOTTE® mark is not famous for purposes of a trademark dilution claim because it is not widely recognized by the general consuming public of the United States as a designation of source of GMA Accessories' goods. There are over 100 trademarks owned by third parties other than GMA Accessories that consist of the term "Charlotte," including *Charlotte Russe Merchandising*, which uses the *"Charlotte Russe"* mark on goods in direct competition with GMA Accessories' goods and which itself has recorded $680 million in annual sales. Thus, the CHARLOTTE® mark hardly stands out in the minds of consumers.

30.    In light of the fact that the CHARLOTTE® mark is not a famous mark for purposes of trademark dilution, any claim by GMA Accessories of trademark dilution against Guru Denim cannot be sustained.

31.    Accordingly, Guru Denim requests that this Court determine and adjudge that Guru Denim's use of the common proper first name "Charlotte" during February 2007 through September 2007 did not result in dilution of the CHARLOTTE® mark.

WHEREFORE, IN LIGHT OF THE FOREGOING, Guru Denim respectfully prays that this Court enter judgment as follows:

A.    Guru Denim has not infringed upon the rights of GMA Accessories in the CHARLOTTE® mark.

1    B.    Guru Denim has in no way contributed or caused the dilution of the

2           CHARLOTTE® mark owned by GMA Accessories.

3    C.    GMA Accessories and its licensees are enjoined and restrained from

4           further asserting, contending, claiming or alleging that the

5           CHARLOTTE® mark is being infringed or diluted by Guru Denim.

6    D.    Guru Denim is awarded its costs and fees in this action; and

7    E.    For such other and further relief to which Guru Denim may be entitled

8           as matter of law or equity, or which this Court determines to be just

9           and proper.

12  Dated: May 6, 2008            **GAREEB | PHAM, LLP**

14            By: _____

15                CHRISTOPHER Q. PHAM, ESQ.
                    Attorney for Plaintiff

16                GURU DENIM, INC.

7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV08- 2970 ABC (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Christopher Q. Pham, Bar No.: 206697
GAREEB | PHAM, LLP
707 Wilshire Boulevard, Suite 5300
Los Angeles, California 900017
Telephone: (213) 455-2930
Facsimile: (213) 455-2940

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURU DENIM, INC., a California Corporation<br><br><div align="right">PLAINTIFF(S)</div><br>v.<br>GMA ACCESSORIES, INC., a New York Corporation,<br><br><br><div align="right">DEFENDANT(S).</div> | CASE NUMBER<br><br>CV08-02970  ABC (MANx)<br><br>**SUMMONS** |

TO:    DEFENDANT(S):  GMA ACCESSORIES, INC.

A lawsuit has been filed against you.

Within  20  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, CHRISTOPHER Q. PHAM, ESQ.____, whose address is  GAREEB | PHAM LLP, 707 Wilshire Blvd., Ste. 5300, Los Angeles, CA 90017____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAY – 6 2008

By: _Natalie Hanyaia_
        Deputy Clerk

        *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
GURU DENIM, INC., a California Corporation

**DEFENDANTS**
GMA ACCESSORIES, INC., a New York Corporation

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles County, California

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Christopher Q. Pham, Bar No.: 206697
GAREEB | PHAM, LLP
707 Wilshire Boulevard, Suite 5300, Los Angeles, CA 90017
Tel: (213) 455-2930 Fax: (213) 455-2930

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Section 1114; 15 U.S.C. Section 1125(c)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII. IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

**CV08-02970**

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GMA ACCESSORIES, INC.

               Plaintiff,

   - against -

CROSCILL, INC. and LINENS n' THINGS,
INC.,

               Defendants.

------------------------------------------------------X

**COMPLAINT and Jury Demand**

Civil Action No.:  06 CV 6236 (SHS)

Plaintiff, GMA Accessories, Inc., (hereinafter "GMA"), brings this complaint against, Defendants CROSCILL, INC. (hereinafter "CROSCILL") and LINENS n' THINGS, INC. (hereinafter "LNT") alleging upon information and belief as follows:

## PARTIES

1. Plaintiff, GMA ACCESSORIES, INC. (hereinafter referred to as "GMA"), is a corporation, duly organized and existing under the laws of the State of New York, with a place of business at 1 East 33rd Street, New York, New York.

2. Defendant CROSCILL is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 261 Fifth Avenue, New York, New York  10016.

3. Defendant LNT is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business located at 6 Brighton Road, Clifton, New Jersey 07015.

4. Defendants are displaying, marketing, distributing, selling, and/or offering for sale merchandise, which infringes GMA's trademark rights.

## JURISDICTION AND VENUE

5.  This is an action for unfair competition, federal trademark infringement, federal and state dilution, and common law infringement pursuant to the Lanham Act, 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331, 1338(a) and (b). The Court has supplemental jurisdiction over the common law trademark infringement and unfair competition claim and the trademark dilution claim under the laws of New York pursuant to 28 U.S.C. Section 1367.

6.  Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

## FACTS

7.  The Mark CHARLOTTE has been continuously used, on a nationwide basis, in connection with GMA's products since 1996, and GMA has incurred substantial expense in promoting and advertising its products under the Mark.

8.  Each of GMA's CHARLOTTE registrations pre-date the Defendants' first use of the CHARLOTTE mark.

9.  Since 1999, GMA has been and is now the owner of Registration # 2,216,405 for the mark CHARLOTTE in International Class 26 for hair accessories. This mark was deemed uncontestable pursuant to section 15 on November 11, 2004.

10. Since 1999, GMA has been and is now the owner of Registration # 2,217,341 for the mark CHARLOTTE in International Class 18 for sacks and bags. This mark was deemed uncontestable pursuant to section 15 on November 26, 2004.

2

11. Since 2002, GMA has been and is now the owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25 for clothing, footwear and headgear.

12. Since 2002, GMA has been and is now the owner of Registration # 2,561,025 for the mark CHARLOTTE in International Class 9 for sunglasses.

13. GMA is also the owner of the mark CHARLOTTE & Friends, which is the subject of 6 additional federal trademark registrations. ("CHARLOTTE" and "CHARLOTTE & Friends" are hereinafter collectively referred to as the "GMA Marks.")

14. Since 2000, GMA has been and is now the owner of Registration # 2,412,360 for the mark CHARLOTTE & Friends in International Class 25 for clothing, footwear and headgear.

15. Since 2000, GMA has been and is now the owner of Registration # 2,412,359 for the mark CHARLOTTE & Friends in International Class 26 for hair accessories.

16. Since 2000, GMA has been and is now the owner of Registration # 2,412,361 for the mark CHARLOTTE & Friends in International Class 18 for sacks and bags.

17. Since 2001, GMA has been and is now the owner of Registration # 2,444,120 for the mark CHARLOTTE & Friends in International Class 28 for toys.

18. Since 2000, GMA has been and is now the owner of Registration # 2,412,362 for the mark CHARLOTTE & Friends in International Class 3 for cosmetics.

19. Since 2003, GMA has been and is now the owner of Registration # 2,682,145 for the mark CHARLOTTE & Friends in International Class 9 for sunglasses.

3

20. In November of 2001, Opposer was assigned all rights to Registration # 1135037. Pursuant to said assignment, GMA's use in commerce of the CHARLOTTE mark dates back to January 2, 1979.

21. The GMA Marks consist of words only, with the dominant word CHARLOTTE prominently appearing in block letters.

22. The use of the word CHARLOTTE in the GMA Marks in connection with GMA's products is arbitrary.

23. Defendants were aware of the GMA marks before they began using CHARLOTTE to identify their goods.

24. Defendants are now using the mark CHARLOTTE to identify their goods.

25. Defendants are intentionally infringing upon the GMA marks.

26. Defendants are infringing in bad faith.

27. Prior to using the CHARLOTTE mark, Defendants failed to conduct a trademark search.

28. The CHARLOTTE mark is inherently distinctive as it pertains to the goods that are the subject of this proceeding and the GMA registration.

29. GMA's use of the GMA marks has substantial secondary meaning in the marketplace.

30. As a result of GMA's continuous and exclusive use of the trade dress and trademark, its extensive advertising and promotion of products using its trade dress and trademark, the purchasing public has come to associate CHARLOTTE as the source and sponsor of CHARLOTTE brand products.

31. Since at least summer of 2006, Defendants have advertised their products as CHARLOTTE brand.

4

32. Since at least the Summer of 2006, DEFENDANTS have sold an infringing line of "CHARLOTTE" bath products and novelties, bedding, accessories, housewares and home fashions.

33. Defendants have been offering for sale products using a confusingly similar name, e.g., "CHARLOTTE" Collection.

34. Defendants have used and is using the mark CHARLOTTE that is confusingly similar to PLAINTIFF's CHARLOTTE.

35. The overall look, color, and appearance of the trademark CHARLOTTE in defendants' advertising and promotional materials for the Defendants' products is likely to cause confusion with PLAINTIFF's trade dress and trademark for its CHARLOTTE brand products.

36. Defendants, by their acts as aforesaid, have taken advantage of the creative skill of PLAINTIFF, and of the good will developed by PLAINTIFF, and have capitalized upon advertisements for CHARLOTTE.

37. By its use of a word mark identical to PLAINTIFF's, Defendants have been able to pass off and sell their products as a substitute for original CHARLOTTE brand products.

38. The Defendants' use of PLAINTIFF's trade dress and word mark represents a knowing and willful attempt by the Defendants to trade on PLAINTIFF's good will and to pass-off its products as, either originating from, being associated with, or being sponsored by PLAINTIFF.

39. Defendants have extensively advertised, promoted, marketed and sold their products under the brand name CHARLOTTE Collection.

40. Having adopted the mark after plaintiff, defendants are the junior users of the

mark.

## COUNT I – TRADE DRESS INFRINGEMENT (FEDERAL)

41. GMA repeats and realleges the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. Long after the adoption and use by GMA of the CHARLOTTE Trademark, and with at least constructive notice of the registration of the GMA Trademarks, Defendants have and continue to knowingly and intentionally use counterfeits, reproductions, copies or colorable imitations of the CHARLOTTE Trademarks to market, promote, identify design, manufacture, sell and distribute their products.

43. Defendant Linen's n Things was notified by letter dated May 30, 2006 that they should not be using the CHARLOTTE name. A copy is annexed hereto as Ex A.

44. Linen's n Things with 2005 sales of $2.7 billion ignored the letter.

45. Defendants continue to inject their products into commerce with the express intent of profiting from GMA's valuable registered trademarks by confusing the consuming public and trade as to the source and quality of their goods and creating the false impression that their goods originated from, or were authorized, sponsored or approved by GMA.

46. Copies of some of defendants' advertisements are annexed as Ex B.

47. A receipt for sales of infringing products by defendants is annexed as Ex C.

48. The acts of Defendants complained of herein have been without the

6

authorization or consent of GMA.

49. The activities of Defendants, complained of herein, constitute willful and intentional counterfeiting and infringement of the GMA Trademarks in violation of the Lanham Act, 15 U.S.C. Section 1114(1), have improperly caused trade to be diverted from GMA and have caused and will continue to cause irreparable harm and injury to GMA.

## COUNT II - TRADEMARK DILUTION (FEDERAL)

50. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 47 above as though fully set forth at length herein.

51. Plaintiff is entitled to protection of its mark under the Federal Trademark Dilution Act, 15 U.S.C. § 1125 (c)("FTDA").

52. Plaintiff is suffering the lessening of the capacity of its CHARLOTTE mark to identify and distinguish its merchandise.

53. Defendants are responsible for this dilution of GMA's CHARLOTTE mark.

54. GMA's CHARLOTTE is the senior mark.

55. The senior mark is famous.

56. The senior mark is distinctive.

57. The Defendants junior use is a commercial use in commerce.

58. The junior commercial use in commerce began after the senior mark became famous.

59. The Defendants' use of CHARLOTTE causes dilution of the distinctive quality of the senior mark.

## COUNT III - UNFAIR COMPETITION, FALSE DESIGNATION OF

7

## ORIGIN, AND FALSE DESCRIPTION OR REPRESENTATION (FEDERAL)

60. As a cause of action and ground for relief, CHARLOTTE alleges that Defendants are engaged in acts of unfair competition, false designation of origin, and false description or representation in violation of § 43(a) of the Lanham act, 15 U.S.C. § 1125(a), and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 54 as if fully set forth herein.

61. Upon information and belief, because of the nearly identical appearance of Defendants' use of CHARLOTTE, the public has already believed and is likely to continue to belief that Plaintiff's higher quality products are in some way associated with, affiliated with and/or originating from Defendants.

62. Upon information and belief, Defendants have intentionally engaged in and will continue to engage in acts of false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with PLAINTIFF, or as to the origin, sponsorship, or affiliation of plaintiff's products with Defendants.

63. Defendants' aforesaid acts constitute unfair competition, false designation of origin, and/or false description or representation in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of the Defendants' infringement of PLAINTIFF's trademark and will continue to do so unless enjoined by this Court.

## COUNT IV - VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

65. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 62 as if fully set forth herein.

66. Section 360-1 of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark . . . or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-1.

67. Defendants have engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale a product using the exact same CHARLOTTE word mark and upon information and belief continues to fill purchase orders using the word CHARLOTTE for this product.

68. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Plaintiff's products.

69. Defendants have engaged in, and continues to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to affiliation, connection or association of the Plaintiff's

9

products with the Defendants' products.

70. PLAINTIFF has not consented to any sponsorship, approval, status, affiliation, or connection with the Defendants' products.

71. PLAINTIFF has been irreparably damaged, and will continue to be damaged by Defendants' trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

### COUNT V – VIOLATION OF TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, MISAPPROPRIATION AND UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

72. As a cause of action and ground for relief, CHARLOTTE alleges that Defendants are engaged in acts of trademark infringement, trade dress infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 69 as if fully set forth herein.

73. Defendants have infringed PLAINTIFF's trade dress and trademarks and continue to do so, by manufacturing, marketing and/or selling products that infringe, PLAINTIFF's CHARLOTTE trade dress and CHARLOTTE trademark

74. Defendants' acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

75. Upon information and belief, Defendants intend that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

76. Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the

deceptive practices have caused and continue to cause injury to consumers. Unless Defendants' acts are restrained by this Court, Defendants' deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

77. Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with PLAINTIFF, or origin, sponsorship, or affiliation of Plaintiff's products by Defendants.

78. Defendants' acts have harmed PLAINTIFF's reputation and have severely damaged PLAINTIFF's goodwill.

79. Defendants have unfairly competed with PLAINTIFF, and upon information and belief, continues to do so, by selling "CHARLOTTE" products to purchasers seeking products under a mark that is confusingly similar to PLAINTIFF's "CHARLOTTE" products and infringe PLAINTIFF's trade dress and trademark for these products. Upon information and belief Defendants' acts are in an attempt to deceive the public. The public is likely to be confused as to the source and origin of Plaintiff's products.

80. Defendants have misappropriated PLAINTIFF's trade dress and trade name, and upon information and belief continues to do so, by selling products that is ordered under a mark that is confusingly similar to PLAINTIFF's line of "CHARLOTTE" products using the exact same word mark for said products.

81. Defendants' trade name infringement is in violation of the common law of New York.

82. Defendants' aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of PLAINTIFF's trade dress and trademark,

11

unfair competition, palming-off and passing-off against PLAINTIFF, and unjust enrichment by Defendants, all in violation of PLAINTIFF's rights under the common law of New York.

83. Defendants' aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with PLAINTIFF, or origin, sponsorship, or affiliation of Plaintiff's products by Defendants. The public is likely to be confused as to the source, origin, sponsorship, approval or certification of Plaintiff's products.

84. Upon information and belief, Defendants' actions have been willful and deliberate.

85. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore PLAINTIFF is entitled to injunctive relief under New York Common Law.

**WHEREFORE**, PLAINTIFF prays:

A.     That this Court adjudge that the Defendants have infringed, tarnished and diluted GMA's trade dress and trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in this Complaint, in violation of PLAINTIFFS' rights under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), New York statutory and common law.

B.     That Defendants, and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained (1) from reproducing, copying, displaying, the CHARLOTTE mark and

12

(2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing "CHARLOTTE" products or (3) from in any other way infringing PLAINTIFF's "CHARLOTTE" trade dress and word mark. Including, in particular, that Defendants be preliminarily and permanently enjoined and restrained directly or indirectly from:

(1)    Using the CHARLOTTE Trademark, or any other confusingly similar marks, in connection with the advertising, distribution, promotion, offering for sale or sale of Defendants line of "CHARLOTTE" products.

(2)    Holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "CHARLOTTE" Trademark;

(3)    Performing any actions or using any words, names, styles, titles or marks which are likely to cause confusion to cause mistake or to deceive, or to otherwise mislead the trade or public into believing that CHARLOTTE and the Defendants are one and the same or are in any way connected, or that Defendants are a sponsor of Plaintiff, or that Defendants and Plaintiff are in any manner affiliated or associated with or under the supervision or control of each other, or that Plaintiff's products originate from Defendants or are otherwise manufactured, offered for sale or sold with approval, consent authorization, or under the supervision of Defendants, to engage in any other activity which may lead the trade or public to associate Defendants with PLAINTIFF;

(4)    Using any words, names, styles, titles or marks, either individually or otherwise, which create a likelihood of injury to the business

13

reputation of PLAINTIFF, or a likelihood of dilution of PLAINTIFF's Trademark and the goodwill associated therewith;

(5)    Engaging in any other practices, including those complained of herein, which tend to unfairly compete with or injure PLAINTIFF's business and the goodwill appertaining thereto;

(6)    Effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (6) hereof.

C.    That Defendants be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the infringed "CHARLOTTE" trade dress and word mark, and any plates, molds, and other materials for making such infringing products.

D.    That Defendants be directed to file with this Court and to serve upon GMA within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs B and C, pursuant to 15 U.S.C. 1116(a).

E.    That GMA recover Defendants' profits arising from Defendants' acts of trade dress and trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and business practices, and consumer fraud pursuant to 15 U.S.C. 1117(a).

F.    That the Court treble such damages as awarded pursuant to 15

14

U.S.C. 1117(a).

G.    That CHARLOTTE recover pre-judgment and post-judgment interest on each and every award.

H.    That CHARLOTTE recover its reasonable attorney fees incurred in this action pursuant to 15 U.S.C 1117(a).

I.    That CHARLOTTE have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

J.    That CHARLOTTE have such other and further relief as the Court may deem just and proper.

K.    That CHARLOTTE at its option be awarded statutory damages of $1 million in lieu of actual damages pursuant to 1117(a).

## JURY DEMAND

GMA respectfully requests a trial by jury as to all issues.

Dated: New York, New York
       August 16, 2006

Respectfully Submitted,

THE BOSTANY LAW FIRM

By:_____
       JOHN P. BOSTANY (JB-1996)
       Attorney for Plaintiff GMA Accessories, Inc.
       40 Wall Street, 61st Floor
       New York, New York 10005
       (212) 530-4400

15

# THE BOSTANY LAW FIRM

40 WALL STREET

NEW YORK, NEW YORK 10005-1315

TEL: 212-530-4400

FAX: 212-530-4488

**BROOKLYN OFFICE**

ONE 74TH STREET
BROOKLYN, NY 11209

**NEW JERSEY OFFICE**

ONE GATEWAY CENTER
NEWARK, NJ 07102

May 30, 2006

**AIR MAIL**

Robert J. DiNicola, CEO
Linens n' Things, Inc.
6 Brighton Rd.
Clifton, NJ 07015

Re:    CHARLOTTE® Trademark Infringement

Dear Mr. DiNicola:

We represent GMA Accessories, Inc. the owner of the registered trademark CHARLOTTE® in class 26 and CHARLOTTE and friends® in classes 3 and 18. It has come to our attention that you are marketing and selling counterfeit CHARLOTTE goods under your own label without permission from the trademark owner in violation of the Lanham Act.

We demand that you immediately cease and desist this blatant copying of the CHARLOTTE brand name. Provide me with certification within 5 days of your receipt of this letter that you have stopped purchasing, selling, marketing, advertising, distributing or transferring products bearing the CHARLOTTE mark. Within seven days of your receipt of this letter we demand that you provide us:

(1)    a list of all items that you have purchased, advertised, and/or sold that in any way incorporate GMA's CHARLOTTE brand name;

(2)    the quantity sold; and your inventory

If you refuse to cooperate with our informal demands we will have no alternative but to commence a lawsuit in the United States District Court seeking, *inter alia,* a preliminary injunction, permanent injunction, recovery of all profits that you have made, recovery of GMA's damages, attorney's fees, costs and statutory damages as allowed by law.

Sincerely,



John P. Bostany

 Home | About UPS | Contact UPS | Getting Started @ UPS.com



**UPS Uni**

Shipping | **Tracking** | Support | Business Solutions

## Tracking

→ Track by Tracking Number
> Track by E-mail
> Import Tracking
  Numbers 🔒
→ Track by Reference Number
→ Track by Freight Tracking
  Number
→ Track by Freight Shipment
  Reference
→ Track with Quantum View
→ Sign Up for Signature
  Tracking 🔒
→ Void a Shipment 🔒
→ Help

Log-In  User ID: [          ]  Password: [          ] | Forgot Password

# ▌▌║▌║ Track by Tracking Number

### View Tracking Summary

To see a detailed report for each package, please select the **View package progress lir**

| Tracking Number | Status | Delivery Information | |
|---|---|---|---|
| 1. 1Z 28Y F56 37 1001 042 5 | **Delivered** | Delivered on: | 06/01/2006 9:25 A.M. |
| | | Delivered to: | CLIFTON, N |
| | | Signed by: | CRUM |
| | | Service Type: | 2ND DAY AII |

→ View package progress

Tracking results provided by UPS: 08/15/2006 4:59 P.M.  Eastern Time (USA)

---

**UPS 2nd Day Air**

*Shipping Document*

See instructions on back. Visit UPS.com® or call 1-800-PICK-UPS® (800-742-5877) for additional information and Terms and Conditions.

TRACKING NUMBER    1Z 28Y F56 37 1001 0425

① SHIPMENT FROM
SHIPPER'S UPS ACCOUNT NO.    2 8 Y F 5 6

REFERENCE NUMBER

NAME  Lindsay McLeod    TELEPHONE 212-530-4400

COMPANY  THE BOSTANY LAW FIRM

STREET ADDRESS  40 WALL ST FLR 61

CITY AND STATE  NEW YORK    ZIP CODE  NY 10005-1304

② DELIVERY TO
NAME  Robert J DiNicola    TELEPHONE

COMPANY  Linens n' Things, Inc

STREET ADDRESS  6 Brighton RD.    DEPT./FLR.    Residential Delivery

CITY AND STATE  Clifton, NJ    ZIP CODE  07015

③ WEIGHT  Enter "LTR" if Letter  LTR    DIMENSIONAL WEIGHT  If Applicable    LARGE AIR PACKAGE ☐    ④ SHIPPER RELEASE™ ☐

CHARGES

⑤ 2ND DAY AIR CHARGE    $

⑥ SATURDAY PICKUP    See instructions.    $

OPTIONAL SERVICES    DECLARED VALUE FOR CARRIAGE    $    AMOUNT    $

C.O.D.    $    AMOUNT    $

⑦ ADDITIONAL HANDLING CHARGE    An Additional Handling Charge applies for certain items. See instructions.    $

TOTAL CHARGES    $

⑧ METHOD OF PAYMENT    BILL SHIPPER'S ACCOUNT NUMBER ☑    BILL RECEIVER ☐    BILL THIRD PARTY ☐    CREDIT CARD ☐    American Express Diner's Club MasterCard Visa    CHECK ☐

⑨ RECEIVER'S / THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.    EXPIRATION DATE

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE    ZIP CODE

⑩ SHIPPER'S SIGNATURE  X    DATE OF SHIPMENT  05/31/06

All shipments are subject to the terms contained in the UPS Tariff and Terms and Conditions of Service, which are available at ups.com and local UPS offices.

0201911262609 1/05 S    SHIPPER'S COPY



Gift Registry | Store Locator | Track Order | My Account |

NATE BERKUS ›  › destination dorm › what's

Bedding | Bath | Dining | Kitchen | Electrics | Home Decor | Window | Organization | Gi

Sign Up for LNT News & Offers

keyword or LNT.com #

Home > Fashion Towels



🔍 Click for larger image

## Charlotte Towels

**From $8.99 to 17.99**

Free Shipping on orders over $150!* (See Promotion Details)

The Charlotte Bath Towels have a graceful embroidery. Made of 100% cotton. The matching ...(see detail)

✉ Email A Friend

You May Als:



Cha
Cur
mor

📖 View All Su:

ADD TO REGISTRY ›        ADD T

| Item | Product Notes | Quantity |
|---|---|---|
| Charlotte Bath Towel Natural | 🏠 In Store Pickup Available<br>IN STOCK | 0 |
| Charlotte Hand Towel Natural | 🏠 In Store Pickup Available<br>IN STOCK | 0 |
| Charlotte Fingertip Towel Natural | 🏠 In Store Pickup Available<br>IN STOCK | 0 |

**You may also like:**





Gift Registry | Store Locator | Track Order | My Account |

NATE BERKUS | *Eddie Bauer* | destination dorm | what's

| Bedding | Bath | Dining | Kitchen | Electrics | Home Decor | Window | Organization | Gi

[ ✓ ] Sign Up for LNT News & Offers

keyword or LNT.com #

Home > Shower Curtains > Fabric



Q Click for larger image

### Charlotte Shower Curtain

**$39.99**

Free Shipping on orders over $150!* (See Promotion Details)

The Charlotte Shower Curtain is made of 100% polyester and has a graceful pattern in a ...(see detail)

✉ Email A Friend

◁ Item 17 of 6£

**You May Als**



Cha
Acc
mor

📋 View All Su



🔒 Recently Vit

( ADD TO REGISTRY : )    ( ADD I[

| Item | Product Notes | Quantity |
|---|---|---|
|  **Charlotte Fabric Shower Curtain Natural** | 🏠 In Store Pickup Available  IN STOCK | 0 |

**You may also like:**

| Item | Product Notes | Quantity |
|---|---|---|

**Charlotte Bath Accessories**

 Select Item    [ 0 ] |

Buy Additional Colors or Sizes

**Wall Mount Tension Shower Rod**

# LINENS·N·THINGS

**Your Home Super Store**

Gift Registry | Store Locator | Track Order | My Account

NATE BERKUS ›  › destination dorm › what's

Bedding | Bath | Dining | Kitchen | Electrics | Home Decor | Window | Organization | Gi

Sign Up for LNT News & Offers

keyword or LNT.com #

Home > Bath Collections > Floral



🔍 Click for larger image

## Charlotte Bath Accessories

### From $12.99 to 44.99

◁ Item 7 of 15

Free Shipping on orders over $150!* (See Promotion Details)

The Charlotte Bath Collection has gracefully contoured resin accessories in a neutral ...(see detail)

✉ Email A Friend

**You May Als**



Cha
Cur
mor

📄 View All Su

📄 Recently Vi

  ADD TO REGISTRY ›    ADD it

| Item | Product Notes | Quantity |
|---|---|---|
| | 🏠 In Store Pickup Available | |
| **Charlotte Bath Accessories Toothbrush Holder Natural** | IN STOCK | 0 |
| | 🏠 In Store Pickup Available | |
| **Charlotte Bath Accessories Lotion Pump Natural** | IN STOCK | 0 |
| | 🏠 In Store Pickup Available | |
| **Charlotte Bath Accessories Jar Natural** | IN STOCK | 0 |
| | 🏠 In Store Pickup Available | |



| Company | Products | Purchase | Decorating | Help | Search |

Home > Products > Bath Accessories > Charlotte

## Bath Accessories

Select A Style ▼

| Previous Style | Next Style | Zoom Picture | Purchase Style |



**Charlotte**

Embossed blooming floral clusters, in gentle shades of blu and green, on an ivory background are the centerpiece of this richly detailed, hand painted collection formed in res Embroidered towels and a print shower curtain complete the ensemble.

```
           LINENS 'N THINGS
           MILL CREEK CENTER
        150 HARMON MEADOW BOULEVARD
           SECAUCUS, NJ 07094
             201-866-6065
    05633 08-13-06 02:41P karen  Q1183 06

GUEST RECEIPT COPY

CHARLOTTE  RUG      NAT      34.99
083013904466
CHARLOTTE  TIP TOWEL NAT      8.99
083013899571
CHARLOTTE  BATH TOWE NAT     17.99
083013899564
CHARLOTTE  SHOWER CU NAT     39.99
083013904367
CHARLOTTEH HOOKS     MUL     14.99
083013901458
CHARLOTTEA LOTION PU NAT     14.99
083013897485
CHARLOTTEA SOAP DISH NAT     12.99
083013897492
CHARLOTTEA TISSUE CO NAT     29.99
083013897515
CHARLOTTEA TUMBLER   NAT     12.99
083013897522
CHARLOTTEA WASTEBASK NAT     39.99
083013897539
CHARLOTTEA JAR       NAT     14.99
083013897478
CHARLOTTEA TOOTHBRUS NAT     12.99
083013897508
CHARLOTTE  HAND TOWE NAT     14.99
083013899588


SUB TOTAL               270.87
SALES TAX                18.96
TOTAL                 ****289.83
AMOUNT TENDERED
DEBIT                   289.83
CARD #:       S ***********2018
AMOUNT         289.83
432682 APPROVED



CHANGE                      .00
    THANK YOU FOR BEING OUR GUEST
           LINENS 'N THINGS
    GIFT REGISTRY AVAILABLE NATIONWIDE

    05633 08-13-06 02:41P karen  Q1183 06

        SHOP LNT.COM ANYTIME!
```



```
0118308130600605633
```

07 CV 3219

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GMA ACCESSORIES, INC.

Plaintiff,

**COMPLAINT and**
**Jury Demand**

Civil Action No.

RECEIVED
APR 2 0 2007
U.S.D.C. S.D. N.Y.
CASHIERS

- against -

BOP, LLC, GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
JONATHAN SOLNICKI,
BELMONDO and EMINENT, INC.

Defendants.
-----------------------------------------------------------------X

Plaintiff, GMA Accessories, Inc., (hereinafter "GMA"), brings this complaint against
Defendants BOP, LLC (hereinafter "BOP") and GIRLSHOP, INC. (hereinafter "GIRLSHOP")
and SHOWROOM SEVEN STUDIOS, INC. (hereinafter "SHOWROOM") and JONATHAN
SOLNICKI ("hereinafter "SOLNICKI") and BELMONDO (hereinafter "BELMONDO") and
EMINENT, INC. (hereinafter "EMINENT") alleging upon information and belief as follows:

## PARTIES

1. Plaintiff, GMA ACCESSORIES, INC. (hereinafter referred to as "GMA"), is a
   corporation, duly organized and existing under the laws of the State of New York,
   with a place of business at 1 East 33rd Street, New York, New York.

2. GMA does business as "Capelli New York".

3. Defendant BOP is a limited liability company duly organized and existing under the
   laws of the State of Wisconsin, with its principal place of business located at 101 East
   Badger Road, Madison, WI 53713.

4. Defendant GIRLSHOP is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 154 West 14th Street, 9th Floor, New York, NY 10011.

5. Defendant SHOWROOM is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 498 7th Avenue, 24th Floor, New York, NY 10018.

6. Defendant SOLNICKI is an individual residing at Martin Lezica 3098 – B1642GJB San Isidro – Buenos Aires, Argentina.

7. Defendant BELMONDO is an unorganized business with its principal place of business located at 605 Hwy 35, Shrewsbury, NJ 07702.

8. Defendant EMINENT is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 16000 Canary Ave., La Mirada, CA 90638.

9. Defendants are using CHARLOTTE and/or CHARLOTTE SOLNICKI to display, market, distribute, sell, and/or offer for sale merchandise to the public.

10. Defendants have in the past displayed, marketed, distributed, sold, and/or offered for sale merchandise in connection with the CHARLOTTE mark (hereinafter "past infringing items").

11. EMINENT uses the website www.revolveclothing.com to further infringe upon the CHARLOTTE mark.

12. BELMONDO uses the website www.girldujour.com to further infringe upon the CHARLOTTE mark.

13. SOLNICKI uses the website www.charlottesolnicki.com to further infringe upon the CHARLOTTE mark.

2

14. BOP uses the website www.shopbop.com to further infringe upon the CHARLOTTE mark.

15. GIRLSHOP uses the website www.girlshop.com to further infringe upon the CHARLOTTE mark.

## JURISDICTION AND VENUE

16. This is an action for unfair competition, federal trademark infringement, federal and state dilution, and common law infringement pursuant to the Lanham Act, 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331, 1338(a) and (b).  The Court has supplemental jurisdiction over the common law trademark infringement and unfair competition claim and the trademark dilution claim under the laws of New York pursuant to 28 U.S.C.  Section 1367.

17. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

## FACTS

18. The Mark CHARLOTTE has been continuously used, on a nationwide basis, in connection with GMA's products since 1996, and GMA has incurred substantial expense in promoting and advertising its products under the Mark.

19. Each of GMA's CHARLOTTE registrations pre-date the Defendants' first use of the CHARLOTTE mark.

20. Under Section 33(b) of the Lanham Act, registration of an incontestable mark is conclusive evidence of the ownership of the mark, the validity of the mark and the exclusive right of the owner to use the mark in commerce.

3

21. Since 1999, GMA has been and is now the owner of Registration # 2,216,405 for the mark CHARLOTTE in International Class 26. This mark was deemed uncontestable pursuant to section 15 of the Lanham Act.

22. Since 1999, GMA has been and is now the owner of Registration # 2,217,341 for the mark CHARLOTTE in International Class 18. This mark was deemed uncontestable pursuant to section 15 of the Lanham Act.

23. Since 2002, GMA has been and is now the owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25. This mark has been deemed uncontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act.

24. Since 2002, GMA has been and is now the owner of Registration # 2,561,025 for the mark CHARLOTTE in International Class 9.

25. GMA is also the owner of the mark CHARLOTTE & Friends, which is the subject of 6 additional federal trademark registrations. ("CHARLOTTE" and "CHARLOTTE & Friends" are hereinafter collectively referred to as the "GMA Marks.")

26. In November of 2001, Opposer was assigned all rights to Registration # 1135037. Pursuant to said assignment, GMA's use in commerce of the CHARLOTTE mark dates back to January 2, 1979.

27. The GMA Marks consist of words only, with the dominant word CHARLOTTE prominently appearing in block letters.

28. The use of the word CHARLOTTE in the GMA Marks in connection with GMA's products is arbitrary.

29. Defendants were aware of the GMA marks before they began using CHARLOTTE to identify their goods.

30. Defendants are now using the mark CHARLOTTE to identify their goods.

31. Defendants are intentionally infringing upon the GMA marks.

32. Defendants are infringing in bad faith.

33. Prior to using the CHARLOTTE mark, Defendants failed to conduct a trademark search.

34. Defendants commenced use of the CHARLOTTE mark after December, 2004.

35. The CHARLOTTE mark is inherently distinctive as it pertains to the goods that are the subject of this proceeding.

36. GMA's use of CHARLOTTE has substantial secondary meaning in the marketplace.

37. Since at least summer of 2006, Defendants have advertised their products as CHARLOTTE brand.

38. Since at least the summer of 2006, DEFENDANTS have sold an infringing line of "CHARLOTTE" brand clothing.

39. The past and present infringing items are products closely related to those for which GMA owns registered trademarks.

40. The past and present infringing goods are in Class 25.

41. Plaintiff has priority over defendants in the CHARLOTTE mark for products in Class 25.

42. Defendants have been offering for sale products using a confusingly similar name, e.g., "CHARLOTTE" Collection, CHARLOTTE and/or CHARLOTTE SOLNICKI.

43. Defendants, by their acts as aforesaid, have taken advantage of the creative skill of PLAINTIFF, and of the good will developed by PLAINTIFF, and have capitalized upon advertisements for CHARLOTTE.

44. The Defendants' use of PLAINTIFF's word mark results in confusion as to

sponsorship, association, source and origin of the party's products.

45. Defendants have extensively advertised, promoted, marketed and sold their products under names CHARLOTTE and/or CHARLOTTE SOLNICKI.

46. Having adopted the mark after plaintiff, defendants are the junior users of the mark.

## COUNT I – TRADEMARK INFRINGEMENT (FEDERAL)

47. GMA repeats and realleges the allegations of paragraphs 1 through 46 as if fully set forth herein.

48. Long after the adoption and use by GMA of the CHARLOTTE Trademark, and with at least constructive notice of the registration of the GMA Trademarks, Defendants have and continue to knowingly and intentionally use reproductions, copies or colorable imitations of the CHARLOTTE Trademarks to market, promote, identify design, manufacture, sell and distribute their products.

49. Defendants continue to inject their products into commerce with the express intent of profiting from GMA's valuable registered trademarks.

50. The acts of Defendants complained of herein have been without the authorization or consent of GMA.

51. The activities of Defendants, complained of herein, constitute willful and intentional infringement of the GMA Trademarks in violation of Section 35 of the Lanham Act, 15 U.S.C. Section 1114(1), have improperly caused trade to be diverted from GMA and have caused and will continue to cause irreparable harm and injury to GMA.

6

## COUNT II - VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

52. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 51 as if fully set forth herein.

53. Section 360-1 of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark . . . or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-1.

54. Defendants have engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale products using the same, or similar CHARLOTTE word mark and upon information and belief continues to fill purchase orders using the word CHARLOTTE and/or CHARLOTTE SOLNICKI for this product.

55. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Plaintiff's products.

56. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to affiliation, connection or association of the Plaintiff's products with the Defendants' products.

7

57. PLAINTIFF has not consented to any sponsorship, approval, status, affiliation, or connection with the Defendants' products.

58. PLAINTIFF has been irreparably damaged, and will continue to be damaged by Defendants' trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

## COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

59. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in acts of trademark infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 58 as if fully set forth herein.

60. Defendants have infringed PLAINTIFF's trademarks and continue to do so, by manufacturing, marketing and/or selling products that infringe the CHARLOTTE trademark

61. Defendants' acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

62. Upon information and belief, Defendants intend that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

63. Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers. Unless Defendants' acts are restrained by this Court, Defendants' deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

64. Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to

8

affiliation, connection, or association with PLAINTIFF, or origin, sponsorship, or affiliation of Plaintiff's products by Defendants.

65. Defendants' acts have harmed PLAINTIFF's reputation and have severely damaged PLAINTIFF's goodwill.

66. Upon information and belief Defendants' acts are an attempt to deceive the public. The public is likely to be confused as to the source and origin of Plaintiff's products.

67. Defendants have misappropriated PLAINTIFF's trade name, and upon information and belief continue to do so, by selling products that is ordered under a mark that is confusingly similar to PLAINTIFF's line of "CHARLOTTE" products.

68. Defendants' trade name infringement is in violation of the common law of New York.

69. Defendants' aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of PLAINTIFF's trademark, unfair competition, palming-off and passing-off against PLAINTIFF, and unjust enrichment by Defendants, all in violation of PLAINTIFF's rights under the common law of New York.

70. Defendants' aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with PLAINTIFF, or origin, sponsorship, or affiliation of Plaintiff's products by Defendants.

71. The public is likely to be confused as to the source, origin, sponsorship, approval or certification of the parties' products.

72. Upon information and belief, Defendants' actions have been willful and deliberate.

73. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore PLAINTIFF is entitled to injunctive relief under New York Common Law.

**WHEREFORE**, PLAINTIFF prays:

A.    That this Court adjudge that the Defendants have infringed, tarnished and diluted GMA's CHARLOTTE trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in this Complaint, in violation of PLAINTIFFS' rights under the Lanham Act, 15 U.S.C. §§ 1114, New York statutory and common law.

B.    That Defendants, and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, CHARLOTTE and/or CHARLOTTE SOLNICKI and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing products in connection with CHARLOTTE or CHARLOTTE SOLNICKI or (3) from in any other way infringing PLAINTIFF's "CHARLOTTE" word mark.    Including, in particular, that Defendants be preliminarily and permanently enjoined and restrained directly or indirectly from:

(1)    Using the CHARLOTTE or CHARLOTTE SOLNICKI Trademark, or any other confusingly similar marks, in connection with the advertising, distribution, promotion, offering for sale or sale of Defendants line of "CHARLOTTE" products.

(2)    Holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "CHARLOTTE" Trademark;

(3)    Performing any actions or using any words, names, styles, titles or marks which are likely to cause confusion to cause mistake or to deceive, or to

otherwise mislead the trade or public into believing that CHARLOTTE and the Defendants are one and the same or are in any way connected, or that Defendants are a sponsor of Plaintiff, or that Defendants and Plaintiff are in any manner affiliated or associated with or under the supervision or control of each other, or that Plaintiff's products originate from Defendants or are otherwise manufactured, offered for sale or sold with approval, consent authorization, or under the supervision of Defendants, to engage in any other activity which may lead the trade or public to associate Defendants with PLAINTIFF;

(4)    Using any words, names, styles, titles or marks, either individually or otherwise, which create a likelihood of injury to the business reputation of PLAINTIFF, or a likelihood of dilution of PLAINTIFF's Trademark and the goodwill associated therewith;

(5)    Engaging in any other practices, including those complained of herein, which tend to unfairly compete with or injure PLAINTIFF's business and the goodwill appertaining thereto;

(6)    Effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (6) hereof.

C.    That Defendants be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the infringed "CHARLOTTE" (including CHARLOTTE SOLNICKI) word mark, and any plates, molds, and other materials for making such infringing products.

11

D. That Defendants be directed to file with this Court and to serve upon GMA within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs B and C, pursuant to 15 U.S.C. 1116(a).

E. That GMA recover Defendants' profits arising from Defendants' acts of trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and business practices, and consumer fraud pursuant to 15 U.S.C. 1117(a).

F. That the Court treble such damages as awarded pursuant to 15 U.S.C. 1117(a).

G. That GMA recover pre-judgment and post-judgment interest on each and every award.

H. That GMA recover its reasonable attorney fees incurred in this action pursuant to 15 U.S.C 1117(a).

I. That GMA have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

J. That GMA have such other and further relief as the Court may deem just and proper.

K. That GMA at its option be awarded statutory damages of $1 million in lieu of actual damages pursuant to 1117(a).

L. That the website www.charlottesolnicki.com be removed from the world wide web.

12

## JURY DEMAND

GMA respectfully requests a trial by jury as to all issues.

Dated: New York, New York
April 20, 2007

Respectfully Submitted,

THE BOSTANY LAW FIRM

By: _Andrew T. Sweeney_
ANDREW T. SWEENEY (AS-0724)
Attorney for Plaintiff GMA Accessories, Inc.
40 Wall Street, 61st Floor
New York, New York 10005
(212) 530-4400

13

Ira S. Sacks
Mary L. Grieco
Safia A. Anand
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 5th Avenue
New York, NY 10103
(212) 506-5100

*Attorneys for Plaintiff*



**JUDGE McMAHON**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SANEI CHARLOTTE RONSON LLC,

                Plaintiff,

    -against-

GMA ACCESSORIES, INC.,

                Defendant.

---------------------------------------------------------------x

**'07 CIV 9578**

Civil Action No.

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

    Plaintiff Sanei Charlotte Ronson LLC, by its attorneys Dreier LLP and Orrick, Herrington

& Sutcliffe LLP, alleges on knowledge as to its own acts and otherwise on information and belief

as follows:

## NATURE OF THE ACTION

    1.    This Complaint seeks a declaratory judgment of non-infringement.  Specifically, it

seeks a declaration that Plaintiff Sanei Charlotte Ronson LLC's use of the personal name of

designer Charlotte Ronson, *i.e.*, CHARLOTTE RONSON, as a trademark to sell high-end

fashion goods does not infringe any rights held by Defendant GMA Accessories, Inc. in the mark

CHARLOTTE.  This Complaint further seeks the cancellation of Defendant's federal trademark

registrations based on Defendant's fraud and trademark misuse.  In addition, due to Defendant's

persistent and continued efforts to interfere with Plaintiff Sanei Charlotte Ronson LLC's rightful

use of the CHARLOTTE RONSON trademark, this Complaint seeks an injunction and damages

for Defendant's tortious interference with business relations and common law unfair competition,

pursuant to New York state law.

## JURISDICTION AND VENUE

2.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule

57 of the Federal Rules of Civil Procedure seeking a declaration of rights and/or other legal

relations of the parties to this litigation with respect to an actual and justiciable controversy

arising under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, as well as for

cancellation of certain trademarks pursuant to 15 U.S.C. §§ 1119, 1120 and damages under state

law.

3.      This Court has jurisdiction over this matter pursuant to the Lanham Act (15

U.S.C. § 1051 *et seq.*); 28 U.S.C. §§ 1331, 1338 and 1367; and the Declaratory Judgment Act

(28 U.S.C. § 2201), and related claims under the common law of the State of New York.  Venue

is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this

judicial district.

## THE PARTIES

4.      Plaintiff Sanei Charlotte Ronson LLC ("Ronson") is a New York limited liability company with its principal place of business at 1701 Avenue of the Americas, Suite 301, New York, New York 10018.

5.      Defendant GMA Accessories, Inc. ("GMA") is a New York corporation with its principal place of business at 1 East 33rd Street, New York, New York 10016.

## THE CHARLOTTE RONSON BRAND

6.      In September 1999, Charlotte Ronson (the individual, hereinafter defined as "Ms. Ronson") began selling her original clothing designs using the mark C. RONSON. In May 2002, Ms. Ronson opened a clothing boutique in downtown New York City known as C. RONSON. In approximately February 2005, Ms. Ronson began to use her full name, CHARLOTTE RONSON, as a trademark on apparel, shoes, bags and accessories, operating as C. Ronson, Inc. ("C. Ronson").

7.      On October 8, 2004, C. Ronson filed an application to register CHARLOTTE RONSON as a federal trademark in International Class 25 for use in connection with clothing, namely, tops, pants, skirts, dresses, hats, caps, jackets, coats, headwear, underwear, sleepwear, and footwear (Serial No. 78/507,236).

8.      On October 28, 2004, C. Ronson filed an application to register CHARLOTTE RONSON as a federal trademark in International Class 18 for use in connection with handbags, wallets, luggage, backpacks, travel bags, and cosmetic cases sold empty (Serial No. 78/507,248).

9.      On October 11, 2005, C. Ronson filed an application to register CHARLOTTE RONSON as federal trademark in International Class 14 for use in connection with jewelry, namely, necklaces, bracelets, earrings, rings, pins, and watches (Serial No. 78/507,242).  These

three trademark applications (for Classes 14, 18 and 25) and all common law rights associated with the use of the CHARLOTTE RONSON mark are collectively referred to herein as the "CHARLOTTE RONSON Marks".

10.    CHARLOTTE RONSON merchandise was sold by C. Ronson until 2006. On March 2, 2006, C. Ronson, Inc. assigned its rights to the CHARLOTTE RONSON Marks, among others, to Sanei Charlotte Ronson, LLC (defined above as "Ronson"), a joint venture in which the individual Charlotte Ronson holds a significant equity interest. The assignments of the pending trademark applications were recorded with the U.S. Patent and Trademark Office on April 14, 2006. CHARLOTTE RONSON merchandise is now sold by Ronson.

11.    In addition to Ms. Ronson's downtown NYC boutique, as alleged above, CHARLOTTE RONSON branded clothing and related accessories have been sold in numerous retail locations across the United States and around the world and through many retail websites, including Bloomingdale's, Nordstrom, Fred Segal, Ron Herman and Shopbop.

12.    The CHARLOTTE RONSON brand is well-known in the fashion industry, having obtained a great deal of unsolicited press coverage in numerous renowned publications including Vogue, Teen Vogue, Jane, Maxim, InStyle, Cosmopolitan, WWD, Elle, Marie Claire, Elle Girl, the Daily News, W, Lucky, Nylon, the New York Post, People and Harper's Bazaar. The CHARLOTTE RONSON brand was also mentioned in an infamous "shout-out" in a Jay-Z song.

13.    CHARLOTTE RONSON branded clothing and accessories are worn by numerous well-known celebrities, including Janet Jackson, Jennifer Lopez, Kate Moss, Gisele Bündchen, Lindsay Lohan, Paris Hilton, Jessica Simpson, Jennifer Love Hewitt and MTV's Su Chin Pak.

14.    As a result of the extensive and continuous use of the CHARLOTTE RONSON Marks, Ronson has developed substantial good will among its customers and the CHARLOTTE

RONSON marks have acquired secondary meaning in that they have come to be associated in the minds of the public with Ronson and to signify the high-end, high quality products offered by Ronson.

15.    Ronson always uses the name CHARLOTTE RONSON and does not use the name CHARLOTTE alone.  The two words always appear in the same font as one unitary mark.

## GMA's ALLEGED USE OF THE MARK "CHARLOTTE"

16.    GMA, which does business as Capelli New York, is, according to its website (located at www.capelli-ny.com), in the business of selling fashion accessories and novelty items, such as hair accessories, socks, leg warmers, sandals, flip flops, slippers, plush toys and pet accessories.

17.    Ms. Ronson was not aware of GMA or its products until early 2005 when GMA's counsel sent a cease and desist letter to Ms. Ronson's counsel.  At that time, it came to Ronson's attention that GMA owned certain trademark registrations for CHARLOTTE and CHARLOTTE & FRIENDS.

18.    Specifically, GMA asserts rights to the following U.S. trademark registrations and applications pending before the U.S. Patent and Trademark Office (collectively referred to as the "GMA Charlotte Marks"):

      a.    U.S. Registration No. 2,216,405, issued January 5, 1999, for the mark CHARLOTTE in International Class 26 for hair accessories, namely, hair clips, scrunchees, ribbons and braids.

      b.    U.S. Registration No. 2,217,341, issued January 12, 1999, for the mark CHARLOTTE in International Class 18 for sacks and bags, namely, handbags made of textiles and beads.

      c.    U.S. Registration No. 2,535,454, issued February 5, 2002, for the mark CHARLOTTE in International Class 25 clothing, footwear and headgear, namely hats, scarves, gloves and socks.

d.    U.S. Registration No. 2,561,025, issued April 16, 2002, for the
mark CHARLOTTE in International Class 9 for sunglasses.

e.    U.S. Registration No. 3,242,358, issued May 15, 2007, for the
mark CHARLOTTE in International Class 22 for bags for securing
valuables; bands for wrapping or binding; belts, not of metal, for
handling loads; fabric and polyester mesh net used for storing toys
and other household items; garment bags for storage; mesh bags
for storage; multi-purpose cloth bags; packaging bags of textile
material; rice straw bags (kamasu); shoe bags for storage; string.

f.    Use-based Application, filed June 30, 2006, for the mark
CHARLOTTE in International Class 14 for the following goods:
bonnet pins of precious metal; bracelets; bracelets of precious
metal; brooches; buckles for watchstraps; charms ; chokers;
costume jewelry; cuff-links; earrings; gemstones; gold and its
alloys; hat pins of precious metal; iridium and its alloys; jewelry;
jewelry for the head; jewelry pins for use on hats; lapel pins ;
necklaces; ornamental pins; ornaments of precious metal; osmium
and its alloys; pendants; picture frames of precious metal; platinum
and its alloys; precious metal alloys; purses and wallets of precious
metal; rhodium and its alloys; rings being jewelry; silver and its
alloys; tiaras (Serial No. 78/921503).

g.    Use-based application, filed October 2, 2006, for the mark
CHARLOTTE in International Class 24, for the following goods:
Bath linen; Bath sheets; Bath towels; Beach towels; Bed blankets;
Bed linen; Bed sheets; Bed spreads; Blanket throws; Chenille
fabric; Children's blankets; Children's towels; Cloth coasters; Cloth
napkins for removing make-up; Comforters; Contoured mattress
covers; Cotton base mixed fabrics; Cotton fabric; Covered rubber
yarn fabrics; Crepe cloth; Crib bumpers; Crib canopies; Curtain
fabric; Curtain loops of textile material; Curtains; Curtains made of
textile fabrics; Diaper changing mats; Diaper changing pads not of
paper; Dining linens; Dish cloths; Draperies; Dust ruffles; Duvet
covers; Duvets; Eiderdown covers; Eiderdowns; Fabric diaper
stackers; Fabric flags; Fabric for boots and shoes; Fabric of
imitation animal skin; Fabric table runners; Fabric table toppers;
Fabric valances; Fabric window coverings and treatments, namely
curtains, draperies, sheers, swags and valances; Face towels;
Feather beds; Felt and non-woven textile fabrics; Fiberglass fabrics
for textile use; Fireproof upholstery fabrics; Fitted toilet lid covers;
Flannel; Flax fabrics; Frieze; Gauze fabric; Gift wrap of fabric;
Hand towels; Hand-towels made of textile fabrics; Hemp base
mixed fabrics; Hemp yarn fabrics; Household linen; Inorganic fiber
mixed fabrics; Jeans fabric; Jersey fabrics for clothing; Jersey

material; Jute fabrics; Kitchen linens; Kitchen towels; Knitted fabrics; Knitted fabrics of chemical-fiber yarn; Knitted fabrics of cotton yarn; Knitted fabrics of wool yarn; Labels of cloth; Lap rugs; Mixed fiber fabrics; Narrow woven fabrics; Net curtains; Nylon fabric; Oil cloths; Pillow cases; Pillow covers; Pillow shams; Pillowcases; Place mats of textile material; Polyester fabric; Pot holders; Puffs; Quilts; Ramie fabric; Rayon fabric; Receiving blankets. Regenerated fiber yarn fabrics; Rubberized cloths; Sackcloth; Sail cloth; Semi-synthetic fiber fabrics; Shams; Shower curtains; Silk-cotton mixed fabrics; Synthetic fiber fabrics; Table cloths not of paper; Table linen; Taffeta; Tapestries of textile; Terry towels; Textile fabric of animal skins imitations; Textile fabrics for home and commercial interiors; Textile fabrics for lingerie; Textile fabrics for the manufacture of clothing; Textile labels; Throws; Ticking fabric; Towel sets; Towels; Traced cloths for embroidery; Tricot quilts; Tulle; Unfitted fabric furniture covers; Upholstery fabrics; Velvet; Wash cloths; Washcloths; Washing gloves; Washing mitts; Window curtains; Wool base mixed fabrics; Wool yarn fabrics; Woolen fabric; Woolen blankets; Worsted fabrics; Woven fabrics; Zephyr fabric (Serial No. 77/012,104).

h.   U.S. Registration No. 2,412,362, issued December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 3 for cosmetics, namely perfume, lip gloss, and hair lotions.

i.   U.S. Registration No. 2,412,360, issued December 12, 2000, for the mark CHARLOTTE & FRIENDS in International Class 25 for clothing, footwear and headgear, namely hats, scarves, gloves and socks.

j.   U.S. Registration No. 2,412,359, issued December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 26 for hair accessories, namely hair clips, scrunchees, ribbons and braids.

k.   U.S. Registration No. 2,444,120, issued April 17, 2001 for the mark CHARLOTTE & FRIENDS in International Class 28 for toys, namely plush animals.

l.   U.S. Registration No. 2,682,145, issued February 4, 2003, for the mark CHARLOTTE & FRIENDS in International Class 9 for sunglasses.

19.   In connection with several of these registrations, GMA's counsel filed a Section 8 & 15 Declaration, wherein it declared under oath in relevant part that "[t]he owner is using or is

using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is **still in use in commerce on or in connection with all goods and/or services as identified above.....**" (Emphasis added).  (Such a declaration is hereinafter referred to as an "8&15 Declaration".)

20.    GMA submitted 8&15 Declarations, asserting that it was using the mark CHARLOTTE or CHARLOTTE & FRIENDS in connection with all the goods identified, in each of the following Registrations: Reg. No. 2,217,341 (filed November 26, 2004), Reg. No. 2,216,405 (filed January 5, 1999), Reg. No. 2,412,360 (June 12, 2006), Reg. No. 2, 412, 359 (filed December 12, 2006), Reg. No. 2,535,454 (filed February 14, 2007); Reg. No. 2,561,025 (filed May 22, 2007).

21.    GMA further swore under oath when filing its trademark applications based on use for the GMA CHARLOTTE Marks and later filing Statements of Use with respect to its intent-to-use applications that GMA was using the mark in connection with all the goods identified in those applications as of the date claimed.

22.    GMA's sworn statements in its use-based applications, Statements of Use and 8&15 Declarations that it was using the GMA CHARLOTTE Marks on all the goods identified in those applications and registrations as of the dates claimed were false.

23.    GMA also swore under oath in each of its trademark applications that it was unaware of anyone else with a right to use a mark that was likely to cause confusion with GMA's CHARLOTTE Marks.

24.    Based on its federal registrations, GMA opposed C. Ronson's applications for the mark CHARLOTTE RONSON in Class 14 on October 31, 2005 (Opposition No. 9167353), Class 25 on December 20, 2005 (Opposition No. 91168148) and Class 18 on July 31, 2006 (Opposition No. 91172117).  These oppositions have all been consolidated under Opposition No. 91167353 (the "Opposition") before the Trademark Trial and Appeal Board (the "TTAB").

25.    In the course of the Opposition, GMA moved for summary judgment arguing that the TTAB should refuse to register the CHARLOTTE RONSON Marks as a matter of law.  On November 6, 2006, the TTAB denied GMA's motion for summary judgment, noting the numerous other brands in fashion share common personal names:  "applicant's evidence of third-party registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of prospective consumers of applicant's and opposer's marks."  *See GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Opposition No. 91167353 (TTAB Nov. 6, 2006).  A true and correct copy of this decision is attached hereto as Exhibit A.

26.    The Opposition is ongoing.  Ronson's motion for summary judgment is currently pending before the TTAB.

**"CHARLOTTE" IS A WEAK MARK AND CONSUMERS ARE**
**NOT LIKELY TO BE CONFUSED AS TO THE SOURCE, ORIGIN**
**OR SPONSORSHIP OF PRODUCTS USING THE CHARLOTTE RONSON MARKS**

27.    "Charlotte," standing alone, is a popular female first name, and, as a result, is commonly used as a style designation in the apparel and jewelry industry.

28.    "Charlotte" also has geographic significance as the capital of the state of North Carolina, the 20th largest city in the United States and home to the Charlotte campus of the University of North Carolina – UNC Charlotte.

29.     The use of "Charlotte" in the apparel and accessories business is so widespread that Ronson is aware of at least 49 companies that use "Charlotte" as a style designation for their various fashion products.

30.     In addition, several other designers use the name "Charlotte" as brands in connection with their apparel and accessories lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE SOLNICKI and CHARLOTTE CORDAY.

31.     Specifically, Charlotte Russe owns several U.S. federal trademark registrations for the mark CHARLOTTE RUSSE:  Registration No. 2416273 in Class 25 for clothing; Registration No. 2416270 in Class 26 for hair ornaments; Registration No. 2416269 in Class 14 for costume jewelry; Registration No. 2416268 in Class 18 for handbags and other related goods; Registration Nos. 2414477 and 1485692 in Class 42 for retail store services specializing in women's apparel and accessories; and Registration No. 2451427 in Class 3 for cosmetics.

32.     Moreover, Charlotte Russe began using the CHARLOTTE RUSSE mark before GMA's use of CHARLOTTE and thus its use is senior to GMA's use.

33.     Another third party with no relation to the parties hereto, Ehringer-Schwarz GMBH & Co. KG, owns the trademark registration for CHARLOTTE in International Class 14 for jewelry (Reg. No. 2117619, issued on December 2, 1997).  The Section 8&15 was filed for this mark on April 14, 2003 and acknowledged on July 12, 2003.

34.     Additionally, at the time GMA obtained its CHARLOTTE registrations, Charlotte Ford owned a registration for CHARLOTTE FORD in Class 25 for clothing.

35.     In addition, the owner of the mark CHARLOTTE TARANTOLA has prior rights, as compared to GMA, to the name CHARLOTTE based on common law use.

36.     Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products.

37.     The apparel, handbags and jewelry produced by Ronson are high-end products that retail in different tier stores than GMA's products and are not competitive with GMA's products.

38.     The consumers purchasing Ronson's products are sophisticated, brand-conscious and used to discriminating between designer's names when purchasing merchandise in the fashion industry.  These consumers are not likely to be confused by the use of a designer's full name, even if it overlaps with or has similarities to another designer's name.

## GMA'S INTERFERENCE WITH RONSON'S BUSINESS –
## THE CHARLOTTE SOLNICKI LAWSUIT

39.     On April 20, 2007, GMA filed a lawsuit in the Southern District of New York entitled *GMA Accessories, Inc. v. Bop, LLC, Girlshop, Inc., Showroom Seven Studios, Inc., Jonathan Solnicki, Belmondo and Eminent, Inc.*, 07 CV 3219 (LTS)(DCF), based on the use of the CHARLOTTE SOLNICKI mark (the "Solnicki Matter").

40.     On September 26, 2007, GMA filed an amended complaint in the Solnicki Matter, adding the following retailers as defendants:  (i) Saks Fifth Avenue, Inc.; (ii) Intermix, Inc; (iii) Wink, NYC, Inc.; (iv) Lisa Kline, Inc.; (v) Jonathan Singer; and (vi) Lewis Tierney.

41.    A number of the retailers that have been sued by GMA in the Solnicki Matter also are currently customers of Ronson, including, but not limited to: Bop, Belmondo, Eminent, Inc., Lisa Kline, Inc., Intermix, Inc., Wink, NYC, Inc. and Showroom Seven Studios, Inc.

42.    GMA is aware of these retailers' relationship with Ronson, and, under the guise of litigating the CHARLOTTE SOLNICKI mark, GMA has caused the court in that matter to issue injunctions on default and on consent with respect to some of the parties thereto that are overbroad, restricting retailers from selling not only the CHARLOTTE SOLNICKI merchandise at issue in that case, but also, under GMA's interpretation, all products bearing the CHARLOTTE mark in any form, including CHARLOTTE RONSON. GMA takes this position despite the fact that Ronson is not a party to the Solnicki Matter and has not received any notice of the proceedings in that case.

43.    The use of the Solnicki Matter to effectively preclude Ronson's retailers from doing business with Ronson is an intentional interference with Ronson's business relationships, using unfair and improper means, and has resulted in injury to Ronson's business relationship with those retailers.

44.    In addition, GMA is knowingly and intentionally interfering with Ronson's business relations by threatening to sue and/or suing retailers who sell both CHARLOTTE SOLNICKI and CHARLOTTE RONSON merchandise and by using the injunctions in the Solnicki Matter in an attempt to scare and intimidate Ronson's retailers and injure Ronson's business and reputation. That suit and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Ronson's and others' business relationships through the use of governmental process as an anticompetitive weapon. Ronson has been injured by GMA's actions.

45.    GMA has a history of attempting to misuse injunctions to intimidate parties to whom they do not apply.  In *GMA Accessories, Inc. v. Positive Impressions, Inc.*, 181 F.3d 82 (2d Cir. 1999), the United States Court of Appeals for the Second Circuit affirmed a decision of the United States District Court for the Southern District of New York vacating a preliminary injunction awarded GMA because of GMA's misuse of that injunction by sending it to 2,350 of the defendant's customers in an effort to coerce them to comply with an injunction that did not apply to them.

## FIRST CLAIM FOR RELIEF
## (NON-INFRINGEMENT)

46.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

47.    Because Ronson's apparel, handbags and jewelry are so clearly and prominently marked with the famous CHARLOTTE RONSON mark, confusion on the part of potential purchasers as to the source, origin or sponsorship of the CHARLOTTE RONSON products is not likely.

48.    Accordingly, the manufacture, marketing and/or sale by Ronson, its retailers, or other customers, of CHARLOTTE RONSON products is not likely to, and does not, cause confusion as to the source of its products and does not constitute an infringement of the trademark rights of GMA or the GMA CHARLOTTE Marks.

49.    GMA has asserted, directly and indirectly, that CHARLOTTE RONSON branded products infringe the GMA CHARLOTTE Marks.  GMA's actions in filing three oppositions against Ronson, suing Ronson's distributors and retailers and amending its Complaint in the Solnicki Matter to add more of Ronson's distributors and retailers, and insisting that the

injunctions entered into in that matter applies to CHARLOTTE RONSON merchandise illustrate that Ronson and its customers have a reasonable apprehension of being sued by GMA for trademark infringement and a justiciable controversy exists.

50. The rights of the parties are dependent upon the facts and application of law thereto.

51. Ronson is being damaged by the continued uncertainty created by GMA with respect to the legitimate use of Ronson's trademarks.

52. Accordingly, Ronson is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the manufacture, marketing, offer for sale and/or sale of the CHARLOTTE RONSON merchandise by Ronson and Ronson's customers does not infringe GMA's trademark rights or the GMA CHARLOTTE Marks.

## SECOND CLAIM FOR RELIEF
### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON TRADEMARK MISUSE)

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54. The GMA CHARLOTTE Marks lack significance as single source identifiers. Nevertheless, GMA has continued to sue and threaten to sue companies who use the word CHARLOTTE in connection with other words and continues to sue and threaten to sue retailers for selling said goods. That suits and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Ronson's and others' business relationships through the use of governmental process as an anticompetitive weapon. As a result, Ronson has been injured by GMA's actions.

55.    Accordingly, Ronson seeks an order, pursuant to 15 U.S.C. §1119, directing cancellation of the federal registrations of the GMA CHARLOTTE Marks.

### THIRD CLAIM FOR RELIEF
### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

56.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57.    In GMA's 8&15 Declarations, trademark applications and Statements of Use, as filed with the U.S. Patent and Trademark Office, GMA declared that it was aware "that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document" and stated unequivocally that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

58.    GMA, as of the dates of its use-based applications, Statements of Use and/or the Section 8&15 Declarations for the various CHARLOTTE Marks, was not using the marks in connection with all the goods listed in the applications/registrations, despite its sworn and material statements to the contrary.  Moreover, the dates of first use set forth in the applications for the GMA CHARLOTTE Marks are fraudulent.

59.    GMA knew that its representations were false when made and intended that the U.S. Patent and Trademark Office would rely on its statements to issue its registrations.  The U.S. Patent and Trademark Office reasonably relied on GMA's statements in issuing the CHARLOTTE registrations to GMA, causing harm to Ronson and others.

60.    The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark Office.  Accordingly, Ronson seeks an order from the Court directing cancellation of the federal

registrations of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages pursuant to 15 U.S.C. §1120.

## FOURTH CLAIM FOR RELIEF
## (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

61.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 60 above as if fully set forth herein.

62.    GMA has sued many of Ronson's retailers claiming that their use of CHARLOTTE SOLNICKI infringes upon the GMA CHARLOTTE Marks.

63.    As stated above, Charlotte Russe, Charlotte Tarantola and Charlotte Ford, among others, used marks containing "Charlotte" prior to GMA's use of CHARLOTTE.

64.    GMA knew, or should have known, of the existence of these prior uses and contends now that they are likely to cause confusion.

65.    As part of its applications which led to the CHARLOTTE Marks Registrations, GMA swore to the U.S. Patent and Trademark Office that no one else had the right to use a mark that was likely to cause confusion with its applied-for marks.

66.    GMA knew that this statement of material fact was false when made and intended that the U.S. Patent and Trademark Office would rely on its statement to issue its registrations. The U.S. Patent and Trademark Office reasonably relied on GMA's statement in issuing the CHARLOTTE registrations to GMA, causing harm to Ronson and others.

67.    The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark Office. Accordingly, Ronson seeks an order from the Court directing cancellation of the federal registrations of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages pursuant to 15 U.S.C. §1120.

## FIFTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

68.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.     GMA is knowingly and intentionally interfering with Ronson's business relations by contacting retailers who sell both CHARLOTTE SOLNICKI product and CHARLOTTE RONSON product and using the Solnicki matter to scare and intimidate Ronson's retailers in an obvious attempt to induce those retailers not to do business with Ronson and to injure Ronson's business and reputation.

70.     GMA's use of the Solnicki Matter to indirectly affect Ronson's business is wrongful and constitutes a bad faith attempt to harass Ronson's retailers, vendors and customers and to interfere with Ronson's ability to conduct business with those entities.

71.     Ronson has been injured by GMA's actions.

72.     Accordingly, Ronson seeks a judgment enjoining GMA from contacting, threatening, harassing and/or suing Ronson's customers with false accusations of trademark infringement based on the GMA CHARLOTTE Marks.

73.     By reason of the foregoing, Ronson has been damaged in an amount to be determined at trial, together with punitive damages.

## SIXTH CLAIM FOR RELIEF
## (COMMON LAW UNFAIR COMPETITION)

74.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 73 above as if fully set forth herein.

75.     By contacting retailers who sell CHARLOTTE RONSON and CHARLOTTE SOLNICKI merchandise and using the Solnicki matter to scare and intimidate Ronson's retailers,

GMA has knowingly and intentionally misused its trademarks, unfairly competed with Ronson and violated the common law unfair competition law of the State of New York.

76.    Accordingly, Ronson seeks a judgment enjoining GMA from unfairly competing with Ronson, threatening Ronson and/or harassing Ronson's customers with threats of trademark infringement action based on their offer for sale and/or sale of CHARLOTTE RONSON merchandise.

77.    By reason of the foregoing, Ronson has been damaged in an amount to be determined at trial, together with punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against GMA, as follows:

A.    On the First Cause of Action, a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the manufacture, marketing, offer for sale and/or sale of products or services using the CHARLOTTE RONSON marks by Ronson and Ronson's customers does not infringe GMA's trademark rights and/or the GMA CHARLOTTE Marks;

B.    On the Second Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on trademark misuse;

C.    On the Third Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on fraud;

D.    On the Fourth Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on fraud;

E.    On the Fifth Cause of Action for tortious interference with business relations, permanently enjoining GMA from contacting Ronson's customers or threatening Ronson's customers with trademark infringement lawsuits based on their sale of CHARLOTTE RONSON products and awarding Ronson damages in an amount to be determined at trial, together with punitive damages;

F.    On the Sixth Cause of Action for common law unfair competition, permanently enjoining GMA from misusing their trademarks, unfairly competing with Ronson, threatening Ronson and/or harassing Ronson's customers with threats of trademark infringement action based on their offer for sale and/or sale of CHARLOTTE RONSON merchandise and awarding Ronson damages in an amount to be determined at trial, together with punitive damages;

G.    An award of damages to Plaintiff as a consequence of Defendant's acts of false declarations and/or fraud in obtaining and maintaining trademark registrations in an amount to be determined at trial or such other sum as this Court shall decide;

H.    Awarding Ronson reasonable attorney's fees and costs of bringing this Action; and

I.    Granting Plaintiff such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

### JURY DEMAND

Ronson hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
      October 26, 2007

Respectfully submitted,

Ira S. Sacks
Mary L. Grieco
Safia A. Anand
Dreier LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
(212) 506-5100

*Attorneys for Plaintiff*

# EXHIBIT  A

<div style="border:1px solid black; display:inline-block;">

**THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.**

</div>

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Lykos

Mailed: November 6, 2006

Opposition No. 91167353
Opposition No. 91168148
Opposition No. 91172117[1]

GMA Accessories, Inc.

v.

Sanei Charlotte Ronson,
LLC, joined as party
defendant and C. Ronson,
Inc.[2]

(as consolidated)

Before Hohein, Holtzman, and Zervas, Administrative
Trademark Judges.

By the Board:

This case now comes up for consideration of opposer's

motion (filed June 22, 2006) for summary judgment in

---

[1] The parties' stipulation (filed August 30, 2006) to
consolidate Opposition No. 91172117 with Opposition Nos. 91167353
and 91168148 is hereby granted. By this order, Opposition No.
91172117 has been added to these consolidated proceedings. See
TBMP § 511 (2d ed. rev. 2004). All future communications with
the Board should be captioned in the above manner.

[2] According to the records of the Assignment Branch of the
Trademark Office, the applications which are the subject of this
consolidated opposition proceeding were assigned to Sanei
Charlotte Ronson, LLC. As such, Sanei Charlotte Ronson, LLC
has been joined in this proceeding as a defendant in order to
facilitate discovery. See TBMP § 512.01 (2d ed. rev. 2004).
Evidence of the assignments was recorded at Reel 3290, Frame 0027
of the Assignment Branch on April 14, 2006.

Opposition Nos. 91167353 and 91168148.[3]   The motion is
fully briefed.[4]

    By way of background, on October 28, 2004, applicant
filed two separate applications to register the mark
CHARLOTTE RONSON for "jewelry, namely, necklaces, bracelets,
earrings, rings, and pins, and watches" in International
Class 14, and "clothing, namely, tops, pants, skirts,
dresses, hats, caps, jackets, coats, headwear, underwear,
sleepwear, and footwear" International Class 25.[5]  Both
applications are based on an alleged bona fide intention to
use the mark in commerce.

    Opposer has opposed registration on the ground that
applicant's applied-for marks so resemble opposer's
previously used and registered marks that they are likely to
cause confusion, mistake, or deceive prospective consumers
under Section 2(d) of the Lanham Act.  In the notices of
opposition, opposer has pleaded ownership of the following
registered marks:

        The mark CHARLOTTE for "hair accessories, namely,
        hair clips, scrunchees, ribbons and braids" in
        International Class 26;[6]

---

[3]   The parties' stipulation (filed July 6, 2006) to extend
applicant's time to file a responsive brief to opposer's motion
for summary judgment is granted.  Applicant's responsive brief
filed on August 4, 2006 is therefore timely, and has been given
full consideration by the Board.

[4]   The Board has exercised its discretion to consider opposer's
reply brief.  See Trademark Rule 2.127(a).

[5] Application Serial Nos. 78507236 and 78507242.

the mark CHARLOTTE for "sacks and bags, namely,
handbags made of textiles and beads" in
International Class 18;[7]

the mark CHARLOTTE for "clothing, footwear and
headgear, namely, hats, scarves, gloves and socks"
in International Class 26;[8]

the mark CHARLOTTE for "sunglasses" in
International Class 9;[9]

the mark CHARLOTTE AND FRIENDS for "clothing,
footwear and headgear, namely, hats, scarves,
gloves and socks" in International Class 9;[10]

the mark CHARLOTTE AND FRIENDS for "sacks and
bags, namely, namely, handbags made of textiles
and beads" in International Class 18;[11]

the mark CHARLOTTE AND FRIENDS for "toys, namely
plush animals" in International Class 28;[12]

---

[6] Registration No. 2216405, registered on January 5, 1999,
alleging November 1996 as the date of first use anywhere and in
commerce; Section 8 and 15 affidavits accepted and acknowledged.

[7] Registration No. 2217341, registered on January 12, 1999,
alleging November 1996 as the date of first use anywhere and in
commerce; Section 8 and 15 affidavits accepted and acknowledged.

[8] Registration No. 2535454, registered on February 5, 2002,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

[9] Registration No. 2561025, registered on April 16, 2002,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

[10] Registration No. 2412360, registered on December 12, 2000,
alleging November 15, 1996 as the date of first use anywhere and
in commerce; Section 8 and 15 affidavits accepted and
acknowledged.

[11] Registration No. 2412361, registered on December 12, 2000,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

[12] Registration No. 2444120, registered on April 17, 2001,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

the mark CHARLOTTE AND FRIENDS for "cosmetics, namely, perfume, lip gloss, and hair lotions" in International Class 3;[13] and

the mark CHARLOTTE AND FRIENDS for "sunglasses" in International Class 9.[14]

In each answer, applicant denied the salient allegations and asserted various affirmative defenses. We now review the parties' respective arguments.

In its motion for summary judgment, opposer argues that opposer's and applicant's marks are similar insofar as each mark includes the name CHARLOTTE, and that the goods as identified in the parties' respective applications and registrations are related.[15]

In support of its motion for summary judgment, opposer

---

[13] Registration No. 2412362, registered on December 12, 2000, alleging November 15, 1996 as the date of first use anywhere and in commerce.

[14] Registration No. 2682145, registered on February 4, 2003, alleging November 15, 1996 as the date of first use anywhere and in commerce.

[15] Opposer also argues in its motion for summary judgment that applicant is attempting to pass off purportedly counterfeited products as opposer's goods. Aside from the fact that opposer has not pleaded such a claim and therefore may not obtain summary judgment with respect thereto, the Board in any event does not have jurisdiction to decide claims regarding counterfeited goods under the Lanham Act. As such, opposer's arguments regarding such a claim have been given no further consideration.

has submitted the declaration of Mr. John P. Bostany,
counsel for opposer, with copies of opposer's pleaded
registrations showing that opposer is the owner and that the
registrations are subsisting, and copies of advertisements
showing use of opposer's marks attached as exhibits
thereto.[16]

In its responsive brief, applicant contends that
genuine issues of material fact exist regarding the
similarity of the parties' marks; that in the fashion
industry, it is common for designers to have the same first
or last name as other designers; and that the term CHARLOTTE
is in a crowded field of marks because numerous third-party
registrations for marks incorporating the term CHARLOTTE
coexist on the Principal Register for the same or highly
related goods.

In support of its position, applicant has submitted the
declaration of Ms. Charlotte Ronson, a fashion designer who
markets her products under her name, stating that the
trademark CHARLOTTE RONSON is well-known in the fashion
industry; that she does not use her first name Charlotte

---

[16] The Board also notes that opposer has enclosed portions of the
record (the pleadings in Opposition Nos. 91167353 and 91168148)
in this proceeding as exhibits in support of its motion for
summary judgment. Opposer is reminded that these papers, by
their very nature, already form part of the record in this
proceeding. Accordingly, opposer is requested to refrain from
attaching portions of the record to future filings.

separately from her last name as a trademark in marketing
her goods; that it is common in the fashion industry for
designers to have the same first or last name as other
designers and use those names as trademarks; and that she is
also aware of other fashion designers who use the name
Charlotte in marketing their products (for example,
Charlotte Russe).  Attached as exhibits to Ms. Ronson's
declaration are copies of applicant's customer phone list
and copies of advertisements using the mark CHARLOTTE
RONSON.  Applicant has also submitted the declaration of Ms.
Mary L.Grieco, counsel for applicant, with copies of third-
party registrations for marks that share a common name in
the fashion industry (e.g., GIORGIO BEVERLY HILLS, GIORGIO
ARMANI, GIORGIO COSANI; RALPH LAUREN, LAUREN LEE, LAUREN
GUINOT) and copies of third-party registrations for marks
incorporating the name CHARLOTTE for related goods (e.g.,
CHARLOTTE RUSSE).

In reply, opposer argues that because during *ex parte*
examination the examining attorney initially refused
registration of one of applicant's marks under Section 2(d)
of the Trademark Act on the basis of two of opposer's
pleaded registrations, summary judgment should be granted in
opposer's favor.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *See* *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

Upon careful consideration of the arguments and evidence presented by the parties, and drawing all inferences with respect to the motion in favor of applicant as the nonmoving party, we find that opposer has failed to demonstrate the absence of a genuine issue of material facts for trial. At a minimum, genuine issues of material fact exist as to the similarity or dissimilarity of the commercial impressions of the marks at issue and the strength of opposer's pleaded marks and applicant's applied-for marks.[17] In addition, applicant's evidence of third-party registrations that share a common name in the fashion

---

[17] Even if we disregard the third-party registrations submitted by applicant incorporating the term CHARLOTTE and which refer to a geographic designation (e.g., registrations for the marks CHARLOTTE STING and UNC CHARLOTTE), and the registrations which have been cancelled or are currently subject to an *inter partes* case, a sufficient number of third party registrations remain to create a genuine issue of material fact regarding the strength of the name CHARLOTTE in relation to the parties' goods.

industry raises a genuine issue of material fact regarding

the perception of prospective consumers of applicant's and

opposer's marks.

Lastly, we reject opposer's argument that the Board should defer to the examining attorney's initial refusal of one of applicant's applications under Section 2(d). The examining attorney's determination made during *ex parte* examination has no bearing in this Board *inter partes* case.

Accordingly, opposer's motion for summary judgment is denied.[18]

Proceedings herein are resumed and trial dates, including the period for discovery, are reset as follows:[19]

| | |
|---|---|
| THE PERIOD FOR DISCOVERY TO CLOSE: | 2/16/07 |
| 30-day testimony period for party in position of plaintiff to close: | 5/17/07 |
| 30-day testimony period for party in position of defendant to close: | 7/16/07 |
| 15-day rebuttal testimony period for plaintiff to close: | 8/30/07 |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served

---

[18] The parties should note that all evidence submitted in support of and in opposition to the motion for summary judgment is of record only for consideration of said motion. Any such evidence to be considered in final hearing must be properly introduced in evidence during the appropriate trial periods. *See Levi Strauss & Co. v. Josephs Sportswear Inc.*, 28 USPQ2d 1464 (TTAB 1993); and *Pet Inc. v. Bassetti*, 219 USPQ 911 (TTAB 1983).

[19] Under standard Board practice, the schedule for these consolidated cases is reset to reflect the schedule of the most recently filed case.

on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).

An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.

# EXHIBIT E



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System                    v1.4

# Opposition

**Number:** 91167353                           **Filing Date:** 10/31/2005
**Status:** Pending                            **Status Date:** 11/04/2005
**Interlocutory Attorney:** MARY CATHERINE FAINT

**Defendant**

           **Name:** C. Ronson, Inc. and Sanei Charlotte Ronson, LLC
 **Correspondence:** Steven R. Gursky, Mary L. Grieco
                     Dreier LLP
                     499 Park Avenue
                     New York, NY 10022
                     mgrieco@dreierllp.com
        **Serial #:** 78507242              Application File
**Application Status:** Opposition Pending
           **Mark:** CHARLOTTE RONSON

**Plaintiff**

           **Name:** GMA Accessories, Inc.
 **Correspondence:** MEDEA B. CHILLEMI
                     THE BOSTANY LAW FIRM
                     40 Wall Street; 61st Floor
                     NEW YORK, NY 10005
                     medea.chillemi@bozlaw.com
        **Serial #:** 75403212     Application File          **Registration #:** 2216405
**Application Status:** Section 8 and 15 - Accepted and Acknowledged
           **Mark:** CHARLOTTE

**Prosecution History**

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 55 | 06/11/2008 | WITHDRAWAL OF OPPOSITION | |
| 54 | 03/11/2008 | SUSPENDED PENDING DISP OF CIVIL ACTION | |
| 53 | 11/20/2007 | D'S REPLY IN SUPPORT OF MOT. TO SUSPEND | |
| 52 | 11/15/2007 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 51 | 10/26/2007 | D'S MOT TO SUSP PEND DISP CIV ACTION | |
| 50 | 10/15/2007 | D'S DECLARATION W/ EXH. OPPOSING P'S DECLARATION | |
| 49 | 09/27/2007 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 48 | 09/27/2007 | APPEARANCE | |
| 47 | 06/14/2007 | CONFIDENTIAL - DEF'S SUPPORTING EVIDENCE/EXHIBITS | |
| 46 | 06/11/2007 | Confidential Defendant's Supporting Evidents/Exhibits | |
| 45 | 06/11/2007 | D'S REPLY IN SUPPORT OF MOTION | |
| 44 | 06/07/2007 | SUSPENDED PENDING DISP OF OUTSTNDNG MOT | |
| 43 | 05/23/2007 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 42 | 05/23/2007 | CHANGE OF CORRESPONDENCE ADDRESS | |
| 41 | 04/20/2007 | STIPULATION FOR AN EXTENSION OF TIME | |

<u>40</u> 04/06/2007 <u>D'S REPLY IN SUPPORT OF MOTION</u>
<u>39</u> 04/04/2007 <u>SUSPENDED PENDING DISP OF OUTSTNDNG MOT</u>
<u>38</u> 03/23/2007 <u>D'S MOTION FOR SUMMARY JUDGMENT</u>
<u>37</u> 03/23/2007 <u>D'S MOTION FOR SUMMARY JUDGMENT</u>
<u>36</u> 03/23/2007 <u>D'S MOTION FOR SUMMARY JUDGMENT</u>
<u>35</u> 03/23/2007 <u>D'S MOTION FOR SUMMARY JUDGMENT</u>
<u>34</u> 03/28/2007 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
<u>33</u> 03/13/2007 <u>D'S MOTION TO COMPEL DISCOVERY</u>
<u>32</u> 03/13/2007 <u>Defendant's Notice of Correction</u>
<u>31</u> 02/02/2007 <u>D'S OPPOSITION/RESPONSE TO MOTION</u>
<u>30</u> 01/29/2007 <u>P'S MOTION TO COMPEL DISCOVERY</u>
<u>29</u> 01/18/2007 <u>EXTENSION OF TIME GRANTED</u>
<u>28</u> 01/18/2007 <u>STIPULATION FOR AN EXTENSION OF TIME</u>
<u>27</u> 01/18/2007 <u>CHANGE OF CORRESPONDENCE ADDRESS</u>
<u>26</u> 12/19/2006 <u>D'S OPPOSITION/RESPONSE TO MOTION</u>
<u>25</u> 12/06/2006 <u>Stipulation re: Applicant's time to respond to Opposer's Motion for Reconsideration</u>
<u>24</u> 11/29/2006 <u>P'S MOTION FOR SUMMARY JUDGMENT</u>
<u>23</u> 11/06/2006 <u>PL'S MOT. FOR SUMM. JUDGMENT DENIED</u>
<u>22</u> 08/22/2006 <u>P'S REPLY IN SUPPORT OF MOTION</u>
<u>21</u> 08/10/2006 <u>SUSPENDED PENDING DISP OF OUTSTNDNG MOT</u>
<u>20</u> 08/04/2006 <u>Exhibits for #18 (part 2)</u>
<u>19</u> 08/04/2006 <u>Exhibits for #18</u>
<u>18</u> 08/04/2006 <u>Applicant's memo in support of its Opposition to Opposer's Mot for Summary Judgm</u>
<u>17</u> 07/06/2006 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
<u>16</u> 06/30/2006 <u>Request that Opposer's MSJ be Disregarded, or in alternative, That Applicant's T</u>
<u>15</u> 06/29/2006 <u>DEF'S MOT IS GRANTED TO EXTENT THAT BD ORDERS STANDARD PROTECTIVE ORDER</u>
<u>14</u> 06/22/2006 <u>P'S MOTION FOR SUMMARY JUDGMENT</u>
<u>13</u> 06/14/2006 <u>Withdrawal of Motion to Enter Protective Order</u>
<u>12</u> 06/08/2006 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
<u>11</u> 05/15/2006 <u>D'S MOTION FOR PROTECTIVE ORDER</u>
<u>10</u> 03/31/2006 <u>mot to compel withdrawn</u>
<u>9</u> 03/30/2006 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
<u>8</u> 03/16/2006 <u>SUSPENDED PENDING DISP OF OUTSTNDNG MOT</u>
<u>7</u> 03/14/2006 <u>D'S MOTION TO COMPEL DISCOVERY</u>
<u>6</u> 01/30/2006 <u>OPPOSITION NOS. 91167353 AND 91168148 ARE HEREBY CONSOLIDATED</u>
<u>5</u> 01/27/2006 <u>D'S MOTION TO CONSOLIDATE</u>
<u>4</u> 12/13/2005 <u>ANSWER</u>
3 11/04/2005 PENDING, INSTITUTED
<u>2</u> 11/04/2005 <u>NOTICE AND TRIAL DATES SENT; ANSWER DUE:</u>    12/14/2005
<u>1</u> 10/31/2005 <u>FILED AND FEE</u>

Results as of 06/13/2008 02:11 PM    **Back to search results**    **Search:**

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System                    v1.4

# Opposition

**Number:** 91168132                          **Filing Date:** 12/20/2005
**Status:** Pending                           **Status Date:** 12/20/2005
**Interlocutory Attorney:** MARY CATHERINE FAINT

**Defendant**

**Name:** Daily Sparkle, LLC
**Correspondence:** DARIN MARGULES
SILVER FREEDMAN
2029 CENTURY PARK EAST, 19TH FLOOR
LOS ANGELES, CA 90067
dmargules@silverfreedman.com
**Serial #:** 78532984                  Application File
**Application Status:** Opposition Pending
**Mark:** CHARLOTTE TARANTOLA

**Plaintiff**

**Name:** GMA Accessories, Inc.
**Correspondence:** Andrew T. Sweeney
The Bostany Law Firm
40 Wall Street -61st Floor
New York, NY 10005
john@bozlaw.com

## Prosecution History

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 34 | 01/14/2008 | CHANGE OF CORRESPONDENCE ADDRESS | |
| 33 | 12/03/2007 | P'S REPLY IN SUPPORT OF MOTION | |
| 32 | 11/13/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 31 | 11/08/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 30 | 11/08/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 29 | 11/08/2007 | DF'S MEMO OF POINTS AND AUTHORITIES IN OPP TO PL'S MOTION FOR S.J. | |
| 28 | 11/08/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 27 | 11/06/2007 | D'S REPLY IN SUPPORT OF MOTION | |
| 26 | 10/30/2007 | SUSPENDED | |
| 25 | 10/25/2007 | P'S MOTION TO COMPEL DISCOVERY | |
| 24 | 10/18/2007 | P'S REPLY IN SUPPORT OF MOTION | |
| 23 | 10/08/2007 | P'S MOTION FOR SUMMARY JUDGMENT | |
| 22 | 09/28/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 21 | 09/28/2007 | D'S MOTION TO COMPEL DISCOVERY | |
| 20 | 09/28/2007 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 19 | 09/21/2007 | P'S MOTION TO QUASH | |
| 18 | 09/12/2007 | P'S MOTION TO COMPEL DISCOVERY | |

17 09/12/2007 <u>CHANGE OF CORRESPONDENCE ADDRESS</u>
16 09/11/2007 <u>APPEARANCE</u>
15 07/30/2007 <u>D'S MOT TO COMPEL GRANTED; P'S MOT TO COMPEL DENIED; TRIAL
        DATES RESET</u>
14 08/23/2006 <u>P'S REPLY IN SUPPORT OF MOTION</u>
13 08/01/2006 <u>DF'S WITHDRAWAL OF MOTION TO COMPEL</u>
12 07/26/2006 Confidential Plaintiff's Opposition/Response to Motion
11 07/18/2006 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
10 07/07/2006 <u>DF'S MOTION TO COMPEL</u>
9  06/28/2006 <u>P'S MOTION TO COMPEL DISCOVERY</u>
8  06/27/2006 <u>D'S REPLY IN SUPPORT OF MOTION</u>
7  06/06/2006 <u>P'S OPPOSITION/RESPONSE TO MOTION</u>
6  05/23/2006 <u>SUSPENDED PENDING DISP OF OUTSTNDNG MOT</u>
5  05/16/2006 CONFIDENTIAL - PAPER RECEIVED AT TTAB
4  01/25/2006 <u>ANSWER</u>
3  12/20/2005 PENDING, INSTITUTED
2  12/20/2005 <u>NOTICE AND TRIAL DATES SENT; ANSWER DUE:</u>                01/29/2006
1  12/20/2005 <u>FILED AND FEE</u>

Results as of 06/13/2008 02:12 PM                              **Search:**

**| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT**



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System

v1.4

# Opposition

**Number:** 91171089                    **Filing Date:** 05/25/2006
**Status:** Pending                     **Status Date:** 05/25/2006
**Interlocutory Attorney:** CHERYL S GOODMAN

## Defendant

**Name:** Charlotte Tilbury Limited
**Correspondence:** TRACY L. ZAWASKI
RADER, FISHMAN & GRAUER PLLC
39533 WOODWARD AVE STE 140
BLOOMFIELD HILLS, MI 48304-5098
tlz@raderfishman.com
**Serial #:** 78486468          Application File
**Application Status:** Opposition Pending
**Mark:** CHARLOTTE TILBURY

## Plaintiff

**Name:** GMA Accessories, Inc.
**Correspondence:** Julie S. Yoo
The Bostany Law Firm
40 Wall Street-61st Floor
New York, NY 10005
jessica.claus@bozlaw.com

## Prosecution History

| # | Date | History Text | Due Date |
|----|------------|------------------------------------------|----------|
| 21 | 03/20/2008 | SUSPENDED | |
| 20 | 03/20/2008 | STIP TO SUSPEND PEND SETTLEMENT NEGOTNS | |
| 19 | 02/21/2008 | PROCEEDINGS RESUMED | |
| 18 | 08/02/2007 | SUSPENDED | |
| 17 | 06/01/2007 | P'S MOT TO SUSP PEND SETLMT NEGOTIATIONS | |
| 16 | 04/03/2007 | SUSPENDED | |
| 15 | 03/12/2007 | D'S MOT TO HAVE DEEM ITS REQ FOR ADMISSION | |
| 14 | 03/08/2007 | P'S MOTION TO COMPEL DISCOVERY | |
| 13 | 01/11/2007 | EXTENSION OF TIME GRANTED | |
| 12 | 01/11/2007 | STIPULATION FOR AN EXTENSION OF TIME | |
| 11 | 01/11/2007 | CHANGE OF CORRESPONDENCE ADDRESS | |
| 10 | 12/08/2006 | PL'S MOT. FOR SUMM. JUDGMENT DENIED | |
| 9 | 12/05/2006 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 8 | 11/16/2006 | D'S MOTION TO STRIKE | |
| 7 | 11/03/2006 | P'S REPLY IN SUPPORT OF MOTION | |
| 6 | 09/26/2006 | D'S OPPOSITION/RESPONSE TO MOTION | |
| 5 | 08/24/2006 | P'S MOTION FOR SUMMARY JUDGMENT | |
| 4 | 07/05/2006 | ANSWER | |

3  05/25/2006    PENDING, INSTITUTED
2  05/25/2006    NOTICE AND TRIAL DATES SENT; ANSWER DUE:          07/04/2006
1  05/25/2006    FILED AND FEE

Results as of 06/13/2008 02:12 PM    **Back to search results**          **Search:** [                    ]

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System                v1.4

# Cancellation

**Number:** 92046003                  **Filing Date:** 06/30/2006
**Status:** Pending                   **Status Date:** 07/05/2006
**Interlocutory Attorney:** ANGELA LYKOS

**Defendant**

    **Name:** Annick Goutal
    **Correspondence:** Julie B. Seyler
        Abelman Frayne & Schwab
        666 Third Avenue
        New York, NY 10017
        leabelman@lawabel.com
    **Serial #:** 78227178     Application File              **Registration #:** 2949950
    **Application Status:** Cancellation Pending
    **Mark:** EAU DE CHARLOTTE

**Plaintiff**

    **Name:** GMA Accessories, Inc.
    **Correspondence:** Medea B. Chillemi
        THE BOSTANY LAW FIRM
        40 WALL STREET -61st Floor
        NEW YORK, NY 10005
        andrew.sweeney@bozlaw.com
    **Serial #:** 75403211     Application File              **Registration #:** 2217341
    **Application Status:** Section 8 and 15 - Accepted and Acknowledged
    **Mark:** CHARLOTTE

**Prosecution History**

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 28 | 05/28/2008 | WITHDRAWAL OF PETITION FOR CANCELLATION | |
| 27 | 03/18/2008 | DEFENDANT'S NOTICE OF RELIANCE | |
| 26 | 03/18/2008 | DEFENDANT'S NOTICE OF RELIANCE | |
| 25 | 03/18/2008 | DEFENDANT'S NOTICE OF RELIANCE | |
| 24 | 03/18/2008 | DEFENDANT'S NOTICE OF TAKING TESTIMONY | |
| 23 | 02/08/2008 | PLAINTIFF'S NOTICE OF RELIANCE | |
| 22 | 09/12/2007 | SUSPENDED | |
| 21 | 09/12/2007 | STIP TO SUSPEND PEND SETTLEMENT NEGOTNS | |
| 20 | 07/16/2007 | BOARD'S ORDER MAILED JULY 6, 2007 IS HEREBY MODIFIED | |
| 19 | 07/06/2007 | SUSPENDED | |
| 18 | 07/06/2007 | STIP TO SUSPEND PEND SETTLEMENT NEGOTNS | |
| 17 | 06/04/2007 | PAPER RECEIVED AT TTAB | |
| 16 | 06/01/2007 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 15 | 05/24/2007 | PAPER RECEIVED AT TTAB | |
| 14 | 05/21/2007 | PETITIONER'S MOTION TO COMPEL IS DENIED PROCEEDINGS ARE | |

RESUMED TRIAL DATES ARE HEREBY RESET AS FOLL

13 05/18/2007 P'S REPLY IN SUPPORT OF MOTION

12 05/08/2007 SUSPENDED

11 05/07/2007 PAPER RECEIVED AT TTAB

10 05/04/2007 P'S MOTION TO COMPEL DISCOVERY

9  05/04/2007 CHANGE OF CORRESPONDENCE ADDRESS

8  11/09/2006 ANSWER

7  10/11/2006 MOTION TO ENTER DEFAULT JUDGMENT DENIED; TRIAL DATES RESET

6  09/25/2006 P'S REPLY IN SUPPORT OF MOTION

5  09/18/2006 PAPER RECEIVED AT TTAB

4  08/24/2006 P'S MOTION FOR DEFAULT JUDGEMENT

3  07/05/2006 PENDING, INSTITUTED

2  07/05/2006 NOTICE AND TRIAL DATES SENT; ANSWER DUE:                    08/14/2006

1  06/30/2006 FILED AND FEE

Results as of 06/13/2008 02:13 PM    **Back to search results**          Search: _____

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



**TTABVUE. Trademark Trial and Appeal Board Inquiry System**          **v1.4**

# Opposition

**Number:** 91178562                              **Filing Date:** 07/25/2007
**Status:** Pending                               **Status Date:** 07/25/2007
**Interlocutory Attorney:** LINDA M SKORO

**Defendant**

|  |  |
|---|---|
| **Name:** | Ehinger-Schwarz GmbH & Co. KG |
| **Correspondence:** | KEITH A. WELTSCH |
| | SCULLY, SCOTT, MURPHY & PRESSER |
| | 400 GARDEN CITY PLZ STE 300 |
| | GARDEN CITY, NY 11530-3336 |
| | intprop@ssmp.com |
| **Serial #:** | 78765054          Application File |
| **Application Status:** | Opposition Pending |
| **Mark:** | CHARLOTTE |

**Plaintiff**

|  |  |
|---|---|
| **Name:** | GMA Accessories, Inc. |
| **Correspondence:** | Adrienne S. Raps |
| | The Bostany Law Firm |
| | 40 Wall Street-61st Floor |
| | New York, NY 10005 |
| | adrienne.raps@bozlaw.com |
| **Serial #:** | 78921503          Application File |
| **Application Status:** | Suspension Letter - Mailed |
| **Mark:** | CHARLOTTE |
| **Serial #:** | 73199969          Application File          **Registration #:** 1135037 |
| **Application Status:** | Cancelled - Section 8 |
| **Mark:** | CHARLOTTE |
| **Serial #:** | 75857224          Application File          **Registration #:** 2561025 |
| **Application Status:** | Section 8 and 15 - Accepted and Acknowledged |
| **Mark:** | CHARLOTTE |
| **Serial #:** | 75403212          Application File          **Registration #:** 2216405 |
| **Application Status:** | Section 8 and 15 - Accepted and Acknowledged |
| **Mark:** | CHARLOTTE |

**Prosecution History**

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 9 | 06/02/2008 | ANSWER TO AMENDED OPP | |
| 8 | 04/24/2008 | RESPONSE DUE 30 DAYS (DUE DATE) | 05/24/2008 |
| 7 | 09/20/2007 | P'S OPPOSITION/RESPONSE TO MOTION | |
| 6 | 09/18/2007 | P'S MOTION TO AMEND PLEADING/AMENDED PLEADING | |
| 5 | 09/13/2007 | SUSPENDED | |
| 4 | 09/07/2007 | D'S MOTION TO DISMISS - RULE 12(B) | |

3  07/25/2007    PENDING, INSTITUTED
2  07/25/2007    NOTICE AND TRIAL DATES SENT; ANSWER DUE:                    09/03/2007
1  07/25/2007    FILED AND FEE

Results as of 06/13/2008 02:14 PM  **Back to search results**        **Search:**

| .HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System

v1.4

# Opposition

**Number:** 91180618                          **Filing Date:** 11/07/2007
**Status:** Pending                           **Status Date:** 04/22/2008
**Interlocutory Attorney:** CHERYL S GOODMAN

**Defendant**

            **Name:** GMA Accessories, Inc.
  **Correspondence:** JOHN P. BOSTANY
                      THE BOSTANY LAW FIRM
                      40 WALL ST FL -61ST
                      NEW YORK, NY 10005-1304
                      john@bozlaw.com
        **Serial #:** 77012104                **Application File**
 **Application Status:** Opposition Pending
            **Mark:** CHARLOTTE

**Plaintiff**

            **Name:** CHARLOTTE TILBURY LIMITED
  **Correspondence:** Tracy L. Zawaski
                      Rader, Fishman & Grauer PLLC
                      39533 Woodward AvenueSuite 140
                      Bloomfield Hills, MI 48304
                      tlz@raderfishman.com
        **Serial #:** 78486468                **Application File**
 **Application Status:** Opposition Pending
            **Mark:** CHARLOTTE TILBURY

**Prosecution History**

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 9 | 03/21/2008 | P'S RESPONSE TO BOARD ORDER/INQUIRY | |
| 8 | 03/17/2008 | TERMINATED | |
| 7 | 03/17/2008 | BD'S DECISION: DISMISSED W/ PREJUDICE | |
| 6 | 01/28/2008 | SUSPENDED PENDING DISP OF OUTSTNDNG MOT | |
| 5 | 12/17/2007 | D'S MOTION TO DISMISS - RULE 12(B) | |
| 4 | 12/17/2007 | D'S APPEARANCE OF COUNSEL/POWER OF ATTORNEY | |
| 3 | 11/07/2007 | PENDING, INSTITUTED | |
| 2 | 11/07/2007 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | 12/17/2007 |
| 1 | 11/07/2007 | FILED AND FEE | |

Results as of 06/13/2008 02:14 PM  **Back to search results**      Search: [                    ]

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

EXHIBIT F

15362 GRAHAM STREET, HUNTINGTON BEACH, CALIFORNIA 92649
**TEL**714 889 2200 **FAX**714 889 3700

9/26/2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Adrienne Kosta
The Bostany Law Firm
40 Wall Street
61st Floor
New York, New York 10005

      Re: charlotte

Dear Ms. Kosta:

      As we discussed on the phone, I would like to have evidence of your client's use of 'Charlotte'. In other words, your client has a registration for 'hats, scarves, gloves and socks'; do they have use of hats? If so, can you point me to evidence of such? I would appreciate it if you would answer these two questions for each of the goods in your client's registration. Contrary to what you told me, the order from the Southern District Court does not address my questions.

      I assume that the information you are still waiting for from me is: the purchase and sale price of the hat in question. Frankly, we did not purchase those hats and the sale price of the hats will presumably vary. Can you please let me know why you need this information in light of our agreement to stop using 'Charlotte' as a style name?

                 Very truly yours,

                 Mitch Milstein
                 General Counsel Global IP

MNM/mt

