Stephen W. Feingold (SF 2763)
Richard H. Brown (RB 5858)
Mark S. Morgan (MM 8799)
**DAY PITNEY LLP**
7 Times Square
New York, New York  10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc.*
*relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GMA ACCESSORIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> QUIKSILVER, INC., NORDSTROM, INC., SWELL, INC., JILL STUART, INC., and GURU DENIM, INC. <br><br> Defendants. | Case No. 07 CV 11527 (VM) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS** |

Defendants Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell,

Inc. ("Swell") (collectively referred to as "Defendants") by and through their counsel, submit

41871259.1

this Memorandum of Law in Support of their Motion to Stay these proceedings based, in large part, on an earlier filed ongoing litigation filed in this District involving the plaintiff, GMA Accessories, Inc. ("GMA"), which raises the same issues with respect to the validity and scope of available protection in the CHARLOTTE mark. This previously filed case (the "Charlotte Ronson Litigation") was only recently discovered by Defendants because GMA improperly failed to disclose this prior litigation as a related case on the civil cover sheet.

As discussed below, discovery in the Charlotte Ronson Litigation is about to conclude and the parties will then have an opportunity to file motions for summary judgment or proceed to trial. Under either scenario, the court in the Charlotte Ronson Litigation (the "Ronson Court") will resolve, well before this case is ready for trial, whether GMA owns any trademark rights in CHARLOTTE, either under the common law or as a federally registered mark. Significantly, among the issues that will be decided either by summary judgment or trial is whether GMA acquired its federal registrations for CHARLOTTE based on fraudulent conduct before the U.S. Patent and Trademark Office ("PTO"). In light of the fact that the CHARLOTTE registrations are now incontestable[1], a decision invalidating those registrations will have a major impact on the extent and nature of discovery in this case. And if the Ronson Court decides that GMA owns no enforceable rights in CHARLOTTE then this case would simply disappear.

---

[1] Under Section 33 of the Lanham Act, a defendant in an action alleging infringement of an incontestable mark cannot attack the validity of the mark as being merely descriptive without secondary meaning. If the Ronson Court invalidates GMA's registrations, including the protection of Section 33, then GMA will now have the burden of proof to establish that its mark either is not descriptive (including geographically descriptive or merely a descriptive use of a surname or first name) or that it is descriptive with secondary meaning. *See PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d. Cir. 1989). Therefore, the prosecution and defense of these claims will vary greatly depending on whether the registrations are invalidated based on the Ronson Court's finding that GMA obtained those registrations through fraud.

In considering this motion it is also relevant for this Court to recognize that this litigation is but one of three matters currently pending in the federal courts and six pending before the PTO relating to GMA's rights in CHARLOTTE. By way of this piecemeal litigation approach, GMA is "pioneering" a form of trademark "trolling" that is contrary to the underlying presumption of U.S. trademark jurisprudence: a trademark is not a property right in a term but a right appurtenant to the association consumers make about a term that acts as a designation of source.

For the reasons set forth below, an Order granting a stay of these proceedings is proper because (i) the issues in this and the earlier filed Charlotte Ronson Litigation are substantially identical, (ii) staying this case will avoid unduly taxing limited judicial resources, (iii) staying this case will avoid unnecessary expense and time litigating the claims in this case in the event that the Ronson Court finds that GMA does not own any exclusive rights in CHARLOTTE, and/or (iv) even if the Ronson Court concludes that CHARLOTTE may function as an indication of source for clothing, the invalidation of GMA's federal registrations will shift the burden of proof in this case as well as substantially reduce the number of issues appropriate for discovery. Of particular note is the fact that litigating the fraud issue will require GMA's lead counsel in this case to be deposed and therefore could disqualify him as trial counsel.

## I.    BACKGROUND

### A.    The Present Litigation

On December 26, 2007, GMA filed its Complaint against defendant Quiksilver alleging that Quiksilver's use of Charlotte as a product id in lieu of a style number was a trademark infringement[2]. On January 17, 2008, GMA filed an Amended Complaint adding defendants

---

[2] The Trademark Manual of Examining Procedure clearly states that "[s]ubject matter used solely as a model, style, or grade designation within a product line does not function as a trademark." The Second Circuit held in *1800-Contacts, Inc. v. Whenu, Inc.* 414 F.3d 400, 412

Nordstrom and Swell as defendants based on the fact that these retailers sold the Quiksilver products bearing the Charlotte style designation. On May 15, 2008, GMA filed its Second Amended Complaint adding defendants Jill Stuart, Inc. and Guru Denim, Inc. See Exhibit A to Declaration of Stephen W. Feingold ("Feingold Dec."). The Second Amended Complaint does not disclose that on May 6, 2008, Guru Denim filed a declaratory judgment action against GMA relating to the identical claims in the Central District of California. Feingold Dec. at ¶ 5. Presumably for that reason, on June 10, 2008, GMA dismissed Guru Denim as a defendant in this case.

In its Second Amended Complaint, GMA asserts that each of the named defendants has engaged in unfair competition, federal trademark infringement, federal and state trademark dilution, and common law trademark infringement with regard to its alleged CHARLOTTE trademark. In support of these claims, plaintiff asserts its alleged ownership rights in the following U.S. trademark registrations and applications pending before the U.S. Patent and Trademark Office: U.S. Registration No. 2,216,405; U.S. Registration No. 2,217,341; U.S. Registration No. 2,535,454; U.S. Registration No. 2,561,025; U.S. Registration No. 3,242,358; Use-based Application Serial No. 78/921,503; Use-based Application bearing Serial No. 77/012,104; U.S. Registration No. 2,412,362; U.S. Registration No. 2,412,360; U.S. Registration

---

(2d Cir. 2005), that a plaintiff must establish that the defendant "used" the mark at issue as a trademark as a threshold matter because without that predicate there can simply be no infringement claim: "Not only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark. 15 U.S.C. § 1114; *see People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001). Because 1-800 has failed to establish such 'use,' its trademark infringement claims fail."

-4-

No. 2,412,359; U.S. Registration No. 2,444,120; and U.S. Registration No. 2,682,145 (collectively, the "GMA CHARLOTTE Marks").

### 1.    Defendants' Answer and Counterclaims

On June 16, 2008, Quiksilver, Nordstrom and Swell filed their Answer to the Second Amended Complaint (the "Answer").  A copy of the Answer is attached to the Feingold Dec. as Exhibit B.  In addition to a general denial and affirmative defenses, Defendants also asserted four counterclaims in their Answer.  In support of their counterclaims, Defendants asserted that CHARLOTTE is so widely used as a style designation in the apparel industry that it is not perceived as a trademark by consumers.  Specifically, Defendants asserted that (i) "Charlotte" is a popular female first name and, as a result, it is commonly used as a style designation in the apparel and jewelry industry (Answer at ¶ 16); (ii) "Charlotte" has a geographic significance as the capital of the State of North Carolina, the 20th largest city in the United States and home to the Charlotte campus of the University of North Carolina (Answer at ¶ 17); (iii) use of "Charlotte" in the apparel and accessories business is so widespread that there are multiple companies and designers that use "Charlotte" as a style designation for their various fashion products (Answer at ¶¶ 18-19)[3]; (iv) that Charlotte Russe, a third party with no connection to the present matter, owns several U.S. federal trademark registrations for use of the mark CHARLOTTE RUSSE in connection with relevant goods and services, including: U.S. Registration No. 2,416,273; U.S. Registration No. 2,416,270; U.S. Registration No. 2,416,269; U.S. Registration No. 2,416,268; U.S. Registration No. 2,414,477; U.S. Registration No. 1,485,692; and U.S. Registration No. 2,451,427 (collectively, the "CHARLOTTE RUSSE

---

[3] While Defendants have not completed their own investigation on this matter we note that the alleged infringer in the Charlotte Ronson Litigation has pled that at least 49 companies use Charlotte as a style designation.  Charlotte Ronson Complaint at ¶ 29.

Marks") (Answer at ¶ 20); (v) Charlotte Russe began using the CHARLOTTE RUSSE Marks before GMA's use of the GMA CHARLOTTE Marks and thus its use is senior to GMA's use (Answer at ¶ 21); (vi) another third party with no connection to the present action, Ehringer-Schwarz GMBH & Co. KG, owns United Stated Reg. No. 2,117,619 covering CHARLOTTE for use in connection with relevant goods and services which issued on December 2, 1997 and which is still in use and is incontestable (Answer at ¶ 22); (vii) unrelated party Charlotte Ford owned a registration for CHARLOTTE FORD for relevant goods and services at the time GMA obtained its CHARLOTTE registrations (Answer at ¶ 23); and (viii) the owner of the mark CHARLOTTE TARANTOLA has prior common law rights to GMA in the name CHARLOTTE (Answer at ¶ 24).

With regard to Count I of their Counterclaims, Defendants seek a cancellation of GMA's federally registered GMA CHARLOTTE Marks pursuant to 15 U.S.C. § 1119 based on trademark misuse. Specifically, Defendants assert that notwithstanding the fact that the GMA CHARLOTTE Marks lack significance as single source identifiers, GMA has continued to sue and threaten to sue companies who use the word CHARLOTTE in connection with other words, and continues to sue and threaten to sue retailers for selling such goods, and that these suits and threatened suits are without merit and brought in a bad faith attempt to injure the various defendants' business relationships through use of governmental process as an anticompetitive weapon (Answer at ¶¶ 26-28).

With regard to Count II of their Counterclaims, Defendants seek a cancellation of GMA's federally registered GMA CHARLOTTE Marks pursuant to 15 U.S.C. § 1119 based on fraud. Specifically, Defendants assert that GMA knowingly made false representations in Declarations

submitted to the United States Patent and Trademark Office regarding the scope of use[4] and the dates of first use of its GMA CHARLOTTE Marks (Answer at ¶¶ 29-35). In Count III of their Counterclaims, Defendants seek a cancellation of GMA's federally registered GMA CHARLOTTE Marks based on an additional fraud committed by GMA, namely, that GMA made false representations in Declarations submitted to the United States Patent and Trademark Office when it claimed it was unaware of any party, including Charlotte Russe, that had a prior right to use a mark similar to the GMA CHARLOTTE Marks[5] (Answer at ¶¶ 36-41).[6]

## B.    The Sanei Charlotte Ronson Litigation

On October 26, 2007, prior to GMA's instigation of the present litigation, Sanei Charlotte Ronson LLC ("Charlotte Ronson") filed a complaint for a declaratory judgment in this District against GMA (the "Ronson Complaint").  A copy of the Ronson Complaint is attached to the Feingold Dec. as part of Exhibit D.  Ronson filed its Complaint in response to an Opposition filed by GMA in the United States Patent and Trademark Office against two of its applications to register CHARLOTTE RONSON.  GMA's Opposition against Ronson is based on a number the GMA CHARLOTTE Marks, namely, U.S. Registration Nos. 2,216,405, 2,217,341, 2,535,454,

---

[4] GMA CHARLOTTE Registrations cover more than 100 specific goods.  By a letter dated September 26, 2007, Quiksilver requested evidence that GMA actually uses CHARLOTTE in connection with each of the goods listed in the registrations cited by GMA in its demand letter.  See Ex. F to Feingold Dec.  It is very telling that GMA limited its response to evidence that CHARLOTTE is used in connection with hats.  See Second Amended Complaint at ¶ 51.

[5] The Eleventh Circuit in April of 2008 confirmed that this conduct does constitute fraud on the  PTO justifying the invalidation of all affected registrations.  *See Angel Flight of Ga. v. Angel Flight Am. Inc.*, 2008 WL 902331, at *9 (11th Cir. April 4, 2008).

[6] The Fourth Counterclaim seeks a declaration that Defendants/Counterclaimants are not infringing GMA's rights in CHARLOTTE either because CHARLOTTE does not function as a trademark in the apparel industry or because Defendants/Counterclaimants' use is  not a trademark use under Second Circuit precedent, or because Defendants/Counterclaimants' use does not cause a likelihood of confusion with or dilution of GMA's CHARLOTTE mark.

-7-

2,561,025, 2,412,362, 2,412,360, 2,444,120, and 2,682,145.  In its Complaint, Charlotte Ronson

seeks, *inter alia*, cancellation of each of the CHARLOTTE Marks. Ronson Complaint at ¶ 18.

1.    **Charlotte Ronson's Claims in Support of
Cancellation of GMA's CHARLOTTE Marks**

In support of it claims that GMA'S CHARLOTTE Marks should be cancelled, Charlotte

Ronson asserted that CHARLOTTE is an exceedingly weak mark and that consumers are

therefore not likely to be confused (Ronson Complaint at pg. 9).  In support of this position,

Charlotte Ronson asserted that (i) CHARLOTTE is a popular female first name and, as a result,

it is commonly used as a style designation in the apparel and jewelry industry (Ronson

Complaint at ¶ 27); (ii) CHARLOTTE has a geographic significance as the capital of the State of

North Carolina, the 20th largest city in the United States and home to the Charlotte campus of the

University of North Carolina (Ronson Complaint at ¶ 28); (iii) use of "Charlotte" in the apparel

and accessories business is so widespread that that there are multiple companies and designers

that use "Charlotte" as a style designation for their various fashion products (Ronson Complaint

at ¶¶ 29-30); (iv) that Charlotte Russe owns several U.S. federal trademark registrations for use

of the mark CHARLOTTE RUSSE in connection with relevant goods and services, including:

U.S. Registration No. 2,416,273; U.S. Registration No. 2,416,270; U.S. Registration No.

2,416,269; U.S. Registration No. 2,416,268, U.S. Registration No. 2,414,477; U.S. Registration

No. 1,485,692; and U.S. Registration No. 2,451,427 (Ronson Complaint at ¶ 31); (v) Charlotte

Russe began using the CHARLOTTE RUSSE Marks before GMA's use of the GMA

CHARLOTTE Marks and thus its use is senior to GMA's use (Ronson Complaint at ¶ 32); (vi)

third party Ehringer-Schwarz GMBH & Co. KG, owns United Stated Reg. No. 2,117,619

covering CHARLOTTE for use in connection with relevant goods and services which issued on

December 2, 1997 and which is still in use and is incontestable (Ronson Complaint at ¶ 33); (vii)

-8-

third party Charlotte Ford owned a registration for CHARLOTTE FORD for relevant goods and services at the time GMA obtained its CHARLOTTE registrations (Ronson Complaint at ¶ 34); and (viii) the owner of the mark CHARLOTTE TARANTOLA has prior common law rights to GMA in the name CHARLOTTE (Ronson Complaint at ¶ 35).

Charlotte Ronson further asserted that, because "of the name and geographic significance of 'Charlotte' and the widespread use of 'Charlotte' as a style designation in the apparel and jewelry industries, 'Charlotte' has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of 'Charlotte' products." Ronson Complaint at ¶ 36.

With regard to its Second Claim for Relief, Charlotte Ronson seeks a cancellation of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. § 1119 based on trademark misuse. Specifically, Charlotte Ronson asserts that, despite the fact that the GMA CHARLOTTE Marks lack significance as single source identifiers, GMA has continued to sue and threaten to sue companies who use the word CHARLOTTE in connection with other words, and continues to sue and threaten to sue retailers for selling such goods, and that these suits and threatened suits are without merit and brought in a bad faith attempt to injure the various defendants' business relationships through use of governmental process as an anticompetitive weapon (Ronson Complaint at ¶¶ 53-55).

With regard its Third Claim for Relief, Charlotte Ronson seek a cancellation of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. § 1119 based on fraud. Specifically, Charlotte Ronson asserts that GMA knowingly made false representations in Declarations submitted to the United States Patent and Trademark Office regarding the scope of use and the dates of first use of its GMA CHARLOTTE Marks (Ronson Complaint at ¶¶ 56-60). In its Fourth Claim for

Relief, Charlotte Ronson seek a cancellation of the GMA CHARLOTTE Marks based on an additional fraud committed by GMA, namely, that GMA made false representations in Declarations submitted to the United States Patent and Trademark Office when it claimed it was unaware of any party, including Charlotte Russe, that had a prior right to use a mark similar to the GMA CHARLOTTE Marks (Ronson Complaint at ¶¶ 61-67).

## C.    Other "CHARLOTTE" Pending Litigations

In addition to the Charlotte Ronson Litigation, Defendants have also discovered that GMA is currently either a plaintiff or declaratory judgment defendant in at least three federal cases involving claims about the CHARLOTTE trademark. GMA is also a party to six opposition or cancellation proceedings before the Trademark Trial and Appeal Board with respect to this same mark. See Feingold Dec. at ¶¶ 6-7.

It is likely that some of these alleged infringers of GMA's rights are either retailers to whom Quiksilver sold "Charlotte" products or manufactures who may have sold Nordstrom and/or Swell "Charlotte" products. Significantly, all of these actions were commenced well before the action before this court and presumably resolution of these cases will also impact the claims and defenses in this action.

## II.    LEGAL STANDARD

The power to "stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A motion to stay proceedings is directed to the sound discretion of a court. *Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, No. Civ.-87-983E, 1988 U.S. Dist. LEXIS 12482, at *2 (W.D.N.Y. Apr. 1, 1988) (citing *Kinstler Instrumente A.G. v. PCB Piezotronics*, 419 F. Supp. 120, 123

(W.D.N.Y. 1976)).  The power of the district court is very broad and can be exercised whenever appropriate to preserve precious judicial resources and encourage the cost-effective resolution of disputes.  For instance, the Supreme Court has specifically held that a district court's power to stay proceedings is not confined to cases involving identical parties and issues.  *Landis*, 299 U.S. at 254.

## III.    ARGUMENT

### 1.    A Stay of These Proceedings is Proper because the Issues to be Decided in the Present Litigation and the Charlotte  Ronson Litigation are Identical

As detailed above, both Defendants and Charlotte Ronson seek to cancel GMA's CHARLOTTE Marks.  In support of their efforts, Defendants and Charlotte Ronson assert identical facts and legal arguments for the courts' consideration, namely, each party asserts that:

- CHARLOTTE is so widely used by so many companies as a style designation that consumers are not likely to make any source association between the term Charlotte and any one company.

- "Charlotte" is a popular female first name and, as a result, it is commonly used as a style designation in the apparel and jewelry industry.

- "Charlotte" has a geographic significance as the capital of the State of North Carolina, the 20th largest city in the United States and home to the Charlotte campus of the University of North Carolina.

- Use of "Charlotte" in the apparel and accessories business is so widespread that that there are multiple companies and designers that use "Charlotte" as a style designation for their various fashion products.

- Charlotte Russe owns several U.S. federal trademark registrations for use of the mark CHARLOTTE RUSSE.

-11-

- Charlotte Russe began using the CHARLOTTE RUSSE Marks before GMA's use of the GMA CHARLOTTE Marks and thus its use is senior to GMA's use.

- Ehringer-Schwarz GMBH & Co. KG, owns United Stated Reg. No. 2,117,619 covering CHARLOTTE for use in connection with relevant goods and services which issued on December 2, 1997 and which is still in use and is incontestable.

- Charlotte Ford owned a registration for CHARLOTTE FORD for relevant goods and services at the time GMA obtained its CHARLOTTE registrations.

- The owner of the mark CHARLOTTE TARANTOLA has prior common law rights to GMA in the name CHARLOTTE.

- The identical grounds for their claim that the GMA CHARLOTTE Marks should be cancelled based on trademark misuse.

- The identical grounds for their claim that the GMA CHARLOTTE Marks should be cancelled based on two separate frauds committed on the United States Patent and Trademark Office.

Accordingly, many of the issues to be decided by this Court and the Ronson Court are identical. One such issue concerns a threshold issue for GMA: the contention that CHARLOTTE simply has ". . . no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of 'Charlotte' products" (Ronson Complaint at ¶ 36; Answer (Counterclaims) at ¶ 25). If the Ronson Court finds against GMA on this issue, then it will be collaterally estopped from seeking to have this Court come to a different conclusion. In that case, GMA's claims in this matter will no longer be viable. Therefore, by staying this matter pending the Ronson Court's decision on that issue, this Court will conserve judicial (and party)

-12-

resources on a case that may well be moot in short order.    A party relying on a common law trademark, as GMA would be in this case if the Ronson Court invalidates its CHARLOTTE Registrations, carries the burden of proof.    *See Trustco Bank, N.A. v. Glens Falls Nat'l Bank & Trust Co., N.A.*, 903 F. Supp. 335, 341 (N.D.N.Y. 1995).

A second issue, common to this case and the Charlotte Ronson Litigation, concerns whether GMA's CHARLOTTE Registrations should be invalidated.  Assuming *arguendo* that GMA avoids outright dismissal of its claims based on the defense described above, the Ronson Court will have to resolve another common issue:  should the CHARLOTTE Registrations be invalidated because they were procured by making fraudulent representations to the PTO.

While Section 33 (b) of the Lanham Act places limits on the defenses that may be raised against a mark that has become "incontestable" under the Act, those limitations do not apply in the event that the registrations are cancelled.  If the registrations are invalidated then GMA will have the burden to prove that it owns an enforceable trademark that is either not descriptive (including geographically descriptive, primarily merely a surname, or primarily a first name) or descriptive with secondary meaning.    Therefore, as described below, even if resolution of the Ronson Litigation does not moot this litigation entirely, that resolution will significantly frame the claims and defenses in that case in a way that may very well avoid a significant amount of discovery (on issues that are resolved in the Charlotte  Ronson Litigation), and otherwise conserve resources of the Court and the parties.

2.     **A Stay of these Proceedings will Promote Economies For
Both the Court and the Parties**

A stay of this matter pending resolution of the Charlotte Ronson Litigation may promote

significant savings for the Court and the parties.  Resolution of the first of the two issues

identified above (i.e., that CHARLOTTE is so widely used that it has in effect become generic)

will, in the first case, dispose of the case, which self-evidently results in significant savings.

However, even if the Ronson Court does not dismiss GMA's claims altogether based on

the foregoing theory, it still might invalidate GMA's CHARLOTTE Registrations, which also

would result in significant savings of time and energy in this case.  Unless this Court issues a

stay, the Defendants here will have to take significant discovery related to the issues of whether

the CHARLOTTE registrations were procured by fraud.

Defendants will need to depose GMA's CEO, who signed the applications and many of

the Combined Declarations of Use and Incontestability (See Feingold Dec. at ¶ 8), as well as take

a 30(b)(6) deposition of GMA to confirm the accuracy of GMA claims that it was using

CHARLOTTE on each of the goods listed in the CHARLOTTE Registrations.  Those claims

encompass over 9 different trademark classes and consist of more than 100 specific goods.  That

discovery may very well be unnecessary if the Court stays this matter awaiting the outcome of

the Charlotte Ronson Litigation.  There is also the burden in having to take significant third party

discovery that can likely be avoided with a decision to wait for the Ronson Court to resolve these

issues.  In addition, because some of Combined Declarations of Use and Incontestability were

executed by GMA's lead trial counsel in this case, John Bostany (See Feingold Dec. at ¶ 8), it

will be necessary to depose him.  Because Mr. Bostany cannot act both as a witness and as trial

counsel, it seems likely that he and his firm will have to withdraw as counsel.  *See New York Lawyer's Code  of Professional Responsibility* DR 5-102.[7]

Discovery with respect to this fraud issue will also include depositions of multiple third parties.  One ground for fraud on the PTO asserted by both Charlotte Ronson and Defendants in this case is GMA's statement when it said that it knew of no other party with rights to the CHARLOTTE mark.  In order to establish that GMA deliberately made this misrepresentation Defendants will need to engage in extensive third party discovery of other companies using Charlotte when GMA first adopted this mark to prove that GMA intentionally and deliberately lied when it made the necessary assertions in its applications to register CHARLOTTE.  So far at least four other parties have been identified which existed prior to GMA's adoption of CHARLOTTE, that means at least four other depositions can be avoided by staying this case.

There is another reason why a decision by the Ronson Court to cancel GMA's CHARLOTTE Registrations will dramatically alter the pre-trial proceedings in this case.  The oldest of GMA's CHARLOTTE registrations issued in 1999.  It is obviously not a coincidence that GMA did not begin to aggressively pursue claims under this mark until after the mark

---

[7] Until 2000 the PTO would only accept applications or affidavits of use executed by the applicant and not just by the applicant's attorney.  In 2000, however, this rule changed.  Since then there has been much discussion within the Trademark bar on the advantages and disadvantages to both the client and its outside counsel when outside counsel executes the application or the affidavit.  When Mr. Bostany decided to execute the Combined Declarations of Use and Incontestability as set out at ¶ 8 of the Feingold Dec. he was clearly accepting the possibility that he could become a material witness in a subsequent litigation over the validity of the registration.  *See Brennan's, Inc. v. Brennan's Restaurant, Inc.,* 590 F.2d 168, 171 n. 7 (5th Cir. 1979) (holding that even before 2000 amendment an attorney who prosecuted the applications at issue in the case and who notarized two related affidavits was very likely to be a witness).

41871259.1

became incontestable in 2004.[8]  If marks were not "incontestable," GMA would have the initial burden to prove that its marks are either not descriptive or establish that they have secondary meaning.  That burden of proof would be significant --- and likely unattainable --- in light of the multiple parties using Charlotte in the apparel industry that GMA could never satisfy this burden.

This shift in the burden of proof will significantly reduce the likelihood of discovery disputes.  At present, GMA undoubtedly intends to rely on a Section 33 presumption that it has a trademark which is not subject to challenge. Therefore, GMA is likely to argue that no further discovery regarding the extent of its use is necessary.  Defendants will argue that even an incontestable registration can be weak and that therefore GMA's history of use is highly relevant.  *See Montblanc-Simplo GmbH v. Aurora Due S.r.L.*, 363 F. Supp. 2d 467, 478 (E.D.N.Y. 2005).  In contrast, if GMA has the burden to prove its common law rights, it will have an incentive in the first instance to produce all evidence of its use in order to establish that it has a mark at all. Thus discovery in this case will be much less contentious if conducted after a final decision in the Ronson Litigation.  In summary, a final decision in the Ronson Litigation will help streamline this case by avoiding duplicative discovery and court proceedings on that issue.

It would be a profligate to allow this court and the Charlotte Ronson Litigation to proceed separately and in staggered tandem with each other even though there can be no dispute that the common issues before the courts in those two matters are virtually identical.  Allowing this matter to continue would "be superfluous and a waste of this Court's and the attorneys' time"

---

[8] In this way, GMA's strategy resembles that of the patent owners who would deliberately delay prosecuting their patent claims in the hope that third parties would begin to practice the patented technology unaware that a "submarine" patent was about to surface that would cost them millions of dollars.  Here by avoiding any litigation until after the mark was incontestable GMA seeks a similar advantage.

41871259.1

while granting a stay of these proceedings "would work a valuable conservance of this Court's and others' time and effort." *Consolidated Aluminum*, 1988 U.S. Dist. LEXIS 12482, at *4-5 (granting a stay in patent infringement case pending the outcome of a separate patent infringement case where the plaintiff asserted the same patents against different defendants).

### 3. A Stay of These Proceedings is Proper because Cancellation of the GMA Marks by the Ronson Court will Provide Defendants with a Collateral Estoppel Defense

If the Ronson Court cancels the GMA CHARLOTTE Marks, the doctrine of collateral estoppel will mean that each of the federal registrations asserted by GMA in the Complaint is no longer valid. This factor further weighs in favor of a granting of a stay of the present proceedings. *See Consolidated Aluminum*, 1988 U.S. Dist. LEXIS 12482, at *3 (stating that "if any of the four patents involved in this case is held to be invalid in the [other] action, the defendant in this action may rely on the affirmative defense of collateral estoppel against the plaintiff….").

### 4. The Equities Favor the Grant of a Stay of These Proceedings

The equitable considerations weigh strongly in favor of granting this request. For instance, GMA failed to identify the Charlotte Ronson Litigation as a related matter in its Civil Cover sheet for this case. When this case was commenced on December 26, 2007, the Charlotte Ronson case had only been pending for two months and that court might very well have granted a motion to consolidate the cases. Clearly, however, GMA did not seek to combine these cases because it preferred to keep Defendants – who have no prior history with GMA - separate from a party (i.e. Charlotte Ronson) that has had extensive experience litigating with GMA over CHARLOTTE.

A stay of this proceeding in favor of the Charlotte Ronson Litigation is particularly proper as the Ronson Complaint was filed before GMA's original Complaint. *C.f. Remsen Partners, Ltd. v. Goldberg Co.*, 97 Civ. 0328 (BSJ), 1997 U.S. Dist. LEXIS 2115, at *3 (S.D.N.Y. 1997) (stating, "a court may stay . . . an action where the issues presented may be resolved in an earlier-filed action pending in another district court"). *See also Consolidated Aluminum*, 1988 U.S. Dist. LEXIS 12482, at *5 (granting stay of proceedings pending outcome of earlier filed proceeding involving unrelated third party defendant but similar issues).

GMA's strategy of piecemeal litigation also presents other risks. Frequently, manufacturers of products claimed to infringe a trademark claim will indemnify retailers in their distribution network (at least to some degree). With the multiplicity of suits involving GMA, it is possible that manufactures with indemnification obligations to Nordstrom and Swell are being sued in other jurisdictions or that other retailers who bought Quiksilver products are named in those actions. For that reason, Defendants request that, irrespective of the decision on this motion, GMA provide to Defendants a listing of all court decisions and/or verdicts involving the CHARLOTTE trademark as well as a list of all parties in any then pending action involving CHARLOTTE together with a summary of the status of each such matter.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court issue an Order to stay these proceedings in their entirety until a final decision is rendered in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (S.D.N.Y.).

-18-

**DAY PITNEY LLP**

*Attorneys for Defendants*
*Quiksilver, Inc., Nordstrom, Inc.*
*and Swell, Inc.*


By:    s/ Stephen W. Feingold
      Stephen W. Feingold (SF 2763)
      Richard H. Brown (RB 5858)
      Mark S. Morgan (MM 8799)
      7 Times Square
      New York, New York 10036-7311
      Phone: (212) 297-5800


Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD,**
**P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver*
*products*


Date:  June 16, 2008
New York, New York

-19-

Stephen W. Feingold (SF 2763)
Richard H. Brown (RB 5858)
Mark S. Morgan (MM 8799)
**DAY PITNEY LLP**
7 Times Square
New York, New York  10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*and Counterclaimants*
*Quiksilver, Inc. and, with respect to any allegations*
*against Nordstrom, Inc. and/or Swell, Inc.*
*relating to Quiksilver products, for Nordstrom, Inc. and*
*Swell, Inc.*

Andrew R. Nelson (pro hac vice pending)
**FRIEDMAN STROFFE & GERARD, P.C.**
19800 MacArthur Blvd.
Suite 1100
Irvine, CA 92612-2425
Phone (949) 265-1100
*Of counsel for Defendant*
*and Counterclaimant*
*Swell, Inc. relating to any non-Quiksilver products*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GMA ACCESSORIES, INC.,<br><br>Plaintiff,<br><br><br>-against-<br><br><br>QUIKSILVER, INC., NORDSTROM, INC.,<br>SWELL, INC., JILL STUART, INC., and<br>GURU DENIM, INC.<br><br>Defendants. | Case No. 07 CV 11527 (VM)<br><br><br><br>**PROPOSED ORDER** |

  THIS MATTER having been opened to the Court by defendants Quiksilver, Inc.,

Nordstrom, Inc., and Swell, Inc. ("Defendants") for an Order to stay these proceedings in their

entirety until a final judgment is rendered by the trial court  in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (S.D.N.Y.), and the Court having considered the papers submitted by the parties and oral argument, if any, and for good cause shown:

IT IS on this _____ day of _____, 2008,

ORDERED as follows:

1.      Defendants' Motion to Stay these proceedings is hereby GRANTED;

2.      This action is hereby stayed in its entirety until a final judgment is rendered by the trial court  in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (S.D.N.Y.);

3.      Within twenty (20) days after the issuance of a final judgment by the trial court in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (S.D.N.Y.), GMA Accessories, Inc. shall advise this Court in writing whether it desires to activate this case and, if activation is requested, shall provide to the Court and Defendants a copy of said final judgment together with a list of any pending matters before the U.S. District Court in any venue or before the U.S. Patent and Trademark Office (including any appeal therefrom) relating to Plaintiff's rights in CHARLOTTE.

4.      At such time after a final judgment is issued by the trial court in *Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (S.D.N.Y.) the Clerk of Court shall enter a notation of said Judgment on the docket sheet of this proceeding.

_____

HON. VICTOR MARRERO, U.S.D.J.