UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------X
GMA ACCESSORIES, INC.

                Plaintiff,

- against –

QUIKSILVER, INC., NORDSTROM, INC.,     Civil Action No: 07-CV-11527 (VM) (RLE)
SWELL, INC, AND JILL STUART, INC.,

                Defendants.
--------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS AND CERTAIN AFFIRMATIVE DEFENSES**

Stephen Feingold (SF 2763)
Richard H. Brown (RB 5858)
Cecilia Zhang Stiber (CS 4791)
Day Pitney LLP
7 Times Square
New York, New York 10036-7311
Telephone: (212) 297-5800
*Attorneys for Defendant Quiksilver, Inc.*

Mark J. Rosenberg (MR 8739)
Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone: (212) 643-7000
*Attorneys for Nordstrom, Inc. and Swell, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 8

LEGAL STANDARD............................................................................................................ 8

ARGUMENT......................................................................................................................... 9

I.    DEFENDANTS' COUNTERCLAIM FOR CANCELLATION BASED ON
      TRADEMARK MISUSE IS VALID AND SHOULD NOT BE DISMISSED ............... 9

II.   DEFENDANTS' SECOND AND THIRD COUNTERCLAIMS SHOULD NOT
      BE DISMISSED ........................................................................................................ 12

      A.    FRCP 9(b) does not apply to the second and third counterclaims...................... 14

      B.    In the alternative, defendants' second and third  counterclaims meet the
            requirements of Rule 9(b) .................................................................................. 16

III.  THE AFFIRMATIVE DEFENSES ASSERTED BY DEFENDANTS ARE
      SUFFICIENTLY PLED AND GROUNDED IN LAW ................................................ 18

      A.    The Ninth, Eleventh through Fifteenth, and Seventeenth Affirmative
            Defenses............................................................................................................. 18

      B.    The Second and Tenth Affirmative Defenses...................................................... 20

      C.    The Fifth Affirmative Defense............................................................................ 22

      D.    The Sixth Affirmative Defense ........................................................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

**Page**

*Book v. Moulton,*
2005 U.S. Dist. LEXIS 33578 (N.D.N.Y. Dec. 6, 2005)........................................................21

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,*
145 F.3d 481 (2d Cir. 1998)...............................................................................................24

*Cent. Mfg., Inc. v. Brett,*
492 F.3d 876 (7th Cir. 2007) .................................................................................................1

*Deere & Co. v. MTD Holdings, Inc.,*
2004 WL 1794507 (S.D.N.Y. Aug. 11, 2004)..............................................................9, 21, 22

*Duffy-Mott Co. v. Cumberland Packing Co.,*
424 F.2d 1095 (C.C.P.A. 1970) .....................................................................................18, 19

*GMA Accessories, Inc. v. Croscill, Inc.,*
2007 WL 766294 (S.D.N.Y. March 13, 2007) ...........................................................2, 11, 12

*GMA Accessories, Inc. v. Croscill, Inc.,*
2008 WL 591803 (S.D.N.Y. March 3, 2008) ........................................................................2

*Gruner + Jahr USA Publ'g v. Meredith Corp.,*
991 F.2d 1072 (2d Cir. 1993).................................................................................................7

*Hurley Int'l LLC v. Volta,*
82 U.S.P.Q. 2d (BNA) 1339 (TTAB Jan. 23, 2007).............................................................15

*In re BankAmerica Corp.,*
231 U.S.P.Q. (BNA) 873 (TTAB 1986) .................................................................................6

*In re Industrie Pirelli Societa per Azioni,*
9 U.S.P.Q. 2d (BNA) 1564 (TTAB 1988) ..............................................................................6

*In re Investors Funding Corp. of N. Y. Sec. Litig.,*
100 F.R.D. 64 (S.D.N.Y. 1983) .............................................................................................9

*Juno Online Servs., L.P. v. Juno Lighting, Inc.,*
979 F. Supp. 684 (N.D. Ill. Sept. 29, 1997).........................................................................12

*Life Servs. Supplements, Inc. v. Natural Organics, Inc.,*
2007 U.S. Dist. LEXIS 92170 (S.D.N.Y. Dec. 17, 2007) ....................................................23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
2007 U.S. Dist. LEXIS 37523 (S.D.N.Y. May 18, 2007).....................................................23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    2006 U.S. Dist. LEXIS 71091 (S.D.N.Y. Sept. 28, 2006)...................................................8, 17

*McGuire v. Regents of Univ. of Mich.*,
    2000 WL 1459435 (S.D. Ohio Sept. 21, 2000) ........................................................12

*Medinol Ltd. v. Neuro Vasx, Inc*,
    67 U.S.P.Q. 2d (BNA) 1205 (TTAB May 13, 2003)................................... 4, 13-16

*Microsoft Corp. v. Worth*,
    2007 U.S. Dist. LEXIS 49019 (N.D. Tex. July 5, 2007) ........................................21

*Monster Daddy, LLC v. Monster Cable Prods., Inc.*,
    2007 U.S. Dist. LEXIS 54809 (D.S.C. July 27, 2007) ..........................................16

*Montblanc-Simplo GmbH v. Kenro Indus., Inc.*,
    363 F. Supp. 2d 467 (E.D.N.Y. 2005) ..................................................................7

*Park 'N Fly, Inc. v. Park & Fly, Inc.*,
    489 F. Supp. 422 (D.Mass. 1979) ......................................................................20

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
    317 F.3d 209 (2d Cir. 2003).............................................................................22, 23

*Sinclair Oil Corp. v. Kendrick*,
    2007 TTAB LEXIS 65 (TTAB June 6, 2007) ......................................................15

*Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*,
    2006 TTAB LEXIS 9 (TTAB Jan. 10, 2006) ......................................................15

*T.N. Dickinson Co. v. LL Corp.*,
    227 U.S.P.Q. (BNA) 145 (D. Conn. 1985) ..........................................................11

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995)...............................................................17, 18

*Whitney Info. Network, Inc. v. Gagnon*,
    353 F. Supp. 2d 1208 (M.D. Fla. 2005)...............................................................3, 9

## FEDERAL STATUTES

15 U.S.C. § 1065.......................................................................................................6, 18

15 U.S.C. § 1115(b) ............................................................................................ *passim*

15 U.S.C. § 1117(a) ...................................................................................................22

# FEDERAL RULES

Fed.R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 8(d) .................................................................................................19

Fed. R. Civ. P. 12(b)(6).........................................................................................8, 9

Fed. R. Civ. P. 12(f).............................................................................................9, 21

Fed. R. Civ. P. 15(a)(2)............................................................................................9

# SENATE REPORTS

Senate Rep. No. 1333 (79th Cong., 2d Sess. (1946)) ..................................................10

Senate Rep. No. 1400 (93rd Cong. 2d Sess. (1974)) ..................................................10

# SECONDARY SOURCES

Anna B. Folgers, *The Seventh Circuit's Approach to Deterring the Trademark Troll: Say Goodbye to Your Registration and Pay the Costs of Litigation*,
3 Seventh Circuit Rev. 452 (2007) ......................................................................1

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure,
§§ 1282-1284 ...............................................................................................19, 20

## INTRODUCTION

Defendants Quiksilver, Inc. ("Quiksilver"), Swell, Inc. ("Swell") (collectively "Quiksilver"), and Nordstrom, Inc. ("Nordstrom") (collectively "Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiff GMA Accessories, Inc.'s ("GMA") Motion to Dismiss Counterclaims and Certain Affirmative Defenses ("the Motion").[1]  As we explain below, GMA's Motion should be denied in its entirety.

This case presents a variation on a new phenomenon known as trademark trolling.  A trademark troll has been defined by one legal scholar as follows:

> The trademark troll sets out to register as many marks as possible, without the intent to use and invest in the mark. Just as the "forest troll" appears to collect his "toll" from travelers passing over a bridge, the trademark troll magically appears when an unsuspecting producer adopts the same or similar mark and poses upon them two choices: pay to get a license to use my mark or litigate.  Anna B. Folgers, *The Seventh Circuit's Approach to Deterring the Trademark Troll: Say Goodbye to Your Registration and Pay the Costs of Litigation*, 3 Seventh Circuit Rev. 452 n.2 (2007), *available at* http://www.kentlaw.edu/7cr/v3-1/folgers.pdf (last visited July 11, 2008).

The Seventh Circuit has explained that the secret to the success of the trademark troll is to register a trademark "containing everyday words that regularly pop up in commercial enterprise."  *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 880 (7th Cir. 2007).

GMA has modified this theory by focusing on one trademark consisting of a word that is a personal name, a surname, and a geographic place, namely "Charlotte."  After waiting five

---

[1] This memorandum is submitted on behalf of Quiksilver, Swell, and Nordstrom.  Quiksilver and Swell collectively answered GMA's Second Amended Complaint and asserted a set of affirmative defenses and counterclaims on June 16, 2008.  Nordstrom answered GMA's Second Amended Complaint and asserted its affirmative defenses and counterclaims on June 26, 2008.  With the exception of Quiksilver's Third, Fifth, Seventh, Eighth, and Seventeenth Affirmative Defenses which are not asserted by Nordstrom, the affirmative defenses are nearly identical.

years for its registration to become incontestable, GMA has systematically commenced a campaign of "enforcement" against multiple parties.  As set forth in a litigation summary chart attached as Exhibit A to the Declaration of Stephen W. Feingold ("Feingold Decl."), GMA has over the last several years been involved in nearly thirty litigations over this "trademark," many of which still remain active.

      The trolling aspect of these actions is underscored by Judge Lynch's finding in March 2008 in one of these litigations that not only has the term "Charlotte" been "extensive[ly]" used by "numerous" third parties for many years, including on fashion items and accessories, but that GMA could document only $17,000 in marketing expenses over the entire alleged twelve-year life of the brand.[2]  *See GMA Accessories, Inc. v. Croscill, Inc.*, Civ. No. 06CV6236 (GEL), 2008 WL 591803, at *5 (S.D.N.Y. March 3, 2008).  One year earlier, Judge Lynch found that it was not clear if GMA "even utilize[d] 'Charlotte' as a designator of origin, as opposed to simply as a style name, let alone whether the public recognizes it as such."  *GMA Accessories, Inc. v. Croscill, Inc.,* Civ. No. 06CV6236 (GEL), 2007 WL 766294, at *2 (S.D.N.Y. March 13, 2007).  In his 2008 decision, Judge Lynch found that the record was still "utterly devoid of any evidence of acquired distinctiveness" and that GMA failed to remedy its earlier evidentiary defect of lack of evidence on consumer recognition.  *GMA Accessories, Inc.*, 2008 WL 591803 at *5.

      Of course, the litigation strategy of the troll is to make the cost of defense as high as possible in order to "encourage" settlement.  One common way for the troll to accomplish this

---

[2] GMA's egregious misuse of trademarks is apparent in its assertion against the Defendants a registration that was *cancelled* by the PTO over eight years ago.  (*See* Reg. No. 1,135,037 attached as Ex. F to Feingold Decl.; Second Am. Compl., Dkt. No. 24, ¶ 23 (S.D.N.Y. May 15, 2008).)  The Defendants are entitled to relief from such fraudulent and abusive use of trademark rights.

goal is to recycle arguments and papers – including unsuccessful ones – used in previous

litigations which can be inexpensively modified to fit any particular case and require the

defendant in that case to expend significant legal fees responding to the recycled motions.

GMA's motion to dismiss the Defendants' trademark misuse and fraud on the United States

Patent and Trademark Office ("the Trademark Office" or "the PTO") counterclaims is a perfect

example of this tactic.  GMA made a virtually identical motion in another "Charlotte" litigation.

(*Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, Civ. No. 07CV9578 (CM), Mem. of

Law in Supp. of Def.'s Mot. to Dismiss, Dkt. No. 8 (S.D.N.Y. Nov. 19, 2007) (Ex. B to Feingold

Decl.))

**What is noticeably missing from GMA's papers is any disclosure to this Court that
in February of 2008, Judge McMahon, in the *Charlotte Ronson* case, summarily denied
GMA's motion and refused to dismiss the Ronson's declaratory judgment claims for
trademark misuse and fraud on the Trademark Office.**  (*See* Ex. C to Feingold Decl.)  Judge

McMahon's order accurately reflects the instant motion's lack of merit.

Indeed, as one of the cases cited by GMA makes clear, trademark misuse is recognized as

an affirmative claim.  *See Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1211-12

(M.D. Fla. 2005).  (*See* Mem. of Law in Supp. of Pl.'s Mot. to Dismiss Countercls. and Certain

Affirmative Defenses, Dkt. No. 41, 3 (S.D.N.Y. June 27, 2008) ("GMA Moving Br.").)  Further,

GMA's contention that the Defendants' second and third counterclaims seeking cancellation of

GMA's CHARLOTTE registrations based on fraud on the Trademark Office fail to comply with

the requirements of Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "FRCP") 9(b) is

without merit.  First, GMA fails to recognize that over the last five years there has been a

-3-

dramatic change in the jurisprudence concerning what constitutes "fraud" with respect to filings made with the Trademark Office. In the wake of *Medinol v. Neuro Vasx, Inc*, 67 U.S.P.Q.2d (BNA) 1205 (TTAB May 13, 2003), in order to prevail on such a claim, it is no longer necessary to establish that an applicant had a subjective intent to commit fraud when it made misstatements in its application or related filings in the PTO. In essence, the Trademark Trial and Appeal Board ("TTAB") has effectuated a regime of strict liability for *any* material misstatement made with respect to the scope of goods and services claimed by the applicant or the scope of the applicant's knowledge of third party use of that mark. This "about face" by the TTAB as to what is necessary to establish "fraud" on the Trademark Office requires a reexamination of whether the Rule 9(b) pleading requirements even apply to claims for cancellation based on "fraud" on the Trademark Office. And, assuming *arguendo* that Rule 9(b) still applies, the allegations in the Defendants' second and third counterclaims are pled with sufficient particularity such that the requirements of Rule 9(b) are met.

GMA also seeks to "dismiss" certain of the Affirmative Defenses, namely Quiksilver's and Nordstrom's Second Affirmative Defense (barring GMA from recovering damages or injunctive relief based on the doctrine of estoppel, laches, waiver, acquiescence, and/or unclean hands), Quiksilver's Fifth Affirmative Defense (barring GMA from recovering monetary damages because of a lack of willful infringement), Quiksilver's and Nordstrom's Sixth Affirmative Defense (claiming GMA has not sustained injury or damages as a result of any act by Defendants), Quiksilver's Ninth Affirmative Defense (Nordstrom's Seventh Affirmative Defense) (claiming that Charlotte is not a protectable trademark because it is used merely as a style designation and that it lacks any source meaning to consumers for apparel and related products), Quiksilver's Tenth Affirmative Defense (Nordstrom's Eighth Affirmative Defense)

-4-

(alleging fraud on the Trademark Office), Quiksilver's Eleventh Affirmative Defense

(Nordstrom's Ninth Affirmative Defense) (Charlotte is generic in the apparel industry),

Quiksilver's Twelfth Affirmative Defense (Nordstrom's Tenth Affirmative Defense) (barring

relief because Charlotte is primarily merely a surname without secondary meaning), Quiksilver's

Thirteenth Affirmative Defense (Nordstrom's Eleventh Affirmative Defense) (barring relief

because Charlotte is geographically descriptive), Quiksilver's Fourteenth Affirmative Defense

(Nordstrom's Twelfth Affirmative Defense) (barring relief because Charlotte is geographically

misdescriptive), Quiksilver's Fifteenth Affirmative Defense (Nordstrom's Fourth Affirmative

Defense) (barring relief because Charlotte is a common personal or first name), and Quiksilver's

Seventeenth Affirmative Defense (barring relief due to GMA's inequitable conduct).

    The arguments made in support of striking these affirmative defenses are premised on the

what GMA describes as being "undisputed," namely that GMA's "[r]egistrations of the

CHARLOTTE mark in class 18 for 'sacks and bags' and class 25 for 'clothing, footwear, and

headgear' were deemed incontestable by the USPTO.  As such Counterclaimants are barred from

bringing any defenses that challenge Plaintiff's entitlement to trademark protection, and are

instead relegated to a short list of precisely nine allowable defenses."  (*See* GMA Moving Br. at

5-6.)

    This statement misrepresents GMA's rights.  Its class 25 registration for CHARLOTTE is

not for "clothing, footwear, and headgear" but for "clothing, footwear and headgear, *namely*

*hats, scarves, gloves and socks."*  (*See* Reg. No. 2,535,454 attached as Ex. D to Feingold Decl.

(emphasis added).)  This registration does not cover all "clothing" but only those items

specifically enumerated in the registration, namely hats, scarves, gloves, and socks.  Likewise,

Reg. No. 2,217,341 is not for "sacks and bags," but for "handbags made of textiles and beads." (*See* Reg. No. 2,217,341 attached as Ex. E to Feingold Decl.)  *See* 15 U.S.C. § 1065 ("the right of the registrant to use such registered mark in commerce *for the goods or services on or in connection with which such registered mark* has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable") (emphasis added); *see also, In re Industrie Pirelli Societa per Azioni*, 9 U.S.P.Q.2d (BNA) 1564 (TTAB 1988) (examining attorney could properly refuse registration on the ground that a mark is primarily merely a surname even if applicant owned incontestable registration of same mark for unrelated goods), *aff'd,* 883 F.2d 1026 (Fed. Cir. 1989); *In re BankAmerica Corp.,* 231 U.S.P.Q. (BNA) 873 (TTAB 1986) (examining attorney could refuse registration of the mark BANK OF AMERICA for computerized financial data processing services under §§ 2(e)(1) and 2(e)(2), despite applicant's ownership of incontestable registrations of the same mark for related services).

Here, GMA recognizes that at least some of the goods sold by Defendants under the Charlotte style designation are not hats, scarves, socks, gloves or handbags made of textiles and beads.  (*See* Second Amd. Compl. ¶ 53 ("The goods that Defendants advertise, promote, sell or offer for sale in connection with the CHARLOTTE mark are products closely related to those for which GMA owns registered trademarks").)  With respect to those goods, the issue of incontestability is not relevant.  To be clear, the only accused goods sold by Defendants that are covered by an incontestable registration are hats.  With respect to all other accused goods, there is no bar whatsoever because the premise of incontestability is limited to the goods recited in the registration.

GMA's argument fails for another reason. A mark's incontestable status does not insulate it from all defenses. Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b), provides for nine defenses to an incontestable mark including fraud, abandonment, misrepresentation of the source of the goods and services, functionality (*i.e.*, generic), and any equitable principles including laches, estoppel, and acquiescence. Inexplicably, GMA moves to "dismiss" Quiksilver's Ninth, Eleventh through Fifteenth, and Seventeenth Affirmative Defenses and Nordstrom's Fourth, Seventh, and Ninth through Twelfth Affirmative Defenses even though they dovetail these nine exceptions.

Section 33(b) also makes clear that the owner of an incontestable mark must still establish that the defendant's use is infringing. This by necessity requires examination of the mark's strength as well as other factors which may mitigate the likelihood of confusion. It is also clear that even an incontestable mark can be found weak and entitled to only a very narrow zone of protection. *See, e.g., Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077-78 (2d Cir. 1993) (affirming the holding that defendant did not infringe plaintiff's incontestable, but weak, PARENTS mark; "the strength of an incontestable registered trademark could be overcome by the use of a descriptive or weak portion of the mark"); *Montblanc-Simplo GmbH v. Kenro Indus., Inc.*, 363 F. Supp. 2d 467, 478-81 (E.D.N.Y. 2005) ("the determination that a mark is valid and incontestable does not necessitate a finding that the mark is strong and entitled to an expansive breadth of protection" and concluding that plaintiff's mark was incontestable but weak).

## BACKGROUND

This case is but one of many that GMA is bringing as part of its "toll" strategy premised on making it easier to settle than defend.  It began in August of 2007 when GMA sent Quiksilver (Quiksilver, Inc. that is) a cease and desist letter.  Quiksilver requested proof that GMA was using the mark on all of the goods and services listed in the registration.  GMA responded by only providing some purported evidence of its use of the term on hats.  (*See* Answer to Second Amd. Compl., Affirmative Defenses, and Countercls. By Quiksilver, Inc., Nordstrom, Inc., and Swell, Inc., Dkt. No. 28 ¶ 51 (S.D.N.Y. June 16, 2008).)  When Quiksilver refused to accept GMA's outlandish settlement demands, GMA responded by filing this complaint.  When Quiksilver still refused to settle this case, GMA proceeded to name two new defendants – Nordstrom and Swell – who were retailers who acquired product from Quiksilver.  Finally, when Quiksilver still refused to be intimated by GMA, it filed a new complaint bringing in Jill Stuart and Guru Denim.

## LEGAL STANDARD

"Dismissal of a counterclaim for failure to state a claim pursuant to *Rule 12(b)(6)* is proper only where it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief.  In determining whether the counterclaims should be dismissed, the Court must accept the factual allegations in the answer and counterclaims as true and draw all reasonable inferences in the claimant's favor."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, Civ. No. 04CV5316 (RMB) (MHD), 2006 U.S. Dist. LEXIS 71091, at *6 (S.D.N.Y. Sept. 28, 2006) (internal quotation marks and citations omitted).

Rule 12(b)(6) does not apply to affirmative defenses.  An attack on the adequacy of an affirmative defense is properly brought under Rule 12(f).  Yet, "Rule 12(f) motions to strike are generally disfavored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Deere & Co. v. MTD Holdings, Inc.*, Civ. No. 00CV5936 (LMM), 2004 WL 1794507, at *2 (S.D.N.Y. Aug. 11, 2004) (citations omitted).

Based on these very high standards, unless the Court is convinced that there is no set of facts which could satisfy the relevant pleading requirements, it should grant Defendants leave to replead their affirmative defenses and counterclaims.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires"); *In re Investors Funding Corp. of N. Y.  Sec. Litig.*, 100 F.R.D. 64, 65-66 (S.D.N.Y. 1983) (despite plaintiff's "unexplained" and "unjustified failure to move expeditiously to amend his complaint," court granted the plaintiff's motion for leave to amend the complaint in view of the Federal Rules' liberal standard for granting leave to amend).

## **ARGUMENT**

## I.    **DEFENDANTS' COUNTERCLAIM FOR CANCELLATION BASED ON TRADEMARK MISUSE IS VALID AND SHOULD NOT BE DISMISSED**

GMA boldly proclaims that there is simply no authority for finding trademark misuse as an affirmative claim.  This assertion is belied by one of the very cases on which GMA relies, *Whitney Info. Network,* 353 F. Supp. 2d at 1211-12 (GMA Moving Br. at 3), in which the court held that a defendant would be allowed to file an amended counterclaim for trademark misuse if it pled that the claim was based on an existing registration and not a pending application.

It is not surprising that GMA so adamantly denies the existence of such a cause of action. That is because GMA's "enforcement" of its "rights" stands in sharp contrast to the guiding principles which are the foundation of U.S. trademark law.  Trademarks are a form of consumer protection.   Legislative history evidences that Congress enacted the Lanham Act "so [the public] may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get."  S. Rep. No. 1333, at 3 (79th Cong., 2d Sess. (1946)).  Conceptually, when a trademark owner sues to stop an infringement, it is acting as a private attorney general acting on the behalf of consumers who are being deceived by the infringer.  *See* S. Rep. No. 1400, at 5 (93rd Cong., 2d Sess. (1974)) ("Deliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products.  Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights").

When a trademark owner misuses this limited right he undermines the public protection foundation underlying trademark law.  That is exactly what GMA has been doing in its numerous CHARLOTTE litigations.  It has managed to secure a registration for a common term, Charlotte, that is used by multiple parties in the fashion and clothing business.  Yet, as Judge Lynch found, GMA has invested less than $20,000 in marketing it brand to consumers since the "brand's" inception allegedly twelve years ago.  This case is clearly not about protecting consumers from confusion.  It is about entrapping businesses with registrations for a common term with the expectation that companies with significant revenue will likely pay a nuisance toll rather than large attorneys fees litigating the baseless case.

Fortunately, the law of unfair competition provides recourse for such anti-competitive behavior. As one district court within the Second Circuit explained, "if suit is used as a deliberate weapon of business aggression rather than as an instrument of adjudicating honest disputes, then it is an unfair method of competition." *T.N. Dickinson Co. v. LL Corp.,* 227 U.S.P.Q. (BNA) 145, 149 (D. Conn. 1985) (internal quotations marks and citations omitted).

Against this backdrop, Defendants' first counterclaim for cancellation of GMA Charlotte marks is sufficiently pled. While GMA has received (through fraud) exclusive rights to use these marks from the PTO, GMA is not entitled to abuse these rights by instituting this meritless suit against the Defendants. The first counterclaim specifically alleges that:

> Notwithstanding the fact that the GMA CHARLOTTE Marks lack significance as single source identifiers, GMA has continued to sue and threatened to sue companies who use the word CHARLOTTE in connection with other words and continues to sue and threaten to sue retailers for selling said goods. The suits and threatened suits are both objectively and subjectively without merit and are interposed by GMA with bad faith and the intent to directly injure and harass [Quiksilver's, Nordstrom's, and Swell's] business relationships through the use of governmental process as an anticompetitive weapon. As a results, [Quiksilver, Nordstrom, and Swell] have been injured by GMA's action. Answer to Second Amd. Compl., Affirmative Defenses, and Countercls. By Quiksilver, Inc., Nordstrom, Inc., and Swell, Inc., ("Quiksilver's Answer" or "Quiksilver's Countercls."), Dkt. No. 28, ¶ 32 (S.D.N.Y. June 16, 2008); Amd. Answer to Second Amd. Compl., Affirmative Defenses, and Countercls. by Nordstrom, Inc. ("Nordstrom's Answer" or "Nordstrom's Countercls."), Dkt. No. 38, ¶ 32 (S.D.N.Y. June 26, 2008).

Not surprisingly, Judge McMahon refused to dismiss the nearly identical motion in the "Charlotte" case before her. (*Sanei Charlotte Ronson LLC,* Tr. to Court Conference (S.D.N.Y. Feb. 15, 2008) (Ex. C to Feingold Decl.).)

Judge Lynch also denied a similar motion by GMA directed to the defendants' counterclaim for their attorneys' fees in the "Charlotte" case before him. *GMA Accessories, Inc.*, 2007 WL 766294 at *4. GMA argued that such a claim was not an independent cause of action.

*Id.* Judge Lynch quickly disposed of this argument by referencing Federal Rule of Civil

Procedure 1 and explaining that to rule otherwise would be to put form over substance. *Id.*

Whether the first counterclaim is a claim for trademark misuse or more generally for

unfair competition, the Defendants submit that it states a valid claim against GMA. (*See* Ex. C

to Feingold Decl.) *See McGuire v. Regents of Univ. of Mich.*, Civ. No. 99CV1231, 2000 WL

1459435, at * 6 (S.D. Ohio Sept. 21, 2000) (denying defendants' motion to dismiss plaintiff's

trademark misuse claim, and noting that while "an affirmative claim for trademark misuse is

indeed a novel theory, the Court finds it premature at this juncture to conclude that Plaintiff

could prove no set of facts that would support his claim for relief under the theory"); *Juno*

*Online Servs., L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 690-91 (N.D. Ill. Sept. 29, 1997)

(recognizing that a new cause of action for trademark misuse in a situation in which the mark

holder attempts to destroy its competitors through the use of its mark may be appropriate); *see*

*also, GMA Accessories, Inc.*, 2007 WL 766294 at *4-*5 (rejecting GMA's argument that it

cannot be sued for taking action to stop a third party's use of its registered trademarks, and

holding that GMA's motion to dismiss defendant's counterclaims directed to GMA's bad faith

litigation is denied).

## II.    DEFENDANTS' SECOND AND THIRD <u>COUNTERCLAIMS SHOULD NOT BE DISMISSED</u>

In their second and third counterclaims, Defendants seek cancellation of the GMA

Charlotte Marks based on fraudulent representations that GMA made to the PTO in connection

with these Marks. Specifically, Defendants aver that an authorized representative of GMA

submitted false statements in connection with GMA Charlotte marks' intent-to-use applications,

statements of use, and Sections 8 and 15 declarations that it used the GMA Charlotte marks on

-12-

*all* goods identified in the applications and registrations when in fact they were not.
(Quiksilver's Countercls., ¶¶ 12-15; Nordstrom's Countercls., ¶¶ 12-15.)  Further, GMA
represented to the PTO through its Sections 8 and 15 declarations that it was using the submitted
specimens in commerce when in fact GMA was no longer using the said specimens.
(Quiksilver's Countercls., ¶ 16; Nordstrom's Countercls., ¶ 16.)  Lastly, GMA falsely swore to
the PTO that no one else had the right to use a mark that was likely to cause confusion with its
applied-for-marks, when in fact GMA knew or should have known that marks containing
"Charlotte" were used in commerce long before GMA's alleged use.  (Quiksilver's Countercls.,
¶¶ 44-46; Nordstrom's Countercls., ¶¶ 44-46.)  Defendants also alleged that GMA knew these
representations of material facts were false and intended the PTO to rely on these
misrepresentations to issue the registrations, or that GMA's statements were objectively false
regardless of GMA's actual intent or knowledge, and that the PTO reasonably relied on these
fraudulent representations in its issuance of registrations to GMA, and Defendants suffered
injury as a result of GMA's fraudulent submissions.  (Quicksilver's Countercls., ¶¶ 40-42, 47-48;
Nordstrom's Countercls., ¶¶ 40-42, 47-78.)  These allegations are sufficient to give GMA notice
of the claims asserted and comply with the pleading requirements of the Federal Rules.

As a threshold issue, these counterclaims are not subject to the heightened pleading
requirements of Rule 9(b).  As noted above and analyzed in detail below, while this claim may
still be termed "fraud on the Trademark Office," in fact as a result of a deliberate decision by the
TTAB to hold trademark applicants to a virtually absolute standard of accountability, there is no
longer any scienter requirement.  *See Medinol Ltd.*, 67 U.S.P.Q.2d at 1209.  As a result of this
change in the elements necessary to establish this claim, the policies behind Rule 9(b) are not
relevant.

GMA's central thesis in support of its motion to dismiss these counterclaims for failure to comply with Rule 9(b) is premised on the assumption that, as pled, the Court must "infer that GMA knew its statements to be false." (GMA Moving Br. at 4.) In fact, as set forth in *Medinol* and its progeny, it no longer matters whether GMA made a misrepresentation to the Trademark Office intentionally or through negligence, inattention, or even as a result of a good faith error. As raised by the second and third counterclaims, the only relevant questions are whether GMA (i) filed applications covering goods that were not in use in commerce when the application was filed or which had not been in use in commerce for the five preceding years when the Sections 8 and 15 affidavits were filed, (ii) was using the specimens submitted with each application and/or the affidavits of use, and (iii) objectively knew or should have known that there were other third party users who had senior rights to the mark.

    A.    <u>FRCP 9(b) does not apply to the second and third counterclaims.</u>

While a claim for fraud on the Trademark Office may have previously required proof of scienter, that is no longer the case. The TTAB made this clear in *Medinol Ltd.*, 67 U.S.P.Q.2d 1205. In that case, the TTAB acknowledged that the registrant Neuro Vasx did not intend to commit fraud and had simply "overlooked" that it was not using the mark on all of the goods identified in the statement of use it filed with the PTO. *Id.* at 1210. Neuro Vasx's explanation was simply not sufficient because it did "nothing to undercut the conclusion that [the registrant] knew or should have known that its statement of use was materially incorrect," *id.*, and that having signed the declaration, "[the registrant] will not now be heard to deny that it did not read what it had signed." *Id.* at 1209.

The TTAB in *Medinol* made clear that it was creating a new definition of "fraud" as that term is used in cause of action known as "fraud on the Trademark Office." In other words, what

now constitutes a "fraud" on the Trademark Office does not need to be a true "fraud." The TTAB stated that "*[P]roof of specific intent to commit fraud is not required*, rather, fraud occurs when an applicant or registrant makes a false material representation that the application or registrant knew or should have known was false." *Id.* at 1209 (emphasis added) (internal quotation marks and citation omitted). Accordingly, the TTAB dictated that "[t]he appropriate inquiry is therefore not into the registrant's subjective intent, but rather into the objective manifestation of that intent." *Id.*

Underscoring that it was in effect creating a strict liability standard for canceling a registration based on an inaccurate statement, the TTAB *sua sponte* granted summary judgment to the defendant and cancelled the registration in its entirety. *Id.* The TTAB's decisions since *Medinol* signaled the Board's determination that there should be strict liability for errors made in the application process. *See, e.g., Hurley Int'l LLC v. Volta*, 82 U.S.P.Q.2d (BNA) 1339, 1341-45 (TTAB Jan. 23, 2007) (rejecting application because applicant made incorrect statements to the PTO regarding use of the goods identified in the application even though applicants were foreigners who were not represented by counsel, alleged not to have a good understanding of the legal meaning of "use in commerce," honestly believed that their ownership of the same mark in Australia and their use in commerce of such mark in Australia justified their use statements to the PTO regarding the mark's use in the United States, and one of the applicants suffered serious health problems during the prosecution of the mark); *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, No. 91116242, 2006 TTAB LEXIS 9, at *19-*38 (TTAB Jan. 10, 2006) (canceling registrations because of inaccurate statements made in the PTO filings which were caused by innocent mistaken belief); *Sinclair Oil Corp. v. Kendrick*, No. 91152940, 2007 TTAB LEXIS 65, at *5-*19 (TTAB June 6, 2007) (rejecting application because applicant made false

-15-

inaccurate statements to the PTO, notwithstanding that the applicant was not represented by counsel, unfamiliar with trademark law and honestly believed that she had used the proposed mark "in commerce").

The federal courts have been quick to follow the TTAB's lead.  *See, e.g., Monster Daddy, LLC v. Monster Cable Prods., Inc.*, Civ. No. 06CV293 (HMH), 2007 U.S. Dist. LEXIS 54809, at *11 (D.S.C. July 27, 2007) (partial summary judgment canceling registration because during the application of the registration, the applicant incorrectly stated that it used the proposed mark in connection with all goods and services listed in the application.  "The fact that [the trademark owner] alleges that he did not understand that, when filing the statement of use, he was attesting that the trademark was being used on all of the goods recited in the application is irrelevant.  The appropriate inquiry is … not into the registrant's subjective intent, but rather into the objective manifestations of that intent.") (citing *Medinol Ltd.*, 67 U.S.P.Q.2d at 1209).

In view of the above, the heightened level of pleading required by Rule 9(b) does not apply to a claim of "fraud on the Trademark Office."  Accordingly, Defendants' second and third counterclaims are sufficiently pled.

> B.    In the alternative, defendants' second and third
>       counterclaims meet the requirements of Rule 9(b).

Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  As one court in this district explained, "[t]o satisfy Rule 9(b), plaintiffs must specify the statements they claim were false or misleading and give particulars with respect to the fraudulent statements, including when and where the statements were made and the identity of those responsible for the

statements." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.,
Inc.*, 886 F. Supp. 1134, 1142 (S.D.N.Y. 1995).

In *Trustees of the Plumbers*, plaintiffs alleged that in monthly reports due on a certain
date of each month and submitted to the plaintiffs, defendants misrepresented the identity of the
employees and the number of hours each employee worked. *Id.* at 1142. Plaintiffs further
alleged that certain named defendants were responsible for the accuracy of the reports, that
plaintiffs relied on the misrepresentations to their detriment. Like here, the *Trustees of Plumbers*
plaintiffs could not know certain pertinent facts since they did not have access to defendants'
records. *Id.* at 1143.

The *Trustees of Plumbers* defendants asserted that those allegations for fraud did not
meet the requirements of Rule 9(b). The court disagreed, noting that "Rule 9(b)'s particularity
requirement … must be read in concert with Rule 8 of the Federal Rules of Civil Procedure,
which requires a short, plain statement of the facts upon which a claim is based. In addition,
Rule 9's strictures are relaxed where the alleged fraud concerns facts 'peculiarly within the
opposing party's knowledge.'" *Id.* at 1142. The court went on to find that the plaintiffs
sufficiently pled their fraud claims with particularity by specifying the date, place (origin and
destination), and the content of the allegedly fraudulent statements. *Id.* at 1143. Because the
plaintiffs' fraud claims allege certain facts peculiarly within the opposing party's knowledge, a
relaxation of Rule 9(b)'s standards was required. *Id.; see also, Louis Vuitton Malletier*, 2006
U.S. Dist. LEXIS 71091 at *13-*16 (finding that Dooney & Bourke sufficiently pled fraud by
Louis Vuitton on the PTO by "identifying filings containing allegedly false representations
regarding material facts, knowledge or belief on the part of Louis Vuitton that the representations
were false, an intention to induce the PTO to register and/or renew the mark in reliance on the

-17-

misrepresentation, reasonable reliance on the part of the PTO, and damage proximately resulting

from such reliance").

As already reviewed in detail above, *see supra* at 12-13, the Defendants' second and third

counterclaims specify the statements made, when they were made, and by whom.  GMA cannot

complain that the allegations are not more specific because additional details relating to these

misrepresentations are "peculiarly within the opposing party's knowledge," such that "greater

particularity [cannot] not be reasonably be expected without further discovery."  *Trustees of the*

*Plumbers*, 886 F. Supp. at 1143.

## III.    THE AFFIRMATIVE DEFENSES ASSERTED BY DEFENDANTS ARE SUFFICIENTLY PLED AND GROUNDED IN LAW

A.    The Ninth, Eleventh through Fifteenth, and Seventeenth Affirmative Defenses.

GMA contends that Quiksilver's Ninth, Eleventh through Fifteen, and Seventeenth

Affirmative Defenses (Nordstrom's Fourth, Seventh, and Ninth through Twelfth Affirmative

Defenses)[3] must fail because they do not appear in the enumerated list of allowable defenses

found in Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).  (GMA Moving Br. at 5-6.)  As

a preliminary matter, GMA's registrations are only incontestable with respect to the goods

recited therein.  15 U.S.C. § 1065 ("the right of the registrant to use such registered mark in

commerce *for the goods or services on or in connection with which such registered mark has*

*been in continuous use for five consecutive years … shall be incontestable*") (emphasis added);

*Duffy-Mott Co. v. Cumberland Packing Co.*, 424 F.2d 1095, 1099-1100 (C.C.P.A. 1970) ("[t]he

---

[3] In its Motion, GMA confusingly states in the caption for its "Point III" that it challenges the validity of Quiksilver's "Second, Tenth through Fifteenth and Seventeenth Affirmative Defenses," yet went on to assert its argument against the Ninth Affirmative Defense.  For the purpose of this opposition, Quiksilver assumes that GMA also challenges its Ninth Affirmative Defense (Nordstrom's Seventh Affirmative Defense) despite the caption in GMA's Motion.

naming of the goods is … critical to the right acquired through the filing of the affidavit – an 'incontestable' right to use. … It is a matter of acquiring a new right with respect to the goods specifically recited in the affidavit"). Since GMA's claim includes infringement by Defendants for products not within the scope of the recited services, Defendants are not bound to limit their defenses to only the nine enumerated defenses listed in Section 33(b).

Even with respect to Defendants' sale of hats which are within the scope of GMA's incontestable registration, GMA ignores that Defendants are seeking to cancel those registrations. If Defendants are successful in their efforts to cancel the relevant registrations then these Affirmative Defenses will apply to hats as well.

The Federal Rules expressly permit pleading in the alternative. Rule 8(d)(2) and (3), respectively, states: "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient …;" "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)[4]. Therefore, even if the defenses raised in Quiksilver's Ninth, Eleventh through Fifteenth, and Seventeenth Affirmative Defenses (Nordstrom's Fourth, Seventh, and Ninth through Twelfth Affirmative Defenses) are not included in the enumerated list of Section 33(b) defenses, Defendants are permitted to plead these defenses in the alternative under the theory that the GMA Charlotte marks will be cancelled and therefore no longer be incontestable. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, §§ 1282-1284 (3d ed. 2004 & Supp. 2008) ("[Federal Rule 8(d)(2)] affords a party considerable flexibility

---

[4] Until 2007, the federal rule regarding pleading in the alternative was organized under Fed. R. Civ. P. 8(e)(2). In 2008, the same rule is organized under Fed. R. Civ. P. 8(d)(2) and (3).

in framing a pleading by expressly permitting … defenses to be set forth in an alternative or hypothetical manner. … [Under Federal Rule 8(d)(3)], a party may plead alternative statements of his … defenses even though he may be uncertain about the sufficiency of one or more of the alternative allegations").

Defendants also note that Quiksilver's Eleventh affirmative Defense (Nordstrom's Ninth Affirmative Defense) is based on genericness. While genericness is not specifically included in the Section 33(b) list of defenses, it is well established that an incontestable mark may always be challenged for having become generic.  *Park 'N Fly, Inc. v. Park & Fly, Inc.*, 489 F. Supp. 422, 424 (D.Mass. 1979) (finding that a generic mark may never retain statutory protection regardless of its incontestable status; "[§ 1065] complements *§ 1064*, which provides for cancellation of a registration 'at any time if the registered mark becomes the common descriptive name [(*i.e.*, generic)]  of an article or substance'") (citations omitted).  Similarly, Quiksilver's Fourteenth Affirmative Defense (Nordstrom's Twelfth Affirmative Defense) for geographic misdescriptiveness falls within the exception found at Section 33(b)(4) which allows defending against an incontestable mark when the mark has been used to misrepresent the quality or source of origin for the goods.  Accordingly, Quiksilver's Ninth, Eleventh through Fifteenth, and Seventeenth Affirmative Defenses (Nordstrom's Fourth, Seventh, and Ninth through Twelfth Affirmative Defenses) are valid, and should not be stricken.

      B.     The Second and Tenth Affirmative Defenses.

GMA also complains that Quiksilver's Second and Tenth affirmative Defenses (Nordstrom's Second and Eighth Affirmative Defenses), directed to unclean hands and cancellation based on fraud on the PTO, respectively, must also fail because Defendants

provided no allegations or evidence that plaintiff committed fraud or have unclean hands, and requests the defenses to be stricken under Rule 12(f).  (GMA Moving Br. at 6.)

"Rule 12(f) motions to strike are generally disfavored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Deere & Co.*, 2004 WL 1794507 at *2 (citations omitted).  It is well-established that an affirmative defense is subject to the same pleading requirements as is the complaint.  *Book v. Moulton*, Civ. No. 05CV0875, 2005 U.S. Dist. LEXIS 33578, at *2-*3 (N.D.N.Y. Dec. 6, 2005) (denying plaintiff's motion to strike defendant's affirmative defenses and noting that while a defendant must plead an affirmative defense sufficiently to give plaintiff fair notice of the defense, "in some cases, merely pleading the name of the affirmative defense … may be sufficient") (internal quotation marks and citations omitted); *Microsoft Corp. v. Worth*, Civ. No. 06CV2213-G (ECF), 2007 U.S. Dist. LEXIS 49019, at *3-*4 (N.D. Tex. July 5, 2007) (finding that defendant's unclean hands affirmative defense was sufficiently pled and confirming that "an affirmative defense need only recite a short and plain statement of the claim showing that the pleader is entitled to relief").

GMA's reliance on *Deere & Co.* is inapposite.  2004 WL 1794507.  In *Deere*, the court found that defendant did not provide any allegations or evidence that Deere acquired its trademarks through inequitable conduct, and that because the court cannot conceive of any set of facts which could support a finding of unclean hands, Deere's motion to strike was granted.  *Id.* at *3.  By doing so, the Court did not rule on the level of specificity to which the defendant must have pled its affirmative defense, but only opined that the substance of which the defendant pled did not state a defense of unclean hands.

-21-

Here, Defendants more than sufficiently met their obligation of stating plain and short affirmative defenses by providing, in their counterclaims, extensive and specific allegations regarding GMA's blatant misrepresentations to the PTO in the procurement of the asserted registrations.  Thus, unlike *Deere*, where the court could not conceive of any set of facts supporting a claim of unclean hands, sufficient of facts and evidence have been provided by Defendants such that defenses of unclean hands and cancellation based on fraud on the PTO are supported, and should be preserved.

Lastly, Quiksilver's Tenth Affirmative Defense (Nordstrom's Eighth Affirmative Defense) is not facially defective as it seeks the cancellation of the asserted marks based on fraud on the PTO.  GMA's nitpicking on the technicality of Defendants' wording is an obvious attempt to obscure the very real challenge Defendants are making which threaten its entire "policing" (*i.e.*, trolling) program

The validity of the Tenth Affirmative Defense is beyond question.

C.     The Fifth Affirmative Defense.

In its Fifth Affirmative Defense, Quiksilver asserts that "GMA is not entitled to monetary damages because of a lack of willful infringement."  (Quiksilver's Answer at 12.)  GMA incorrectly contends that this defense fails because it is not required to prove willful infringement for an award of damages.  (GMA Moving Br. at 7.)  While courts in the Southern District of New York may disagree whether the 1999 Amendments to the Lanham Act, particularly 15 U.S.C. § 1117(a), have changed the requirement for proof of willful infringement as a predicate to an award of the alleged infringer's profits as damages, it is undisputed that in order to collect any damages for injuries to its Charlotte brand or attorneys fees, as GMA seeks here, a trademark owner must prove willfulness on the part of the alleged infringer.  *See Patsy's Brand, Inc. v.*

-22-

*I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003) ("The Lanham Act authorizes the award of attorney's fees to prevailing parties in 'exceptional cases,' 15 U.S.C. § 1117(a), which we have understood to mean instances of 'fraud or bad faith,' or 'willful infringement'…"); *Life Servs. Supplements, Inc. v. Natural Organics, Inc.*, Civ. No. 03CV6030 (SHS), 2007 U.S. Dist. LEXIS 92170, at *5-*18 (S.D.N.Y. Dec. 17, 2007) (outlining various district courts' interpretation of the 1999 Amendment to 15 U.S.C. § 1117(a) and concluding that the Second Circuit's requirement for willfulness in an accounting of profits for damages should not be disturbed); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, Civ. No. 04CV2990 (SAS), 2007 U.S. Dist. LEXIS 37523, at *2-*3 (S.D.N.Y. May 18, 2007) ("[T]o the extent that the Second Circuit has used both 'bad faith' and 'willful deception' in describing the requisite proof for an award of profits, the terms have been used interchangeably. … Second Circuit law on the issue of profit awards under section 1117(a) is clear: 'a finding of defendant's intentional deceptiveness has always been an important consideration in determining whether an accounting was an appropriate remedy . . . . [Therefore] under [15 U.S.C. § 1117(a)], a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting").

GMA has failed to establish that this defense is so devoid of merit that it should be dismissed.

D.    The Sixth Affirmative Defense.

Defendants assert in their Sixth Affirmative Defense that "GMA has not sustained any injury or damages *as a result* of any act or conduct by Defendants." (Quiksilver's Answer at 12; Nordstrom's Answer at 13 (emphases added).) Confusingly worded in its Moving Brief, GMA seems to challenge this defense based on the reason that isolating causation is inherently difficult in a trademark case, therefore, it need not prove damages resulting from Quiksilver's conduct.

-23-

(GMA Moving Br. at 7.)  GMA ignores the clear teaching of the Second Circuit with respect to proof of causation for damages in trademark infringement cases.  In *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1998), the Second Circuit Court of Appeals made clear that it "is well settled that in order for a Lanham Act plaintiff to receive an award of *damages* the plaintiff must prove either actual consumer confusion or deception *resulting* from the violation, … or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion."  *Id.* at 493 (second emphasis added) (internal quotation marks and citation omitted).  Here, Defendants assert that GMA cannot establish any injury or damages caused by Quiksilver's conduct.  Because the Second Circuit requires such proof of causation, Quiksilver's defense is valid, and should not be stricken.

## **CONCLUSION**

In view of the arguments set forth above, Defendants respectfully move the Court to deny GMA's Motion in its entirety.

-24-

By: s/   Stephen Feingold
Stephen Feingold (SF 2763)
Richard H. Brown (RB 5858)
Cecilia Zhang Stiber (CS 4791)
Day Pitney LLP
7 Times Square
New York, New York 10036-7311
Telephone: (212) 297-5800
*Attorneys for Defendant Quiksilver, Inc.*

By: s/  Mark J. Rosenberg
Mark J. Rosenberg (MR 8739)
Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone: (212) 643-7000
*Attorneys for Nordstrom, Inc. and Swell, Inc*

Dated: July 14, 2008
        New York, New York