UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GMA ACCESSORIES, INC.,

                Plaintiff,

    - against -

QUIKSILVER, INC., NORDSTROM, INC.,
SWELL, INC., and JILL STUART, INC.,

                Defendants.
-------------------------------------------------------x

Civil Action:  07 CV 11527 (VM)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

There are so many factual inaccuracies and unusual legal arguments contained in defendants' opposition brief that it is difficult to decide where to begin. They are summarized as follows:

a. Trademark Trolling: After citing the definition for this 7th Circuit label, defendants fail to connect it to either the instant motion or this case. Indeed, defendants call GMA a troller by citing GMA's consistent successful efforts to stop others from using a single mark – when a "troller" apparently seeks licenses on "as many marks as possible" for which it does not have a trade. Defendants abstain from informing the Court of GMA's millions of dollars of sales of Charlotte products on the very goods that are at issue here. They also avoid the Order from the most related case to this one which acknowledged these GMA filings that are absent from defendants papers here.  See GMA v. BOP, 507 F.Supp.2d 361 (S.D.N.Y 2007) (Swain, J) (CHARLOTTE mark is "arbitrary," "extensively advertised" and "strong.").

b. Instead they repeatedly mis-cite the Croscill decision by Judge Lynch which involved different products in a class for which GMA had no registration. Further Croscill did not contain the counterclaims proposed by defendants here.  There were no counterclaims for "trademark misuse" or fraud in Croscill as defendants here would have this Court believe.  The counterclaim

1

there was for "attorneys fees" which Judge Lynch held are available to either party under 15 U.S.C. 1117(a) and therefore there is no harm to asserting the claim in a pleading. In a later opinion the Court refused Croscill's request for fees. Again the facts of that case are markedly different as there, GMA was seeking to prevent Croscill from using CHARLOTTE on bath accessories and home goods in a class for which GMA did not hold any trademark registration and had far less use then its use of CHARLOTTE on clothing which are the goods at issue here, for which GMA does hold a registration.

c. Defendants criticize GMA for settling prior cases but they fail to inform the Court that such settlements were sanctioned by District Judges Stanton, Sweet, Stein and Swain and were reached at conferences with Magistrates Eaton, Francis and Peck. The original case from which defendants plagiarized their counterclaims is <u>GMA Accessories, Inc. v. BOP LLC</u>, 07-CV-3219 (LTS) and there, after hundreds of thousands was spent on defendants' fishing expedition through GMA's records for the past 10 years (while Rule 12(b)(6) and Rule 11 motions were <u>sub judice</u>) the defendants not only withdrew their counterclaims but consented to judgments and injunctions including substantial monetary damages.[1]  <u>See</u> Exhibits M, N, O, P, Q to Reply Declaration. The BOP defendants spent far more time and paid more in damages after their guerrilla warfare litigation strategy then had they settled early as scores of other companies did in the past by just consenting to stop using CHARLOTTE without the need for litigation

d. The defendants here are unfortunately represented by a law firm that has decided to follow in the footsteps of the law firm that represented the counterclaimants in <u>GMA v. BOP</u>, and they are seeking to duplicate the enormously costly discovery process in that case – frivolously – based on random improperly pled claims – and to no end, other then to harass the

---

[1] The counterclaimants' law firm in BOP also brought the Sanei v. GMA case 6 months after GMA v. BOP was filed.

2

trademark owner and make it less attractive for GMA to continue to protect its trademark.[2]

Here the opposition brief states that after "Quicksilver refused to accept GMA's outlandish settlement demands" a lawsuit was started. But from where this statement come, no one knows as there were no settlement talks. GMA had simply requested that Quiksilver (a) Stop using Charlotte and (b) identify its sales so that discussions can start, but Quicksilver refused.

Defendants seek leave to repled their affirmative defenses and counterclaims but make no mention of how they would be repled which would make them viable. "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud" or it should be dismissed. Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). See Thomson Information Services v. Lyons Commercial Data, 1998 WL 193236 (S.D.N.Y. 1998) (permission to replead a fraud claim upon the copyright office denied where it would be futile).

**Point I: Trademark misuse fails as a counterclaim.**

Defendants claim that the Whitney case saves this claim. Whitney Information Network, Inc. v. Gagnon, 353 F.Supp.2d 1208 (M.D. Florida 2005). But there, contrary to defendants' representation in their brief, the district court in Florida followed every other district court addressing the issue and dismissed the "trademark misuse" counterclaim (without leave to re-plead it), although leave was granted to re-plead a Florida common law unfair competition claim.

Neither did the Juno Court recognize "trademark misuse" as a "new cause of action" as defendants assert. In Juno the counterclaimant sought to invoke anti-trust principles alleging that one competitor attempted to put another out of business through the use of its mark. See Juno Online Service, L.P. v. Juno Lighting, Inc. 979 F.Supp. 684, 690 (N.D. Ill. 1997). But the Court declined to create trademark misuse as a cause of action. *Id.* Even if it had, this court would certainly not be bound by such a holding.

---

[2] Although defendants in BOP paid more in settlement after their vast discovery was over, the settlement did little to defer the enormous cost to GMA of that litigation

In any case, defendants do not make any allegation that GMA's products are competitive with theirs or that anti-trust principles are germane. On the contrary, success in previous efforts to enforce its trademark rights cannot serve as a basis for a claim of anti-competitive actions. See Clorox v. Sterling Winthrop, 117 F.3d 50, 61 (2d Cir. 1997)("Efforts to protect trademarks, even aggressive ones, serve the competitive purpose of furthering trademark policies"); *24 Hour Fitness USA, Inc. v. Annis D.N.H.*, 2004 WL 2656877 at *3 (D.N.H. 2004) (successfully secured "consent judgments" and "permanent injunctions" refute a claim that a mark holder is engaged in baseless litigation).

**Point II: Medinol does not relieve defendants from Rule 9(b).**

The relevance of Medinol is aptly discussed by Judge Michael S. Baylson of our sister district in Pennsylvania: "Defendants reliance on the Trademark Trial and Appeal Board ("T.T.A.B.") case of Medinol Ltd. V. Neuro Vasx, Inc., 67 U.S.P.Q.2d 1205 (T.T.A.B. 2003) for the proposition that "actual intent to defraud is irrelevant" is misplaced Medinol is not controlling in this action. Furthermore, Medinol was decided on a summary judgment standard, and the respondent in that action admitted that its "intent to use" statement was false, even though the respondent denied that its intent was fraudulent in making that false statement. Id. At 1208-09. Here the evidence supports the Court's conclusion that Plaintiffs believed their registration was true." Urban Outfitters Inc. v. BCBG Max Azria Group, Inc., 2007 WL 2463379 at *12 (E.D.P.A. 2007).

It is settled that "like all allegations of fraud, a claim that fraud has been committed on the Patent and Trademark office must be pled with the particularity required by Rule 9(b)." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 2006 WL 2807213 at *4 (S.D.N.Y. 2006). See also GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F.Supp.2d 234, 241 (S.D.N.Y. 2000) ("a claim for fraudulent registration under S38, like any fraud claim, must comply with the heightened pleading standards of Rule 9(b)") Havana Club Holding S.A. v. Galleon, 1998 WL 150983 (the heightened pleading requirement applies to each stage of the fraud); Kash 'N Gold, Ltd. v. Samhill Corp.,

4

1990 WL 196089 and *2 (S.D.N.Y. 1990) ("the allegations must be accompanied by a statement of facts upon which the belief is founded").

In Louis Vuitton, Judge Berman carefully confirmed that the counterclaimant had identified the speaker and nature of the false statements, when and where there were made, to whom and why they were false and fraudulent, i.e. Louis Vuitton allegedly submitted two different drawings to the trademark office, one with the LV logo on a decorative design and the second with the decorative design without the LV logo.  The trademark examiner was never informed that the designs were different and allegedly approved the registration based upon the view that the design was distinctive because it contained the LV logo.  Louis Vuitton then sued Dooney Burke for its use of decorative design only, claiming infringement on registration which apparently depicts the design without the LV logo.  These specific factual allegations of fraud are far more particular then the random strike allegations against GMA in the instant case that could be pled by any defendant in any trademark case.

### Point III:  Dismissal of the Affirmative Defenses

GMA stands by the law contained in the moving brief concerning dismissal of the affirmative defenses mentioned in this motion as they have no legal basis and are without merit as a matter of law and would not have been pled by a responsible litigant.  For example, the Fifth Affirmative Defense – though another district may disagree with this Court – it is certain that this Court does not agree that if the defendants show lack of willful infringement, GMA is precluded from an award of damages.

In addition, it is the defendants' argument that GMA's marks lose their incontestability in the event that a court finds infringing products to be related as opposed to falling within the same category.  This is an illogical argument that has no support or merit.

In its opposition papers for this motion, the defendants take the unique position that GMA does not hold a registration for "clothing footwear and headgear" because the product types are followed by the word "namely," somehow limiting the clause that precedes it.  What the defendants ignore is the fact that their view is directly contrary to

5

the definition and grammatical use of the word. The Oxford English Dictionary defines the word "namely" as, "particularly, especially, above all, at least." <u>See</u> "namely", <u>The Oxford English Dictionary</u>, Fifth Edition, Oxford University Press (2002). For more than 200 years, the word "namely" has been used in this fashion. For example, dictionary's from the 1800's defined "namely" as "particularly." <u>See</u> <u>e.g.</u> "namely", <u>A Dictionary of the English Language Compiled for Use of Common Schools in the United States</u>, George Goodwin & Sons, 1817.

  Where, as here, a party makes a statement and follows that statement with a clause beginning with "namely," that party is simply using the latter clause to highlight certain, more likely examples of the products. What the party is <u>not</u> doing – contrary to the defendant's contentions – is somehow limiting the prior clause. For example, the phrase, "GMA has trademark rights for clothing, <u>namely</u> hats, scarves, gloves, and socks" could easily be rephrased as "GMA has trademark rights for clothing, <u>especially</u> hats, scarves, gloves, and socks." <u>See</u> <u>Id</u>. And so, while GMA was selling more hats, scarves, gloves and socks, their registration is not so limited as defendants would have the court believe. Indeed, the registration covers all goods listed therein, which in this case of course includes clothing, footwear and headgear. <u>See</u> <u>Savin Corp. v. Savin Group</u>, 391 F.3d 439, 456 (2d. Cir. 2004); GMA v. BOP

  Finally, while alternative pleading is of course acceptable, the defendants' extraordinary argument that their affirmative defenses would have merit if GMA's marks are canceled is entirely speculative and such speculation cannot prevent their dismissal.

    **Point IV:  Defendants' failure to allege damages is fatal to its fraud claim**

  The defendants spend a great deal of time attempting to persuade this court that the <u>Medinol</u> case spawned a new rule of law in fraud claims. However, the defendants completely ignore the fact that even if their unique view was the law of this circuit, their pleading is still fatally deficient. Specifically, the pleading does not allege any damages, and without damages there can be no fraud. <u>Kaye v. Grossman</u>, 202 F.3d 611, 614 (2nd Cir. 2000) (there must be a loss as a "direct, immediate and proximate result" of the

6

alleged fraud); See GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F.Supp.2d 234, 241 (S.D.N.Y. 2000) (dismissing fraud claim in part for failure to allege economic harm in a similar counterclaim alleging fraud on the trademark office).

A copy of defendants' Rule 26(a) disclosures on the counterclaims failing to state damages, which was exchanged after they were notified in our moving papers that damages were required, is attached to the accompanying Reply Declaration of John P. Bostany, Exhibit S.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the counterclaims be dismissed along with the affirmative defense specified in the moving papers, and that costs be assessed pursuant to 15 U.S.C. 1117(a) due to the exceptional lack of merit to defendants claims and arguments and to discourage other trademark defendants from engaging in similar irresponsible pleading designed to derail legitimate trademark enforcement initiatives by trademark owners who seek to protect their rights under the Lanham Act.

Dated: New York, New York
       July 24, 2008

                                                    Respectfully submitted,

                                                  _____
                                                JOHN P. BOSTANY (JB-1986)
                                                THE BOSTANY LAW FIRM
                                                Attorneys for Plaintiff
                                                40 Wall Streer – 61st Floor
                                                New York, New York 10005