UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
GMA ACCESSORIES, INC.,

        Plaintiff,

      - against -

QUIKSILVER, INC., NORDSTROM, INC.,
and JILL STUART, INC.,

             Defendants.
-----------------------------------------------------x

07 CV 11527 (VM) (RLE)

**<u>DECLARATION OF JOHN P. BOSTANY</u>**

     John P. Bostany, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury, as follows:

     1.      I am a member of The Bostany Law Firm, attorneys of record for Plaintiff, GMA Accessories, Inc. ("GMA"), in the above captioned matter, and respectfully make this Declaration based upon my review of the files.

     2.      The above-captioned matter is a trademark infringement action arising out of the defendants' use of the CHARLOTTE mark on clothing and bags.  Plaintiff GMA ACCESSORIES, INC. ("GMA") has used its CHARLOTTE trademark on clothing and bags for many years and holds incontestable trademarks for them; millions of dollars of sales orders, advertisements and specimens were all produced by GMA.

     3.      A copy of the Second Amended Complaint is attached as **Exhibit A**.

     4.      GMA served Quiksilver with Requests for the Production of Documents and Interrogatories, dated April 9, 2008; copies of which are attached as **Exhibit B, C**.  Here, GMA requested, among other things, that Quiksilver produce purchase orders, invoices, sales orders, emails, memos, catalogs, and other similar documents, and answer related interrogatories <u>pertaining to all products that depict "Charlotte" on the product</u>, packaging or advertising.  *See generally Id.*

     5.      The May 12, 2008 responses, which are attached as **Exhibit D** and **E,** lodged a series of objections and provided some spreadsheets; however, most responses stated that documents would be made available once an appropriate protective order was entered. Quiksilver's answers to the Interrogatories were deficient because they were specifically limited

to the hat and hoodie and because the answers referenced Quiksilver's anticipated document production, which never occurred.  Even the spreadsheet was incomplete because it was specifically limited to the hat and hoodie that were identified in the complaint as opposed to *all* of the infringing products that Quiksilver manufactures.

6.     A protective order was entered the next day on May 13, 2008.  When no other documents were produced, this firm contacted the Day Pitney firm on May 27, 2008 and requested that they produce all documents that were withheld for confidentiality reasons.

7.     The Day Pitney firm refused to supplement their production to any extent.  We contacted them on May 29 and May 30 and then requested a "meet and confer."  At the "meet and confer", which took place on June 3, 2008, Quiksilver agreed to produce the documents they had withheld on confidentiality grounds, i.e. invoices, purchase orders, specimens, etc.  Daniel Levy reminded the Quiksilver attorneys that they should produce documents for all products (including shorts and a watch) that bear the CHARLOTTE mark.

8.     None of these documents were ever produced.  We wrote to Day Pitney on June 6, June 13, and June 16, to no avail.  *See e.g.* **Exhibit F**.  Since Quiksilver never produced the documents referenced in its answer to GMA's Interrogatories, and since Quiksilver failed to address items other than the hat and hoodie in its answers, Quiksilver's responses to the Interrogatories remained deficient.

9.     Pursuant to Judge Marrero's Individual Practices, we authored a joint submission regarding this discovery dispute and sent it to the Day Pitney firm on June 18; a copy of this is attached as **Exhibit G**.

10.     On June 19, Stephen Feingold of the Day Pitney firm responded to us, asserting that a search for documents concerning Quiksilver products other than the hat and hoodie described in the Complaint "…is not going as quickly as everyone involved would prefer."  Mr. Feingold also stated that he would be able to provide us with a checklist of additional documents that they planned to provide and a timetable for production by June 24, which never happened.  A copy of this email string is attached as **Exhibit H**.

11.     On June 26 and July 2, Mr. Levy attempted without success to persuade Quiksilver to answer the interrogatories and produce the documents GMA requested on April 9.

12.     On July 25, we summarized the outstanding issues and held another "meet and confer" on July 28, attended by myself, Mr. Levy, Mr. Feingold and Mr. Benjamin.  *See* **Exhibit**

**I**. Following this conference, on July 28 we summarized the issues for the court, a copy of which is attached as **Exhibit J**.

13.    A conference was held with the court on July 29 at which this court directed, *inter alia*:

    a.    Quiksilver to provide a report to the court by August 6 as to whether Quiksilver manufactured any products in Class 25 other than hats and hoodies that used CHARLOTTE, including a report outlining the dates by which Quiksilver could produce documents regarding such products.

    b.    Quiksilver to make submissions regarding its purported difficulties in producing orders and invoices for CHARLOTTE products by August 13.

    c.    With regard to GMA's request for travel costs pursuant to Local Rule 30.1, briefing from the parties by August 13.

14.    Quiksilver confirmed these directives in a letter to us dated July 31, with which we disagreed only to a minor extent and on other grounds.  *See* the copy of Quiksilver's July 31 letter, attached as **Exhibit K**.

15.    On July 30, Quiksilver confirmed it also manufactured CHARLOTTE hats, hoodies, shorts, tank tops, and thermal tops, but to date has not provided any documents for these products, except for incomplete spreadsheets for a brief period.  It also did not indicate what other CHARLOTTE products in Class 25 it has sold, or a date by which they could provide documents. Moreover, Quiksilver failed to report to the court regarding these products.  *See* **Exhibit K**, ¶3.

16.    With regard to the travel costs, after Quiksilver refused to comply with the June 23 deposition notice, on July 22 we offered to do the depositions in California if Quiksilver promptly provided a date with Quiksilver's obligations to advance costs to be determined later. *See* **Exhibit L**.

17.     We respectfully ask that Quiksilver be required to identify all of its CHARLOTTE sales for at least a six year period, and provide sales documents for them to corroborate the numbers and to show how the CHARLOTTE mark was used in the sales.


Dated: New York, New York
          August 13, 2008


                                        _____
                                                John P. Bostany

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GMA ACCESSORIES, INC.,

     Plaintiff,

**SECOND AMENDED COMPLAINT**

- against -

    Civil Action No.: 07CV11527 (VM)

QUIKSILVER, INC., NORDSTROM, INC.,
SWELL, INC., JILL STUART, INC.,
and GURU DENIM, INC.

     Defendants.
-------------------------------------------------------X

RECEIVED
MAY 1 5 2008
U.S.D.C. S.D. N.Y.
CASHIERS

   Plaintiff, GMA Accessories, Inc., (hereinafter "GMA"), brings this complaint against

Defendants QUIKSILVER, INC. (hereinafter "QUIKSILVER"), NORDSTROM, INC.

(hereinafter "NORDSTROM"), SWELL, INC. (hereinafter "SWELL"), JILL STUART, INC.

(hereinafter "JILL STUART"), GURU DENIM, INC. (hereinafter "GURU DENIM"), alleging

upon information and belief as follows:

<u>**NATURE OF THE CASE**</u>

   This is a claim for infringement of the trademark CHARLOTTE which is registered to

plaintiff in several classes including class 25 for "clothing, footwear and headgear" and class 18

for "sacks and bags." Defendant QUIKSILVER owns the registered trademark ROXY. Without

permission from plaintiff, QUIKSILVER and its customers began using the plaintiff's

CHARLOTTE mark along with the ROXY mark to identify clothing and headgear, misleading

consumers into believing that both ROXY and CHARLOTTE brands belong to QUIKSILVER.

Without permission from plaintiff, Defendant JILL STUART and its customers began using

plaintiff's CHARLOTTE mark to identify bags, misleading customers into believing that both

JILL STUART and CHARLOTTE brands belong to JILL STUART. Without permission from plaintiff, GURU DENIM began using plaintiff's CHARLOTTE mark to identify clothing, in violation of the Lanham Act. These manufacturers resisted repeated attempts by GMA to persuade them to stop their infringing conduct.

## PARTIES

1. Plaintiff, GMA ACCESSORIES, INC. (hereinafter referred to as "GMA"), is a corporation, duly organized and existing under the laws of the State of New York, with a place of business at 1 East 33rd Street, New York, New York.

2. GMA does business as "Capelli".

3. Defendant QUIKSILVER is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 15202 Graham Street, Huntington Beach, California 92649.

4. Defendant NORDSTROM, is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 1617 6th Avenue, Suite 500, Seattle, Washington 98101.

5. Defendant SWELL, is a corporation duly organized and existing under the laws of the State of Delaware, with its principle place of business located at 32401 Calle Perfecto, San Juan Capistrano, California 92675.

6. Defendant JILL STUART, is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 550 7th Avenue – 24th Floor, New York, New York 10018.

7. Defendant GURU DENIM, is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 2263

East Vernon Avenue, Vernon, California 90058.

8.  Defendant, QUIKSILVER, and its customers, with full knowledge and consent of QUIKSILVER, have used CHARLOTTE to display, market, distribute, sell, and/or offer for sale merchandise to the public.

9.  Defendants are now displaying, marketing, distributing, selling, and/or offering for sale merchandise in connection with the CHARLOTTE mark.

10. QUIKSILVER uses and has used the website www.roxy.com to further infringe upon the CHARLOTTE mark.

11. NORDSTROM uses and has used the website www.nordstrom.com to further infringe upon the CHARLOTTE mark.

12. SWELL uses and has used the website www.swell.com to further infringe upon the CHARLOTTE mark.

13. JILL STUART uses and has used the website www.jillstuart.com to further infringe upon the CHARLOTTE mark.

14. GURU DENIM uses and has used the website www.truereligionbrandjeans.com to further infringe upon the CHARLOTTE mark.


**JURISDICTION AND VENUE**

15. This is an action for unfair competition, federal trademark infringement, federal and state dilution, and common law infringement pursuant to the Lanham Act, 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331, 1338(a) and (b).  The Court has supplemental jurisdiction over the common law trademark infringement and unfair competition claim and the trademark dilution claim under the laws of New York pursuant to 28 U.S.C.  Section 1367.

16. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

## FACTS

17. Each of the CHARLOTTE federal registrations owned by GMA pre-date the first use of the CHARLOTTE mark by Defendants.

18. Under Section 33(b) of the Lanham Act, registration of an incontestable mark is conclusive evidence of the ownership of the mark, the validity of the mark and the exclusive right of the owner to use the mark in commerce.

19. Since 1999, GMA has been and is now the title owner of Registration # 2,216,405 for the mark CHARLOTTE in International Class 26 for hair accessories. This mark was deemed incontestable pursuant to section 15 of the Lanham Act.

20. Since 1999, GMA has been and is now the title owner of Registration # 2,217,341 for the mark CHARLOTTE in International Class 18 for sacks and bags. This mark was deemed incontestable pursuant to section 15 of the Lanham Act.

21. Since 2002, GMA has been and is now the title owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25 for "clothing, footwear and headgear." This mark has been deemed incontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act. Since 2002, GMA has been and is now the title owner of Registration # 2,561,025 for the mark CHARLOTTE in International Class 9 for sunglasses. This mark has been deemed incontestable by the United States Patent and Trademark Office pursuant to section 15 of the Lanham Act.

22. GMA has been and is now the title owner of Registration # 3,242,358 for the mark CHARLOTTE in International Class 22.

23. In November of 2001, GMA was assigned all rights to Registration # 1135037. Pursuant to said assignment, GMA's use in commerce of the CHARLOTTE mark dates back to January 2, 1979. (The registrations referred to in ¶11-16 are respectfully referred to herein as the "GMA marks").

24. The GMA Products consist of, among other things, clothing, headgear, bags and fashion accessories and GMA used the CHARLOTTE mark in commerce in connection with these goods before Defendant.

25. Defendant QUIKSILVER is the owner of the mark ROXY.

26. Defendant GURU DENIM uses the CHARLOTTE mark to advertise and/or sell its products.

27. Defendant JILL STUART uses the CHARLOTTE mark in conjunction with the JILL STUART mark in commerce.

28. Defendants were aware or should have been aware of the GMA marks before it began using CHARLOTTE to identify its headgear, clothing, and/or bags.

29. Defendants and numerous online stores are co-infringers and acting in concert to infringe CHARLOTTE, either failing to conduct a trademark search and/or ignoring the knowledge that GMA is the owner of the CHARLOTTE mark for the same goods that defendants decided to call CHARLOTTE and in addition continuing to infringe after receiving actual notice of GMA's claim that defendants' were indeed infringing upon GMA's trademarks.

30. Defendants QUICKSILVER, JILL STUART, and GURU DENIM and those acting in concert with it have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms and/or other brands to identify headgear, clothing, and/or bags.

31. Defendants QUICKSILVER, JILL STUART, and GURU DENIM along with its customers and agents are intentionally infringing and have in the past intentionally infringed upon the CHARLOTTE mark.

32. Defendants are infringing in bad faith.

33. After defendants, and those acting in concert with them, including but not limited to the named defendants, became aware of GMA's registration to the mark CHARLOTTE, they continued to use the mark to advertise, promote, display or sell headgear, clothing, and bags.

34. Defendants commenced use of the CHARLOTTE mark no earlier than 2006.

35. The CHARLOTTE mark is inherently distinctive as to GMA's clothing, headgear, and bags.

36. GMA's use of CHARLOTTE has substantial secondary meaning in the marketplace.

37. The use of the word CHARLOTTE in connection with GMA's clothing, headgear, bags and related products is arbitrary and strong.

38. Since at least 2006, Defendants used the CHARLOTTE mark as described herein.

39. Since at least 2006, Defendant QUICKSILVER sold an infringing line of "CHARLOTTE" headgear and clothing.

40. Since at least 2007, Defendants JILL STUART and GURU JEANS used the CHARLOTTE mark as described herein.

41. Defendants were aware or should have been aware of the GMA marks before they began using CHARLOTTE to identify their headgear and clothing, namely hats, jeans, and bags.

42. Defendants have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms to identify headgear, clothing, and bags.

43. Defendants have in the past intentionally infringed and are continued to intentionally infringing upon the CHARLOTTE mark with either actual or constructive notice of GMA's rights to the mark.

44. A search of the United States Patent and Trademark Office list of registered marks would have revealed that GMA was the owner of the mark CHARLOTTE with respect to headgear and clothing, and sacks and bags, and Defendants infringed and are infringing in bad faith.

45. Prior to using the CHARLOTTE mark, Defendants QUIKSILVER, JILL STUART, and GURU DENIM failed to search the United States Patent and Trademark Office website for CHARLOTTE.

46. Prior to using the CHARLOTTE mark, Defendant NORDSTROM failed to search the United States Patent and Trademark Office website for CHARLOTTE.

47. Prior to using the CHARLOTTE mark, Defendant SWELL failed to search the United States Patent and Trademark Office website for CHARLOTTE.

48. Defendants continued to infringe after learning that GMA owned the CHARLOTTE mark.

49. Defendant QUIKSILVER received cease and desist letters in August 2007 and October 2007. QUIKSILVER and its customers did not stop their infringement.

50. Defendants JILL STUART and GURU DENIM received similar cease and desist letters in 2007 and 2008.

51. On September 26, 2007, QUIKSILVER requested that plaintiff provide to it proof of its use in commerce of CHARLOTTE on hats. While plaintiff explained that its incontestable registration is conclusive evidence of its use and its exclusive right to use the mark, to facilitate an out of court settlement, GMA complied with the request.

52. QUIKSILVER received a final warning letter in November 2007.

53. The goods that Defendants advertise, promote, sell, or offer for sale in connection with the CHARLOTTE mark are products closely related to those for which GMA owns registered trademarks and are in the same Class for which GMA owns a trademark registration to the mark CHARLOTTE.

54. The Defendants' goods mentioned in paragraph 42 are in Class 25 or Class 18 and are goods identical or closely related to goods listed in GMA's trademark registration.

55. Since at least 2006, Defendant QUIKSILVER and its customers have used the CHARLOTTE mark as described herein and QUIKSILVER and its customers are co-infringers and acting in concert in the scheme to infringe as set forth herein.

56. Since at least 2007, Defendants JILL STUART and GURU DENIM and its customers have used the CHARLOTTE mark as described herein and JILL STUART and GURU DENIM and its customers are co-infringers and acting in concert in the scheme to infringe as set forth herein.

57. Since at least 2006, Defendants have sold an infringing line of headgear and clothing and bags which infringement was furthered and enhanced by Defendants' distribution of these infringing items, advertised, promoted, marketed or displayed in connection with the CHARLOTTE mark to Defendants' customers, who in turn peddled, displayed, marketed, offered for sale and sold the infringing goods at the retail level to the general public in connection with the CHARLOTTE mark.

58. GMA has priority over Defendants in the CHARLOTTE mark for the goods described in paragraph 41 and 42.

## COUNT I – TRADEMARK INFRINGEMENT (FEDERAL)

59. GMA repeats and realleges the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. Long after the adoption and use by GMA of the CHARLOTTE Trademark, and with at least constructive notice of the registration of the GMA Trademarks, Defendants knowingly and intentionally used reproductions, copies or colorable imitations of the CHARLOTTE Trademark to market, promote, identify design, manufacture, sell and distribute its products and either continue to do so or threaten to do so.

61. Defendants have been offering for sale products using a confusingly similar name, e.g., CHARLOTTE.

62. Defendants, by their acts as aforesaid, have taken advantage of the creativity of GMA in coining the CHARLOTTE mark, of the good will developed by GMA in the mark CHARLOTTE, and the advertisements for CHARLOTTE.

63. Defendants' use of GMA's word mark results in confusion as to sponsorship, association, source and origin of GMA and Defendants' products.

64. Having adopted and used the CHARLOTTE mark after GMA, Defendants and their co-infringers are junior users of the mark.

65. Defendants injected their products into commerce with the express intent of profiting from GMA's valuable registered trademarks and the manufacturer defendants' customers are acting in concert.

66. The acts of Defendants complained of herein have been without the authorization or consent of GMA.

67. Defendants' acts alone and via their customers have caused and will continue to cause irreparable harm and injury to GMA.

68. The activities of Defendants, complained of herein, constitute infringement of the GMA Trademarks in violation of Sections 35 and 43(a) of the Lanham Act, 15 U.S.C. Sections 1114(1) and 1125(a).

## COUNT II – VIOLATION OF THE NEW YORK ANTI-DILUTION STATUTE

69. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in deceptive trade practices in violation of the New York Anti-Dilution Statute, and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 68 as if fully set forth herein.

70. Section 360-1 of the New York General Business Law provides: "Likelihood of injury to business or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark… or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen.Bus. Law sec. 360-1.

71. Defendants have engaged in trademark infringement and unfair competition by manufacturing, marketing, selling and/or offering for sale products using the same or similar CHARLOTTE word mark and upon information and belief continue to fill purchase orders using the word CHARLOTTE.

72. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of GMA's products.

73. Defendants have engaged in, and continue to engage in, trademark infringement and unfair competition by causing a likelihood of confusion or of misunderstanding as to

affiliation, connection or association of GMA's products with Defendant's products.

74. GMA has not consented to any sponsorship, approval, status, affiliation, or connection with Defendant's products.

75. GMA has been irreparably damaged, and will continue to be damaged by Defendants' trademark infringement and unfair trade practices and is entitled to injunctive relief, pursuant to N.Y.Gen.Bus.Law 360-1.

## COUNT III – UNFAIR COMPETITION UNDER NEW YORK'S COMMON LAW

76. As a cause of action and ground for relief, GMA alleges that Defendants are engaged in acts of trademark infringement, unfair competition and misappropriation in violation of the common law of the state of New York and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 75 as if fully set forth herein.

77. Defendants have infringed GMA's trademarks by manufacturing, marketing and/or selling products that infringe the CHARLOTTE trademark.

78. Defendants' acts constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of a material fact.

79. Upon information and belief, Defendants intend that others rely upon these unfair methods of competition and unfair or deceptive trade practices.

80. Defendants' deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers.  Unless defendants' acts are restrained by this Court, Defendants' deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

81. Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to

affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by Defendant.

82. Defendants' acts have harmed GMA's reputation and have severely damaged GMA's goodwill.

83. Upon information and belief, Defendants' acts are an attempt to deceive the public. The public is likely to be confused as to the source and origin of GMA's products.

84. Defendants have misappropriated GMA's trade name, and upon information and belief continue to do so, by selling products that are ordered under a mark that is confusingly similar to GMA's line of "CHARLOTTE" products.

85. Defendants' trade name infringements are in violation of the common law of New York.

86. Defendants' aforesaid acts constitute infringement, tarnishment, dilution, misappropriation, and misuse of GMA's trademark, unfair competition, palming-off and passing-off against GMA, and unjust enrichment by Defendant, all in violation of GMA's rights under the common law of New York.

87. Defendants' aforesaid acts are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with GMA, or origin, sponsorship, or affiliation of GMA's products by Defendant.

88. The public is likely to be confused as to the source, origin, sponsorship, approval or certification of the parties' products.

89. Upon information and belief, Defendants' actions have been willful and deliberate.

90. GMA has suffered, and continues to suffer, substantial and irreparable injury as a result of Defendants' deceptive business practices and therefore GMA is entitled to injunctive relief under New York Common Law.

WHEREFORE, the plaintiff, GMA ACCESSORIES, INC., prays:

A.    That this Court adjudge that Defendants have infringed, counterfeited, tarnished and diluted GMA's CHARLOTTE trademark, competed unfairly, engaged in deceptive trade and business practices, and committed consumer fraud as set forth in GMA's counterclaims, in violation of GMA's rights under New York Law as well as the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1124 and 1125.

B.    That Defendants and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing products in connection with the word mark CHARLOTTE or any mark similar to, or substantially indistinguishable therefrom, and (3) holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "CHARLOTTE" Trademark or (4) from in any other way infringing GMA's "CHARLOTTE" word mark or (5) effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in numbers (1) through (4) hereof.

C.    That Defendants be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the

"CHARLOTTE" word mark, and any plates, molds, and other materials for making such infringing products.

D.    That Defendants be directed to file with this Court and to serve upon GMA within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs B and C, pursuant to 15 U.S.C. 1116(a).

E.    That GMA recover Defendants'  profits arising from its acts of trademark infringement, trademark dilution, false designation of origin, dilution, tarnishment, false description or representation, unfair competition, deceptive trade and business practices, and consumer fraud pursuant to both New York law and 15 U.S.C. 1117(a).

I.    That GMA recover its reasonable attorney fees incurred in this action pursuant to 15 U.S.C 1117(a).

J.    That GMA have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

K.    That GMA have such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 15, 2008

Respectfully Submitted,

THE BOSTANY LAW FIRM

By:    John P. Bostany (JB 1986)
Attorneys for Plaintiff GMA Accessories, Inc.
40 Wall Street, 61st Floor
New York, New York 10005
(212) 530-4400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GMA ACCESSORIES, INC.,

.

                          Plaintiff,

                                                      **PLAINTIFF'S FIRST**
                                                      **REQUEST FOR DOCUMENTS**

                                              Civil Action No.:  07CV11527 (VM)

- against -

QUIKSILVER, INC., NORDSTROM, INC.,
SWELL, INC., and JILL STUART, INC.

                          Defendants,
-------------------------------------------------------------------X

COUNSELLORS:

       Plaintiff, GMA ACCESSORIES, INC., by its attorneys, The Bostany Law Firm, hereby
requests Defendant to produce copies of the documents set forth below at The Bostany Law
Firm, 40 Wall Street, New York, New York 10005 pursuant to Fed.R.Civ.P. 34:

                              Definition:

       "CHARLOTTE products" are defined as: merchandise with the word CHARLOTTE
depicted on the product, product packaging, product marketing, promotion or
advertisements.

       "You and Your": JILL STUART, INC., JILL STUART INTERNATIONAL, LTD and
JILL STUART INTERNATIONAL, LLC.


       (a)       All purchase orders, sales orders and invoices pertaining to CHARLOTTE
products.

       (b)       Any and all documents that would indicate the approximate number of
CHARLOTTE products purchased.

(c)     Any and all documents that would indicate the approximate number of CHARLOTTE products sold and your revenue.

(d)     Any and all emails, memos, documents, records, or writings of any kind reflecting or relating to the manufacture, marketing, sale, purchase, promoting, distributing or other disposition of CHARLOTTE products.

(e)     All invoices received from your supplier including any and all purchase orders submitted by you to your supplier for purchase of CHARLOTTE products.

(f)     Originals or color copies of all brochures, websites, catalogs or advertisements depicting CHARLOTTE products.

(g)     All documents that reveal how the CHARLOTTE and/or CHARLOTTE ROXY mark was selected and/or adopted

(h)     All documents that show your date of first use and first use in commerce of CHARLOTTE products.

(i)     All Documents that support your affirmative defenses.

(j)     All spreadsheets, accounts, summaries, memos or other documents that show sales, revenue and profit for CHARLOTTE products for each month.

(k)     Sample specimens of each of the CHARLOTTE products.

(l)     All communications with your customers or sales representatives concerning CHARLOTTE products.

(m)     All documents which show confusion between CHARLOTTE products sold by GMA and CHARLOTTE products sold by any defendant.

Dated: New York, New York
       July 30, 2008

THE BOSTANY LAW FIRM
Attorneys for Plaintiff

By: _____
John P. Bostany, Esq.
40 Wall Street
New York, New York 10005
(212) 530-4400

- 2 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GMA ACCESSORIES, INC.,

                    Plaintiff,

                                                    **PLAINTIFF'S FIRST SET**
                                                    **OF INTERROGATORIES**

                                                    Civil Action No.:  07CV11527 (VM)

- against -

QUIKSILVER, INC., NORDSTROM, INC.,
SWELL, INC., and JILL STUART, INC.

                    Defendants,
-------------------------------------------------------------------X

        Plaintiff, GMA ACCESSORIES, INC., by its attorneys, The Bostany Law Firm, hereby

demands responses to the following interrogatories pursuant to Fed.R.Civ.P. 33:

                            **Definition:**

        "CHARLOTTE products" are defined as: merchandise with the word CHARLOTTE,

depicted on the product, product packaging, product marketing, promotion or advertisements.

        "You and Your": JILL STUART, INC., JILL STUART INTERNATIONAL, LTD and

JILL STUART INTERNATIONAL, LLC


        1.      Identify what searches were performed to discover existing use of the mark

CHARLOTTE before you starting selling CHARLOTTE products.

        2.      Set forth the date or dates of any and all searches for owners of or uses of the

mark CHARLOTTE before you starting selling CHARLOTTE products.

        3.      Identify all persons who selected the mark CHARLOTTE as used by you on

CHARLOTTE products.

        4.      Identify all those persons responsible for deciding to use the marks containing the

word CHARLOTTE on your products.

5.      Identify all marketers who have ever utilized the word CHARLOTTE while marketing or advertising your products.

6.      Identify all suppliers who have supplied CHARLOTTE products to you.

7.      Identify all promotions ever run utilizing the word CHARLOTTE while promoting a product.

8.      Identify all sources of CHARLOTTE products, of which you are aware.

9.      Identify all purchase orders, sales orders and invoices pertaining to CHARLOTTE products.

10.      Identify all brochures, websites and catalogues for CHARLOTTE products.

11.      Identify all lines and styles CHARLOTTE products.

12.      Set forth the date that you first became aware that GMA owned the mark CHARLOTTE and identify the person or persons making such discovery.

13.      With respect to each of your CHARLOTTE products:

    a.      Set forth the dollar volume of your sales on a monthly basis.

    b.      Set forth the dollar volume purchased by you on a monthly basis.

    c.      Set forth the dates of each purchase by you and the identity of the supplier for each such purchase.

    d.      Identify whether the product contained tags or labels including the word CHARLOTTE.

    e.      Identify all material associated with each such CHARLTOTE product (including but not limited to advertisements, sales receipts, catalogs, catalog sheets, promotions, brochures or websites).

    f.      Set forth the date of your first use in commerce of each such product.

14.      Identify who, if anyone introduced CHARLOTTE to you.

15.      Identify any third party users of the mark CHARLOTTE that have extensively promoted this mark or any mark similar thereto with respect to headgear and clothing.

16.      Set forth the dates that you received letters from counsel for defendant.

17.      Set forth the dates of all communications between you or your counsel and defendant prior to commencement of this action.

18.    Identify any and all sales representatives and/or distributors that have sold or offered for sale CHARLOTTE products

19.    Identify all of your customers of Charlotte products.

20.    Identify and describe any and all methods used by you or your agents to search for documents and information responsive to Plaintiff's discovery requests, including a description of how such methods were implemented.

21.    Describe the rationale for your chosen methods of searching for documents and information responsive to Plaintiff's discovery requests.

22.    Identify all persons, including their titles, and entities that searched at your request for documents and information responsive to Plaintiff's discovery requests.

23.    Identify and describe any computer software or other electronic processes used by you or third parties at your request to search for documents and information responsive to Plaintiff's discovery requests.

24.    Describe all steps taken to ensure that the methods for of searching for documents and information responsive to Plaintiff's discovery requests were reliable and properly effective.

Dated: New York, New York
       July 30, 2008

                              THE BOSTANY LAW FIRM
                              Attorneys for Plaintiff

                              By: _____
                              John P. Bostany
                              40 Wall Street
                              New York, New York 10005

Stephen W. Feingold
Mark S. Morgan
**DAY PITNEY LLP**
7 Times Square
New York, NY 10036-7311
Phone:  (212) 297-5800
*Attorneys for Defendants*
*Quiksilver, Inc., Nordstrom, Inc.*
*and Swell, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GMA ACCESSORIES, INC. | : |
| Plaintiff, | : |
| v. | : |
| QUIKSILVER, INC., NORDSTROM, INC., AND SWELL, INC., | : |
| Defendants. | : |

Case No.  07-CV-11527 (VM)

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR DOCUMENTS

Defendants Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell,

Inc. ("Swell"), (collectively, the "Defendants") hereby respond to the First Request for

Documents ("Requests") served by Plaintiff GMA Accessories, Inc. ("GMA" or "Plaintiff") as

follows:

## GENERAL OBJECTIONS

1.  Defendants object to these Requests to the extent that they seek documents protected by the attorney-client privilege, the work product doctrine, or other applicable privileges.

2.  Defendants object to these Requests to the extent that they seek documents that are not in the Defendants' possession, custody, or control.

3.  Defendants object to these Requests to the extent they seek documents that are publicly available.

4.  In providing specific responses to these Requests, the Defendants do not, in any way, waive or intend to waive, but rather intend to preserve and are preserving:

  a.  all objections to competency, relevance, materiality, and admissibility of the answers or subject matter thereof;

  b.  all objections to vagueness, ambiguity, or undue burdensomeness;

  c.  all rights to object to the use of said answers in any subsequent proceeding, including the trial of this or other actions; and

  d.  all rights to object on any grounds to any of these Requests or any other discovery requests involving or related to the subject matter of these Requests.

5.  Defendants object to these Requests to the extent that they seek documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

6.  Defendants object to these Requests to the extent that they are vague and ambiguous, or do not describe the information or documents sought with sufficient particularity.

7.  Defendants object to these Requests to the extent that they are overbroad and/or unduly burdensome.

-2-

8.  Defendants object to these Requests to the extent that they are not limited to a specific time frame or seek documents outside the scope of this litigation.

9.  Defendants object to these Requests to the extent that they require the disclosure of confidential and/or proprietary documents or information without an appropriate protective order entered by the Court.

10. Defendants object to these Requests to the extent that they attempt to impose obligations on the Defendants beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules, or other applicable authority.

11. The responses of the Defendants to these Requests are based solely on the information currently known to them, and they specifically reserve the right to supplement, amend, or modify their responses and objections.

12. Defendants' representations herein that they will make documents available for inspection in response to a particular Request does not indicate that the Defendants have determined that such documents exist and/or are in their possession, custody, or control.

## RESPONSES TO INDIVIDUAL REQUESTS

1.  All purchase orders, sales orders and invoices pertaining to CHARLOTTE products.

**RESPONSE:**  Defendants object to the scope of this Request because in its current form it seeks information from Defendants as to all orders, sales orders, and invoices pertaining to all CHARLOTTE products and is not limited to the Defendants' products.  Defendants further object to this Request on the grounds that it seeks confidential and/or proprietary information.  Without waiving these objections and the above General Objections, Defendants will make documents responsive to this Request available for inspection once an appropriate protective order is entered by the Court.

2.  Any and all documents that would indicate the approximate number of CHARLOTTE products purchased.

**RESPONSE:**  Defendants object to the scope of this Request because in its current form it seeks information from Defendants as to the total number of all CHARLOTTE products purchased and is not limited to the Defendants' products.  Defendants further object to this Request on the grounds that it seeks confidential and/or proprietary information.  In addition, Defendants object to this Request as being overly burdensome in that it calls for "any and all" documents which implicates too many documents for Defendants to review.  Without  waiving these objections and the above General Objections, Defendants will make documents responsive to this Request once an appropriate protective order is entered by the Court, to the extent that it will allow Plaintiff to determine the approximate number of Charlotte products purchased.

3. Any and all documents that would indicate the approximate number of CHARLOTTE products sold and your revenue.

**RESPONSE:**  Defendants object to this Request on the grounds that it seeks confidential and/or proprietary information.  In addition, Defendants object to this Request as being overly burdensome in that it calls for "any and all" documents which implicates too many documents for Defendants to review.  Without waiving these objections and the above General Objections, Defendants will make documents responsive to this Request available for inspection once an appropriate protective order is entered by the Court, to the extent that it will allow Plaintiff to determine the approximate number of Charlotte products sold by Defendants.

4. Any and all emails, memos, documents, records or writings of any kind reflecting or relating to the manufacture, marketing, sale, purchase, promoting, distributing or other disposition of CHARLOTTE products.

**RESPONSE:**  Defendants object to this Request on the grounds that it is overbroad and unduly burdensome.  Defendants further object to this Request to the extent it seeks documents protected by the attorney-client privilege and work product doctrine.  Defendants further object to this Request on the grounds that it seeks confidential and/or proprietary information.  Without waiving these objections and the above General Objections, Defendants will make documents responsive to this Request available for inspection.

5. All invoices received from your supplier including any and all purchase orders submitted by you or your supplier for purchase of CHARLOTTE products.

**RESPONSE:**  Defendants object to this Request on the grounds that it seeks confidential and/or proprietary information.  Without waiving this objection and the above General Objections,

Defendants will make documents responsive to this Request available for inspection once an appropriate protective order is entered by the Court.

6.  Originals or color copies of all brochures, websites, catalogs or advertisements depicting CHARLOTTE products.

**RESPONSE:**  Defendants object to the scope of this Request because in its current form it seeks information from Defendants as to all brochures, websites, catalogs or advertisement depicting CHARLOTTE products and is not limited to the Defendants' products.  Without waiving this objection and the above General Objections, Defendants will make documents responsive to this Request available for inspection.

7.  All documents that reveal how the CHARLOTTE and/or CHARLOTTE ROXY mark was selected and/or adopted.

**RESPONSE:**  Defendants object to this Request on the grounds that it is vague and ambiguous. Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege and the work product doctrine.  Defendants further object to this Request on the grounds that it seeks confidential and/or proprietary information.  Without waiving these objections and the above General Objections, Defendant Quiksilver will make documents responsive to this Request available for inspection once an appropriate confidentiality order is entered by the Court.  Defendant Nordstrom and Defendant Swell are not in the possession of any documents responsive to this Request.

8.  All documents that show your date of first use and first use in commerce of CHARLOTTE products.

**RESPONSE:**  Defendants object to this Request on the grounds that it is vague and ambiguous and overly broad and burdensome.   Without waiving this objection and the above General

-6-

Objections, Defendants will make documents responsive to this Request available for inspection that are sufficient to identify each Defendant's date of first use and, if different, first use in commerce, for products supplied by Quiksilver available for inspection .

9. All Documents that support your affirmative defenses.

**RESPONSE**: Defendants object to this Request to the extent it seeks information protected by the attorney-client privilege and the work product doctrine. Further, Defendants object to this Request to the extent that it is unlimited in scope and therefore is unduly burdensome. Without waiving this objection and the above General Objections, Defendants interpret this Request to be for all documents that provide material or substantial support for the affirmative defenses and will make such documents responsive to this Request available for inspection.

10. All spreadsheets, accounts, summaries, memos or other documents that show sales, revenue and profit for CHARLOTTE products for each month.

**RESPONSE**: Defendants object to the scope of this Request because in its current form it seeks sales information for all CHARLOTTE products and is not limited to the Defendants' products. Defendants further object to this Request on the grounds that it seeks confidential and/or proprietary information. Without waiving these objections and the above General Objections, Defendants will make documents responsive to this Request available for inspection once an appropriate confidentiality order is entered by the Court.

11. Sample specimens of each of the CHARLOTTE products.

**RESPONSE**: Without waiving the above General Objections, Defendants will make items responsive to this Request available for inspection.

12. All communications with QUIKSILVER customers or sales representatives concerning CHARLOTTE products.

**RESPONSE:**  Defendants object to this Request on the grounds that it is vague and ambiguous. Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.  Without waiving these objections and the above General Objections, Defendants will make documents responsive to this Request available for inspection.

Dated: May 12, 2008                    As to Objections:

                                       By:  s/ Stephen W. Feingold
                                             STEPHEN W. FEINGOLD

Stephen W. Feingold
Mark S. Morgan
**DAY PITNEY LLP**
7 Times Square
New York, NY 10036-7311
Phone: (212) 297-5800
*Attorneys for Defendants*
*Quiksilver, Inc., Nordstrom, Inc.*
*and Swell, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GMA ACCESSORIES, INC. | : |
| Plaintiff, | : |
| v. | :      Case No. 07-CV-11527 (VM) |
| QUIKSILVER, INC., NORDSTROM, INC., AND SWELL, INC., | : |
| Defendants. | : |

## <u>DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

Pursuant to Federal Rule of Civil Procedure 33, Defendants Quiksilver, Inc. ("Quiksilver"), Nordstrom, Inc. ("Nordstrom"), and Swell, Inc. ("Swell"), (collectively, the "Defendants") hereby respond to the First Set of Interrogatories ("Interrogatories") served by Plaintiff GMA Accessories, Inc. ("GMA" or "Plaintiff") as follows:

## GENERAL OBJECTIONS

1. Defendants object to the Interrogatories to the extent that they purport to impose obligations beyond those authorized or permitted by the Federal Rules of Civil Procedure, the Local Rules, or other applicable authority.

2. Defendants object to the Interrogatories to the extent that they seek disclosure of information protected from discovery by any privilege, including, without limitation, the attorney-client privilege and/or the work product doctrine. Any inadvertent disclosure of any information shall not constitute a waiver of any of the rights or privileges of the Defendants.

3. Defendants object to the Interrogatories to the extent that they call for the disclosure of confidential and/or proprietary business information that may include trade secrets, confidential research, development, commercial information or financial information, prior to the entry of a suitable protective order.

4. Defendants object to the Interrogatories to the extent that they purport to call for information that the Defendants are prohibited from disclosing by contract, order, statute, rule, regulation, or law.

5. Defendants object to the Interrogatories to the extent that they harass or seek to impose an undue burden on the Defendants.

6. Defendants object to the Interrogatories to the extent that they seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

7. Defendants object to the Interrogatories to the extent that they are not limited to a specific time frame or seek documents outside the scope of this litigation.

8.   Defendants object to the Interrogatories to the extent that they are vague, ambiguous, and incapable of response in their present form.

9.   Defendants object to the Interrogatories to the extent that they are overbroad and/or unduly burdensome.

10. Defendants' responses to the Interrogatories are based solely on the information currently available to them, and Defendants specifically reserve the right to supplement, amend, or modify their responses and objections.

11. In providing specific responses to these Requests, the Defendants do not, in any way, waive or intend to waive, but rather intend to preserve and are preserving:

    a.   all objections to competency, relevance, materiality, and admissibility of the answers or subject matter thereof;

    b.   all objections to vagueness, ambiguity, or undue burdensomeness;

    c.   all rights to object to the use of said answers in any subsequent proceeding, including the trial of this or other actions; and

    d.   all rights to object on any ground to any of these Interrogatories or any other discovery requests involving or related to the subject matter of these Interrogatories.

## RESPONSES TO INTERROGATORIES

1. Identify what searches were performed to discover existing use of the mark CHARLOTTE before you starting [sic] selling CHARLOTTE products.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and work product doctrine. Without waiving this objection and the above General Objections, Defendant Quiksilver states that no searches were performed prior to Quiksilver's production of the Roxy Charlotte hat or hoodie. Defendants Nordstrom and Swell have no knowledge responsive to this interrogatory.

2. Set forth the date or dates of any and all searches for owners of or uses of the mark CHARLOTTE before you starting [sic] selling CHARLOTTE products.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and work product doctrine. Without waiving this objection and the above General Objections, Defendant Quiksilver refers Plaintiff to its response to Interrogatory No. 1 as if set forth at length herein. Defendants Nordstrom and Swell have no knowledge responsive to this interrogatory.

3. Identify all persons who selected the mark CHARLOTTE as used by you on CHARLOTTE products.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it is vague and ambiguous as well as on the ground that the interrogatory as stated assumes that Defendants used the designation CHARLOTTE as a mark.. Without waiving this objection and the above General Objections, Defendant Quiksilver states that Quiksilver designer Margarette Butzen designed a hat and decided to use her friend's daughter name "Charlotte" as the product identifier in lieu of

a style number.   Defendants Nordstrom and Swell have no knowledge responsive to this interrogatory.

4.   Identify all those persons responsible for deciding to use the marks containing the word CHARLOTTE on your products.

**RESPONSE:**   Defendants object to this Interrogatory on the grounds that it is vague and ambiguous as well as on the ground that the interrogatory as stated assumes that Defendants used the designation CHARLOTTE as a mark..   Without waiving this objection and the above General Objections, Defendant Quiksilver states that Nancy Parash, Laurie Etheridge, Yolanda Castro, Tiffany Lane, Kim Remmer, and Debbie Hoppe may have information relevant to this Interrogatory.   Defendants Nordstrom and Swell have no knowledge related to the design and production of the Roxy Charlotte hat or hoodie.

5.   Identify all marketers who have ever utilized the word CHARLOTTE while marketing or advertising your products.

**RESPONSE:**   Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Defendants further object on the ground that the word "marketers" is vague and ambiguous and could, for instance, arguably refer to each sales person who ever made a sale for any product identified as Charlotte in lieu of a style number.   Defendants are prepared to respond to this interrogatory once it is better defined.

6.   Identify all suppliers who have supplied CHARLOTTE products to you.

**RESPONSE:**   Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.   Defendants further object to this Interrogatory on the grounds that it seeks confidential and/or proprietary information.   Finally, Defendants Nordstrom and Swell object on the ground that the name of other companies providing Charlotte products to them is beyond the

scope of this lawsuit and is not calculated to lead to the discovery of admissible information. Without waiving these objections and the above General Objections, Defendants Nordstrom and Swell state that Defendant Quiksilver supplied Roxy Charlotte products for sale to customers. Defendant Quiksilver has no information responsive to this interrogatory.

7.  Identify all promotions ever run utilizing the word CHARLOTTE while promoting a product.

**<u>RESPONSE</u>:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to this Interrogatory on the grounds that is seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of relevant or admissible evidence.  Defendants further object to the scope of this Interrogatory because in its current form it seeks information from the Defendants as to all promotions ever run utilizing the word CHARLOTTE and it is not limited to the Defendants' products.  Defendants also object to the interrogatory as vague and ambiguous because the term "promotions" in the retail industry is subject to multiple meanings ranging to specialized advertising programs such as sweepstakes or special discounts to any form of advertising relating to the sale of a product.  In other circumstances it can mean any form of publicity.  Apparently, on the assumption that Plaintiff did not ask repetitive and unnecessary interrogatories, by virtue of Plaintiff's inclusion of interrogatory No. 10 requesting Defendants to "identify all brochures, websites and catalogues for CHARLOTTE products", Plaintiff does not believe that those items are "promotions."   Therefore, Defendants are not able to respond at this time but are prepared to respond to this interrogatory when it is properly limited and defined.

8.  Identify all manufacturers who have manufactured CHARLOTTE products.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to the scope of this Interrogatory because in its current form it seeks information from the Defendants as to all manufactures who have ever manufactured CHARLOTTE products and it is not limited to the Defendants' products.  Without waiving these objections and the above General Objections, Defendant Quiksilver states that it manufactured the hat and hoodie identified as Charlotte in lieu of a style number.  Defendants Nordstrom and Swell have no independent knowledge with respect to the identity of the entities that manufactured the hat and hoodie.

9.  Identify all purchase orders, sales orders and invoices pertaining to CHARLOTTE products.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to this Interrogatory on grounds that it is vague and ambiguous.  Defendants further object to the scope of this Interrogatory because in its current form it seeks information from the Defendants as to all purchase orders, sales orders and invoices pertaining to CHARLOTTE products and it is not limited to the Defendants' products.  Defendants further object to this Interrogatory on the grounds that it seeks confidential and/or proprietary information.  Without waiving these objections and the above General Objections, Defendants refer Plaintiff to the documents Defendants will make available for inspection in response to Plaintiff's Request for Documents once an appropriate protective order is entered by the Court.

10. Identify all brochures, websites and catalogues for CHARLOTTE products.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to the scope of this Interrogatory because in its current form it seeks information from the Defendants as to all brochures, websites and catalogues for CHARLOTTE products and is not limited to the Defendants' products.  Without waiving these objections and the above General Objections:  Defendant Quiksilver states that it had no specific brochure, catalog or web site exclusively for any products identified as Charlotte in lieu of a style number.  Defendants Nordstrom and Swell also state that they are not aware of any brochures, web sites, or catalogs for exclusively Charlotte products.  To the extent that the term Charlotte appeared in brochures, web sites, and/or catalogs within the custody and control of Defendants, Defendants will make same available for inspection in response to Plaintiff's Request for Documents once an appropriate protective order is entered by the Court.

11. Identify all lines and styles CHARLOTTE products.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to this Interrogatory because in its current form it seeks information from the Defendants as to all lines and styles for CHARLOTTE products and it is not limited to the Defendants' products.  Without waiving these objections and the above General Objections, Defendant Quiksilver states that it produced a hat and hoodie with a UPC tag with the name Charlotte.  Defendants Nordstrom and Swell have no independent knowledge responsive to this interrogatory with respect to Quiksilver products.

12. Set forth the date that you first became aware that GMA owned the mark CHARLOTTE and identify the person or persons making such discovery.

**RESPONSE:** Without waiving the above General Objections, Defendants Quiksilver and Swell state that they first became aware that GMA allegedly owned the mark Charlotte when they received GMA's letter in August 2007. Defendant Nordstrom states that it first became aware that GMA owned the alleged Charlotte mark when this lawsuit was filed.

13. With respect to each of your CHARLOTTE products:

    a. Set forth the dollar volume of your sales on a monthly basis.

    b. Set forth the dollar volume purchased by you on a monthly basis.

    c. Set forth the dates of each purchase by you and the identity of the supplier for each such purchase.

    d. Identify whether the product contained tags or labels including the word CHARLOTTE.

    e. Identify all materials associated with each such CHARLOTTE product (including but not limited to advertisements, sales receipts, catalogs, catalog sheets, promotions, brochures or websites).

    f. Set forth the date of your first use in commerce of each such product.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Defendants further object to this Interrogatory on the grounds that it seeks confidential and/or proprietary information. Without waiving these objections and the above General Objections, Defendants refer Plaintiff to the documents Defendants will make available for inspection in response to Plaintiff's Request for Documents once an appropriate protective order is entered by the Court.

14. Identify who, if anyone introduced CHARLOTTE to you.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it vague and ambiguous.  Without waiving this objection and the above General Objections:  Defendant Quiksilver states that Quiksilver designer Margarette Butzen designed a hat and named it after her friend's daughter Charlotte; Defendant Nordstrom states that Nordstrom buyer, Jamie Bergman, and Nordstrom National Merchandising Manager for BP, Ashley Wainscott, introduced the Roxy Charlotte product to Nordstrom; and Defendant Swell states that Swell buyer, Jill Klein, introduced the Roxy Charlotte product to Swell.

15. Identify any third party users of the mark CHARLOTTE that have extensively promoted this mark or any mark similar thereto with respect to headgear and clothing.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  Defendants further object to this Interrogatory on the grounds that it is vague and ambiguous.  Defendants further object to this Interrogatory on the grounds that is seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of relevant or admissible evidence.  Without waiving these objections and the above General Objections, Defendants state that they are not presently aware of any third party users of the mark CHARLOTTE.  Defendants are continuing to investigate third party use and will make the results available to Plaintiff as required by the Federal Rules.

16. Set forth the dates that you received letters from counsel for defendant.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is vague and ambiguous.  Defendants further object to this Interrogatory on the grounds that it seeks

information protected by the attorney-client privilege and the work product doctrine. In its current form this Interrogatory does not appear to be directed at the Defendants.

17. Set forth the dates of all communications between you or your counsel and defendant prior to commencement of this action.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it is vague and ambiguous. Defendants further object to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Specifically, this Interrogatory does not limit the subject matter of the communication between the Defendants and their counsel. Defendants further object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. Finally, Defendants object on the ground that this interrogatory seeks information protected by a Joint Defense Privilege.

18. Identify any and all sales representatives and/or distributors that have sold or offered for sale CHARLOTTE products.

**RESPONSE:** Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Defendants further object to the scope of this Interrogatory because in its current form it seeks information from the Defendants as to all sales representatives and distributors who have ever sold or offered to sell CHARLOTTE products and it is not limited to the Defendants' products. Taken literally it would require the production of every sales clerk who worked in any of Defendants' stores. Without waiving these objections and the above General Objections: Defendant Quiksilver identifies Quiksilver buyers, Kim Remmer and Tiffany Lane. Defendants Nordstrom and Swell note that they do not sell this product except to consumers and therefore do not believe that this Interrogatory seeks information from them. However, Nordstrom identifies Nordstrom buyer, Jamie Bergman, and Nordstrom National

Merchandising Manager for BP, Ashley Wainscott; and Defendant Swell identifies Swell buyer, Jill Klein as the persons who selected the Charlotte product from Quiksilver.

19. Identify all of your customers of Charlotte products.

**RESPONSE:**  Defendants object to this Interrogatory on the grounds that it is overbroad and unduly burdensome.  This Interrogatory is also vague and ambiguous in that taken literally it would require the identification of each person who purchased a Charlotte product from any of the Defendants.  Without waiving this objection and the above General Objections, Defendants refer Plaintiff to the documents Defendants will make available for inspection in response to Plaintiff's Request for Documents once an appropriate protective order is entered by the Court.

Dated:  May 12, 2008                              As to Objections:

                                                                By:  s/ Stephen W. Feingold
                                                                        STEPHEN W. FEINGOLD

**Dan Levy**

| | |
|---|---|
| **From:** | Dan Levy |
| **Sent:** | Friday, June 13, 2008 9:44 AM |
| **To:** | Feingold, Stephen |
| **Cc:** | Kayal, Justin M.; Ron Paltrowitz; John Bostany; Dan Levy; Morgan, Mark |
| **Subject:** | RE: Defendants Responses to Written Discovery Requests |

Steve:

Thank you for confirming that you are working with your clients and constructing checklists of what is responsive to our document requests; when can I expect to receive them? I also appreciate the fact that you are evaluating the specific shortcomings regarding Interrogatory 13, and I look forward to your response. When can I expect it?

With respect to Swell documents regarding *Charlotte* products manufactured by Quicksilver – documents that we both agree to be discoverable – you only responded with the second half of June, 2007. Where is the rest?

Thanks,

Dan Levy

**From:** Feingold, Stephen [mailto:SFeingold@daypitney.com]
**Sent:** Sunday, June 08, 2008 9:42 PM
**To:** Dan Levy; Morgan, Mark
**Cc:** Kayal, Justin M.; Ron Paltrowitz; John Bostany
**Subject:** RE: Defendants Responses to Written Discovery Requests

Dan,

I wanted to acknowledge your email and advise you that we have been working with Quiksilver with respect to providing you with an checklist of where you can expect further information. We are also working with Nordstrom and Swell on this same issue limited to Quiksilver products. As we explained to you last Tuesday, our representation of Nordstrom and Swell is limited to Quiksilver products.

Please note that your email on Friday is the first specific reference made by GMA to any specific shortcoming with respect to Interrogatory No. 13. We will therefore look into this issue and get back to you this next week with an indication of where we stand on this specific interrogatory on behalf of Quiksilver.

With respect to the references to Roxy Carlotta and Roxy Charlie in the documents produced to date, those references are very relevant to this case because they indicate Quiksilver's efforts to retag the products previously bearing Charlotte in lieu of a stock number with a replacement. It is my understanding that the appearance of those "stock ids" would signal the end of any arguable use of the Charlotte "trademark." Therefore, this information is highly relevant. Based on my current understanding it would therefore be consistent if for certain periods there were only sales of these alternate product ids and not product bearing "Charlotte.

With respect to the demand for additional discovery in this case from Nordstrom and/or Swell, please bear in mind that your first complaint in this case spoke exclusively about Quiksilver products. When it was enlarged to include two retailers the allegations made several references to a conspiracy between these retailers and Quiksilver with respect to infringing GMA's "mark." It therefore appeared to us that this Complaint was focused on Quiksilver and its customers. On that basis we were retained by Nordstrom and Swell.

Now that it has become clear that you are taking a different perspective that raises many new issues for these retailers that they must consider and which are far beyond the scope of our representation of them. Therefore, as a practical matter you are going to have to wait until you speak to the new counsel for Nordstrom and Swell with respect to most of your discovery demands. Moreover, while I am sure you understand this without it being said, for the record I feel obliged to state that in no way is this email a concession on the part of Swell or Nordstrom that it is proper for GMA to expand this case in the manner it apparently desires. I make this statement not because of any knowledge on my part as to what new counsel for Swell or Nordstrom's are going to assert about this issue; I merely want to be sure that we do not limit the ability of new counsel to assert whatever position they deem appropriate.

We will be in touch later this week with a further report but, in the meantime, I trust that this information is useful in explaining our perspective about this case.

Very truly yours,

Stephen W. Feingold
Chair
Trademark, Copyright, Advertising & Internet Group
Day Pitney LLP
7 Times Square
New York, NY 10036
(212) 297-5845 (Office)
(212) 916-2940 (Fax)

Stephen W. Feingold
Chair
Trademark, Copyright, Advertising & Internet Group
Day Pitney LLP
7 Times Square
New York, NY 10036
(212) 297-5845 (Office)
(212) 916-2940 (Fax)

-----Original Message-----
**From:** Dan Levy [mailto:dan.levy@bozlaw.com]
**Sent:** Friday, June 06, 2008 5:46 PM
**To:** Morgan, Mark; Feingold, Stephen
**Cc:** Kayal, Justin M.; Ron Paltrowitz; John Bostany; Dan Levy
**Subject:** RE: Defendants Responses to Written Discovery Requests

Steve and Mark:

I have yet to receive from you the supplemental production or even a date by which I can expect it. Again we do not have any documents yet and the requests were served months ago....even the spreadsheet you provided is unhelpful because it only applies to certain periods of time and specifies that it does not include all CHARLOTTE products...

For example, Swell's spreadsheet relates to products known as Roxy Carlotta and Roxy Charlie, but not the Charlotte products that are the basis of the litigation. Given the similarity of the names, I am sure that you did not purposefully provide us with misleading and non responsive documents.

I would also like to point out that our Interrogatory 13 requests that you set forth your dollar volume of purchases and sales of Charlotte products on a monthly basis. Your production does not answer this interrogatory to any extent regarding Swell. Further, the Nordstrom production does not completely answer this question because the production is incomplete. Specifically, the production does not address any of the hats that were sold in retail stores, nor does it reflect any of the hoodies sold via internet sales. In fact, the documents only reflect internet sales for a 2 week period. Moreover, the documents only address retail store sales at 15 locations and many of the other documents are difficult to interpret due to the unidentified coding methods.

To cure this problem, please email us with a spreadsheet that itemizes dollar volume of purchases and sales of Charlotte products on a monthly basis as requested in Interrogatory 13 on or before Wednesday, June 11 and please provide your document production by Friday June 13. We have been extremely patient and have been attempting in good faith for some time now to persuade you to comply with our requests but we cannot wait any longer and I hope that you understand.

Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Friday, May 30, 2008 5:52 PM
**To:** 'Morgan, Mark'; 'Feingold, Stephen'
**Cc:** 'Kayal, Justin M.'; Ron Paltrowitz; John Bostany; Dan Levy
**Subject:** RE: Defendants Responses to Written Discovery Requests

Mark:

I just left you a voicemail concerning the below correspondence. I realize that Steve is out of the office until Monday, and I trust you will bring this to his attention when he gets back.

Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Friday, May 30, 2008 10:27 AM
**To:** Morgan, Mark; Feingold, Stephen
**Cc:** Kayal, Justin M.; Ron Paltrowitz; John Bostany; Dan Levy
**Subject:** RE: Defendants Responses to Written Discovery Requests

Please note that we only received sales and inventory summaries.

## Dan Levy

| | |
|---|---|
| **From:** | Dan Levy |
| **Sent:** | Tuesday, June 24, 2008 3:20 PM |
| **To:** | Kayal, Justin M.; Feingold, Stephen; Morgan, Mark |
| **Cc:** | Brown, Richard; John Bostany; Ron Paltrowitz; Dan Levy |
| **Subject:** | RE: GMA v. Quiksilver et al. |

Gentleman:

We reviewed your lengthy and detailed email and I am taking this opportunity to reply.

First, the Court has ruled that while Nordstrom and Swell may have as many attorney's as they want, there must be one responsible firm. Until, we hear otherwise, that is Day Pitney.

Regarding your assertion that a meet and confer did not take place, I must disagree with you. We do not need to meet and confer regarding the number of attorneys that the defendants wish to retain, as this issue is not in dispute and Judge Marrero already resolved it. As stated earlier, the adequacy of the production is in dispute and I believe that we already conferred on this issue during our June 3 telephone conference, to which I followed up on numerous occasions in correspondence.

Thank you for finally confirming that Swell maintains its records regarding the purchase and sale of Charlotte products in electronic form. This being the case, Swell is not absolved of its duties to produce them simply because "there are no hard copy invoices." I am sure you will agree that these documents *are* discoverable, and since Swell is withholding them, Swell's production is incomplete. Moreover, are you representing that Swell only bought and sold Charlotte products during a 2 week period? Even the summaries address only the second half of June, 2007.

Regarding GMA's concerns about Quicksilver's production, the plain and simple fact is that there has essentially been no production to any extent, with the exception of a spreadsheet summarizing the sales of the hats and hoodies; you seem to recognize this deficiency in your email. Further, it is not a mischaracterization that the production consisted of a single spreadsheet; all that was produced was a spreadsheet summarizing sales, and the fact that the spreadsheet was 57 pages long does not abrogate this fact.

We appreciate the fact that you keep confirming and reconfirming that you are working with your clients (apparently for almost 3 months now), yet the truth of the matter is that we have been very patient with you and you have only now represented that, in regard to *Quicksilver only*, additional documents will be produced. I look forward to receiving your timetable for your additional production of documents, which you agreed to provide by today.

Regarding your objection to our Interrogatory 13, you are not permitted under the Rules to raise this objection at this time and the objection is waived.

Quicksilver, Nordstrom and Swell were provided ample time to include their opposition to GMA's request to compel discovery within the joint letter. As it appears at this point that Quicksilver, Nordstrom and Swell have not added any material to the joint letter, we will assume that you have nothing to include.

Thanks,

Dan Levy

---

**From:** Kayal, Justin M. [mailto:jkayal@daypitney.com]
**Sent:** Thursday, June 19, 2008 9:28 PM
**To:** Dan Levy
**Cc:** Feingold, Stephen; Brown, Richard; Morgan, Mark

# THE BOSTANY LAW FIRM

40 WALL STREET

61ST FLOOR

NEW YORK, NEW YORK 10005-1304

TEL: 212-530-4400

FAX: 212-530-4488

NEW JERSEY OFFICE

ONE GATEWAY CENTER
NEWARK, NJ 07102

July 25, 2008

*VIA EMAIL AND REGULAR MAIL*

Stephen Feingold, Esq.
Day Pitney LLP
7 Times Square
New York, NY 10036

Re:     *GMA v. Quiksilver, Inc., et al.*
        Docket No.: 07 CV 11527 (VM)

Dear Mr. Feingold:

In anticipation of our conference with Judge Ellis, please accept this letter as a confirmation of specific areas of discovery in which Quiksilver is presently deficient, aside from, of course, your refusal to comply with our June 23 deposition notices.

Quiksilver is still deficient in its document production because it continues to withhold documents that are the subject of GMA's April 9 Document Requests. Specifically, the following Requests are unsatisfied:

(a)     All purchase orders, sales orders and invoices pertaining to CHARLOTTE products.
(c)     Any and all documents that would indicate the approximate number of CHARLOTTE products sold and your revenue.
(d)     Any and all emails, memos, documents, records, or writings of any kind reflecting or relating to the manufacture, marketing, sale, purchase, promoting, distributing or other disposition of CHARLOTTE products.
(f)     Originals or color copies of all brochures, websites, catalogs or advertisements depicting CHARLOTTE products.
(i)     All Documents that support your affirmative defenses.
(j)     All spreadsheets, accounts, summaries, memos or other documents that show sales, revenue and profit for CHARLOTTE products for each month.
(k)     Sample specimens of each of the CHARLOTTE products.
(l)     All communications with QUICKSILVER customers or sales representatives concerning CHARLOTTE products

Given the unwarranted brevity of Quiksilver's production, it is clear that Quiksilver is withholding large amounts of documents. No documents have been produced that evidence Quicksilver's customers ordering and purchasing of Charlotte products. Almost no documents were produced that contained communications regarding Charlotte products (note that you stated during a phone conversation that you did not feel that Quiksilver needed to bother going through its archived emails). Most troubling is the fact that Quiksilver's production is limited to two specific Charlotte products despite the fact that I am presently aware of at least *six* Charlotte products manufactured by Quiksilver (i.e. hat, hoodie, watch, shorts, tank top, and thermal top).

The last we spoke, you stated that Quiksilver was still looking into the issue regarding which documents could be produced from its electronic purchasing and shipping system. You also stated that Quiksilver was still dealing with the issue regarding its difficulty in determining whether or not it manufactured other Charlotte products. Another month has passed and we have received no additional documents in this regard. Is Quiksilver still experiencing "technical difficulties"? Is Day Pitney specifically withholding documents regarding the many other Charlotte products that Quiksilver manufactures?

Moreover, in responding to GMA's April 9 Interrogatories, Quiksilver answered by referring GMA to Quiksilver's then anticipated substantial document production. As stated above, this production is woefully deficient. The following Interrogatories remain unanswered or only partially answered:

9.      Identify all purchase orders, sales orders and invoices pertaining to CHARLOTTE products.

10.     Identify all brochures, websites and catalogues for CHARLOTTE products.

11.     Identify all lines and styles CHARLOTTE products.

13.     With respect to each of your CHARLOTTE products: Set forth the dollar volume of your sales on a monthly basis; Set forth the dollar volume purchased by you on a monthly basis; Set forth the dates of each purchase by you and the identity of the supplier for each such purchase; Identify whether the product contained tags or labels including the word CHARLOTTE; Identify all material associated with each such CHARLTOTE product (including but not limited to advertisements, sales receipts, catalogs, catalog sheets, promotions, brochures or websites); Set forth the date of your first use in commerce of each such product.

18.     Identify any and all sales representatives and/or distributors that have sold or offered for sale CHARLOTTE products

19.     Identify all of your customers of CHARLOTTE products.

Very truly yours,

Daniel A. Levy

# THE BOSTANY LAW FIRM

40 WALL STREET

61ST FLOOR

NEW YORK, NEW YORK 10005-1304

TEL: 212-530-4400

FAX: 212-530-4488

NEW JERSEY OFFICE

ONE GATEWAY CENTER
NEWARK, NJ 07102

July 28, 2008

Hon. Ronald L. Ellis
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street – Room 1970
New York, New York 10007

Re:   *GMA v. Quiksilver, Inc., et al.*
      07 CV 11527 (VM) (RLE)

Your Honor:

I represent the plaintiff in this trademark infringement case involving the CHARLOTTE mark, which was to Your Honor for pre-trial by Hon. Victor Marrero.  In anticipation of our conference before Your Honor on Tuesday, July 29, please accept this letter as an update of the current discovery status.

It is with great relief that I am able to inform Your Honor that the defendants have now complied with the directive contained in Judge Marrero's June 18 Order, specifically the issue of multiple representation of the retailer defendants, as each defendant is now represented by one specific firm.

### *Deficiencies Regarding Defendants' Discovery Responses*

Defendants still refuse to produce certain documents requested in GMA ACCESSORIES, INC.'S ("GMA") April 9 document requests.  Moreover, the defendants have not sufficiently answered GMA's April 9 requests for interrogatories.

The defendants are of the view that plaintiff cannot obtain discovery from the retailers unless the manufacturer is also named in the case, i.e., they need not address any CHARLOTTE items unless those items were manufactured by the only 2 suppliers in this case, QUIKSILVER

1

and/or JILL STUART.  NORDSTROM argues that discovery is not designed to determine whether or not a claim exists.  However, counsel overlooks the fact that a claim exists insofar as NORDSTROM is accused of infringing on CHARLOTTE and it is the *extent* of the violation that Plaintiff seeks here.  It is respectfully submitted that Rule 36 requires disclosure of product information from all suppliers, and not just the named suppliers.

QUIKSILVER has yet to provide their purchase orders, sales orders and invoices for any of their products and have only given us a spreadsheet for two CHARLOTTE products when there are at least four other CHARLOTTE products made by QUIKSILVER.

### *Defendants' Rule 26 Disclosures*

The defendants assert in the initial disclosures on their counterclaims at Section B(2), "documents filed in connection with GMA's numerous litigations before the Federal Courts and the Trademark Trial and Appeal Board regarding 'Charlotte.'"  *See* **Exhibit A**.  Pursuant to Fed.R.Civ.P. 26(a)(1)(A)(ii), the defendants, in the least, must give a "description by category and location" of any documents.  Referring to all documents that may be located at *any* federal court or agency "regarding 'Charlotte'" does not satisfy the rule.  We brought this deficiency to QUIKSILVER's attention moments after receiving the Report, but they declined to cure the deficiency.  *See* **Exhibit B**.

### *QUIKSILVER's Default of its Rule 30(b)(6) Obligations*

This defendant has also defaulted on its obligations pursuant to Rule 30(b)(6).  *See* 30(b)(6) Notice dated June 23, 2008, attached as **Exhibit C**.  The deposition was supposed to occur on July 17, but we requested a more convenient date from QUIKSILVER.  QUIKSILVER to date has failed to provide dates despite our good faith efforts.  *See e.g.* **Exhibit D**.

### *QUIKSILVER's Refusal to Contribute Towards Copying Costs*

On June 23, we offered GMA's documents to the defendants.  They sought to inspect on July 2; after we agreed to accommodate that inspection, defense counsel canceled.  On July 10, 2008, and on July 16, 2008, we delivered on CD approximately 4,000 and 21,000 pages of GMA's documents, respectively.  We requested $0.05 per page towards copying costs, but defense counsel refused, even though their vendor would have charged them four times that amount.  They argue that because GMA's attorneys already spent the money putting the documents in electronic form during a different litigation, Day Pitney should receive these documents for free and should not pay anything.

*Deposition of Plaintiff's Counsel*

The defendants attempted service of a Notice of Deposition upon the plaintiff's counsel. This notice was defective insofar as defense counsel failed to include a date and time for the deposition, which violates Rule 30(b)(1). More importantly, the deposition of a plaintiff's attorney in the middle of litigation is an extreme step, which is not warranted in this situation.

"Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Patsy's Italian Restaurant, Inc. v. Banas*, 2007 WL 174131 at *2 (E.D.N.Y.). "The law on this issue seems to be moving toward a position where courts generally will permit the deposition of opposing counsel only upon a showing of substantial need and only after alternate discovery avenues have been exhausted or proven impractical." *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 593 (N.D.N.Y. 1989). In fact, Judge Sweet held in 2004 that when the same attorney prosecutes an application with the USPTO and also serves as counsel in litigation related to that application, the deposition of said counsel is limited to cases where the attorney's personal mental impressions are "crucial" and "directly at issue". *See Resqnet.Com, Inc. v. Lansa, Inc.*, 2004 WL 1627170 at *6 (S.D.N.Y.).

The counterclaims in this action are without merit, and they are currently the subject of a Motion to Dismiss, which is still *sub judice*. Defense counsel, on the other hand, basis its request to depose plaintiff's counsel on these meritless counterclaims, asserting that because plaintiff's counsel filed the registration documents regarding the trademarks that are the subject of this lawsuit, and because defense counsel asserts – without *a scintilla of evidence* – that those documents were fraudulent, plaintiff's counsel is a "witness" in this case.

The counterclaim of "trademark misuse" has never before recognized as a claim. *See e.g. Ford Motor Co. v. Obsolete Ford Parts, Inc.*, 318 F.Supp.2d 516, 521 (E.D. Michigan 2004) ("the court declines to announce or create an independent cause of action for trademark misuse"); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 830 (E.D. Virginia 2001) ("plaintiff concedes that trademark misuse is only an affirmative defense, not an independent cause of action"); *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208 (M.D. Florida 2005) ("no authority in the Eleventh Circuit or elsewhere allowing trademark misuse as an independent unfair competition cause of action").

The fraud claims are also tragically defective for numerous reasons each of which would defeat the claim. "Rule 9(b) requires that each allegedly fraudulent statement be identified with particularity, and that specific reference be made to the time, location, content and speaker of each statement. In addition, the party alleging fraud must specify in what respects each of the statements were false and misleading, and the factual basis for believing the defendant acted fraudulently and was responsible." *Great Lakes Mink Ass'n v. Furrari, Inc.*, 1987 WL 33592 (S.D.N.Y. 1987) (citing cases). *Kash 'N Gold, Ltd. v. Samhill Corp.*, 1990 WL 196089 (S.D.N.Y. 1990). *See also, GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 243 (S.D.N.Y. 2000) (there was be damages alleged by the fraud and those damages must be a direct and proximate result); *King Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138 (S.D.

Tex. 1982) (after alleging the fraud with particularity defendant must then prove that trademark applicant itself believed that other's rights were superior and concealed those rights).

It is respectfully submitted that the CHARLOTTE mark is a strong mark entitled to broad muscular protection under the Lanham Act as Judge Swain found in GMA v. BOP, 507 F.Supp.2d 361 (S.D.N.Y 2007).  See also, Nabisco, Inc. v. PE Brands, Inc., 191 F.3d 208, 216 (2d Cir. 1999) ("when a word is applied in an unfamiliar way, it is deemed arbitrary").  Id.  There should be "no logical relationship whatsoever between the mark and the product on which it is used."  Id.; Lane Capital Management, Inc. v. Lane Capital Management, Inc., 15 F.Supp.2d 389 (S.D.N.Y. 1998).  For example, Dana is an arbitrary mark in part because no individual named "Dana" was associated with the company. Satinine v. Les Parfums de Dana, Inc., 1984 WL 830 at * 5 (S.D.N.Y. 1984). See also, Charles of the Ritz Group Ltd. V. Quality King Distributors, Inc., 832 F.2d 1317, 1321 (2d Cir. 1987) ("Opium" as applied to perfume is arbitrary). Accordingly, we respectfully request that the deposition be disallowed.

*Advancing Travel Costs for Depositions*

We stipulated with NORDSTROM to depositions in Seattle on August 13, subject to GMA's reimbursement under Local Rule 30.1, a copy of which is attached as **Exhibit E.** QUIKSILVER demands that its deposition be held in California, yet defense counsel will not give us dates to depose QUIKSILVER's witnesses, even in California.

NORDSTROM is a huge, publically traded company with a market cap of over $6.3 billion and QUIKSILVER is a large publically traded company as well with a market cap of $1 billion. *See Sugarhill Records, Ltd.*, 105 F.R.D. at 171 (S.D.N.Y. 1985) ("Motown is a large corporation and cannot seriously contend that travel on behalf of the corporation by one of its managing agents is unexpected or that such travel to New York for deposition imposes a severe burden on it.").

Local Civil Rule 30.1, allows the Court to direct travel expenses to be borne by the out of state corporation. *See e.g. Sugarhill Records, Ltd.,* 105 F.R.D. at 171 (defendants given choice of either paying for plaintiff's costs or proceeding in New York).  Wherefore, we respectfully request an Order requiring the defendants to bear the plaintiff's costs for the out of state depositions, pursuant to Local Rule 30.1.

Respectfully,

John P. Bostany

cc:    Stephen Feingold, Esq. (via fax)
       Mark Rosenberg, Esq. (via fax)
       Dwight Yellen, Esq. (via fax)

# DAY PITNEY LLP

BOSTON    CONNECTICUT    NEW JERSEY    NEW YORK    WASHINGTON, DC

**BARRY M. BENJAMIN**
Attorney At Law

7 Times Square
New York, NY  10036
T: (212) 297 5835 F: (212) 916 2940
BBENJAMIN@daypitney.com

July 31, 2008

**VIA E-MAIL**

Dan Levy, Esq.
The Bostany Law Firm
40 Wall Street, 61st Floor
New York, NY  10005-1304

      Re:    GMA Accessories, Inc. v. Quiksilver, Inc. et al. (07 CV 11527 (VM))
                Client-Matter No. 404554.121860

Dear Mr. Levy:

We are in receipt of your July 29, 2008 letter.  In it, you mischaracterize some dates, but do correctly confirm others.  What follows is our understanding of the timeline, dates and requirements set by Magistrate Ellis.

    1.    August 4:  Quiksilver to provide a progress report to the Court regarding dates for 30(b)(6) witness deposition dates.

    2.    August 4:  GMA to provide dates for the depositions of GMA witnesses other than John Bostany (Altirs, Maloof).

    3.    August 6:  Quiksilver to provide a report to the Court whether any it produced any products in Class 25 other than hats and hoodies since 2005, along with dates by which Quiksilver can produce documents concerning such products.

    4.    August 13:  Quiksilver to submit the following documents to the Court:  (a) declarations regarding the difficulties in producing documents and identifying other Charlotte tagged items; (b)  declarations regarding the difficulties in producing purchase orders and invoices, along with legal argument as to why the documents Quiksilver can produce is sufficient; (c) letter brief regarding rationale for GMA to bear its own burden in traveling to depositions; (d) letter brief regarding rationale for GMA to bear its own document production costs; and (e) letter brief regarding rationale for deposing John Bostany as a witness.

    5.    August 13:  It is also our understanding that Nordstrom is to provide arguments on why this matter should be limited to Quiksilver and Jill Stuart products.

**DAY PITNEY** LLP

Dan Levy, Esq.
July 31, 2008
Page 2

      6.     August 15 (the Judge actually used the phrase "Mid-August"): Quiksilver to provide dates for eight 30(b)(6) witness depositions, preferably two days back to back.

<u>Rule 26 Initial Disclosures</u>

We are working through identifying documents that are responsive to the counterclaims. Because GMA has instituted so many litigations regarding the Charlotte mark, it is difficult at this time, prior to any depositions and full discovery, to specify the documents we plan to use at trial. When we do provide you with the documents, we will of course reserve the right to supplement production, especially in light of the fact that copies of all of the documents we would be producing are within the possession and control of GMA. We plan on identifying certain documents, pursuant to the initial disclosure obligations of Rule 26, by August 8.

<u>Plaintiff's Disclosures</u>

As we discussed at the Meet and Confer on Monday, July 28, you asserted a number of baseless objections to Defendant's discovery demands. In response to our inquiries, you withdrew your objections. Please provide the date by which we can expect to receive your revised written responses, in which you provide the appropriate responses which do not contain the baseless objections.

<u>Nordstrom Depositions</u>

We plan on appearing by telephone. Please advise immediately if you have any objection to that.

<u>Sanei Charlotte Ronson subpoena</u>

Thank you for withdrawing the baseless objection to production.

Sincerely yours,

Barry M. Benjamin

BMB/ler

cc:    Mark J. Rosenberg, Esq. (via email)
       Dwight Yellen, Esq. (via email)
       Stephen W. Feingold, Esq. (via email)

## Dan Levy

| | |
|---|---|
| **From:** | Dan Levy |
| **Sent:** | Tuesday, July 22, 2008 10:54 AM |
| **To:** | 'Feingold, Stephen' |
| **Cc:** | 'Benjamin, Barry'; 'Morgan, Mark'; 'Kayal, Justin M.'; John Bostany; Dan Levy |
| **Subject:** | RE: 30b6 depositions |

Steve:

Directly in response to your July 2 email, I called Barry about the depositions and he failed to provide me with the names or the availability of the witnesses. For some reason, he kept insisting that I first need to commit myself to a set number of depositions per day **prior** to Day Pitney revealing the witness availability. All of this is confirmed in my July 3 email, which was promptly ignored by Day Pitney; I followed up on this on July 7. I called Justin Kayal on July 9 who also refused to identify the number of witnesses, their topics, or their availability.

Since no one at Day Pitney seemed to be able to work with me regarding this issue, I called and emailed you again on July 9. I left you another voicemail and followed up via email, again, on July 10. As you know, rather than respond meaningfully to my questions from July 2, you had Barry engage in a ridiculous game of phone/email tag wherein Barry left me multiple condescending voice and email messages, which completely dodged the issue of Quiksilver's 30b6 depositions.

On July 11 we still had not received *any* meaningful response to Quiksilver's 30b6 notices, and my email from that day again pleaded with Day Pitney to provide us with the dates of "the availability of witnesses *if different from the date in the [30b6] notice*." Day Pitney promptly ignored this issue, to this day has not proposed new deposition dates, and "no showed" at the depositions. Yesterday, we did not write to the Court reporting your conduct but instead again in good faith sought cooperation from your firm. Rather than seek to cure your violations, you angrily responded that your failure to both show up for depositions and provide new dates is not a default.

With regard to your request to change the deposition location, although it is too late for that, as a further gesture of good faith we will consent to your proposed venue with a reservation of our rights to seek advanced costs under Local Rule 30.1 – but we must agree on dates and have a stipulation signed forthwith.

Thanks,

Dan Levy

---

**From:** Dan Levy
**Sent:** Monday, July 21, 2008 7:37 PM
**To:** Benjamin, Barry
**Cc:** Feingold, Stephen; Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: 30b6 depositions

Barry:

When I called and simply asked for the availability of Quiksilver's 30b6 witnesses, I was very surprised that rather than answer my inquiry, you became unreceptive and antagonistic. When I pointed out the obvious conclusion that Day Pitney is "holding out" on its obligations pending resolution of other matters, you became hostile with me and abruptly hung up the phone.

Notwithstanding the above, you did advise that you do not have the availability of Quiksilver's witnesses and that you could not give me any sort of time frame in this regard. This has been your position for weeks now. I am sorry that you are offended by my calling your refusal to show up for noticed depositions under Rule 30 along with your refusal to reschedule, to be a default; what would you call it? Is my continuous attempt to obtain new dates

from you offensive in some manner?

Yes, you should contribute to the copying costs of the documents that were copied and saved by our law firm at great cost to GMA. You took the documents but you have not contributed a penny toward the cost and that is not fair and dishonest.


Thanks,

Dan Levy

---

**From:** Benjamin, Barry [mailto:BBenjamin@daypitney.com]
**Sent:** Monday, July 21, 2008 6:53 PM
**To:** Dan Levy; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany
**Subject:** RE: Rule 26a1 disclosures

Dan -

We just got off the telephone. It is 6:30 p.m. It is clear that all future communications must be in writing, because you clearly have no interest whatsoever in having courteous and respectful communications over the phone. You continue to attempt to twist my words and put words in my mouth, which fails utterly to indicate a scintilla of good faith on your part. With respect to the depositions, your attempt below to indicate that we "defaulted" in appearing at the depositions is just one, small example of the types of bombastic, silly positions you have taken during discovery, yet it speaks volumes about your modus operandi.

As I said on the telephone, we are putting together a significant list of discovery deficiencies on your part. We will provide you with this list shortly. As I said on the phone, we hope to hash out all of the discovery deficiencies this week, prior to the conference with the Magistrate. In light of your conduct so far during the discovery process, as I indicated, I find it doubtful that we will resolve all of the disputed issues without input from the Magistrate. As I always do, and as we are obligated by the Federal Rules, we intend to operate in good faith and resolve as much as we can without judicial intervention. We hope you act in accordance with those obligations as well, but alas, in light of such actions such as your baseless money grab for payment for document production, your last minute document production on CD-ROM the moment before on-site inspection was scheduled, etc., we do not hold out much hope. But yet, hope does spring eternal in some quarters.

We look forward to working out the discovery disputes in a good faith manner.

Barry


Barry M. Benjamin
Attorney at Law
Day Pitney LLP
7 Times Square | New York NY 10036-7311 | *t* (212) 297-5835 | *f* (212) 916-2940
bbenjamin@daypitney.com | www.daypitney.com | *m* (917) 560-1094
****************************************************************************
IRS Circular 230 Notice: Any tax advice provided herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed on any taxpayer.
****************************************************************************


        -----Original Message-----
        **From:** Dan Levy [mailto:dan.levy@bozlaw.com]

**Sent:** Monday, July 21, 2008 5:58 PM
**To:** Benjamin, Barry; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Gentleman:

This is to confirm that none of your witnesses appeared at the 30b6 deposition of Quiksilver, which was to take place on July 17 according to the notice.  I invited you to select new dates with me, but you decided to default instead.  Are you at all interested in resolving this dispute?


Thanks,

Dan Levy

---

**From:** Dan Levy
**Sent:** Friday, July 11, 2008 3:42 PM
**To:** Benjamin, Barry; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Gentleman:

Our 30b6 notices were received by you 20 days ago.  Today is the deadline for Quiksilver to designate representatives for the deposition.  Moreover, the deposition of Quiksilver is to take place on Thursday of next week.

In the interest of cooperation, I have been trying to coordinate with your firm regarding this deposition; however, you rejected my offers to work with you.  I was very happy to hear from Steve before his vacation that he was interested in a telephone conference in order to work through this amicably, yet I was very disappointed to learn from Barry and Justin that Quiksilver was not at all ready to discuss this matter.

It is not acceptable for Day Pitney to continue "working through the issue," and it is improper for Day Pitney to simply provide this information at its leisure.  Please provide us with a list of your 30(b)(6) representatives, the topics about which they will testify, and their availability if different from the date in the notice by the close of business today.


Thanks,

Dan Levy

---

**From:** Benjamin, Barry [mailto:BBenjamin@daypitney.com]
**Sent:** Thursday, July 10, 2008 5:53 PM
**To:** Dan Levy; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; mrosenberg@sillscummis.com
**Subject:** RE: Rule 26a1 disclosures

It is truly frustrating to have to continually correct the written record in response to your elisions.  It has not been "one week" to respond to your "emails and phone calls."  I will let the record speak for itself on that point.

In any event, I will not return your telephone call at this point, as I don't see any benefit to anyone, and limit this response to writing.  Hopefully we can communicate by telephone in the future, in a productive and beneficial manner.

In response to your inquiry, we are serving the Initial Disclosures regarding the Counterclaims within 24

hours. Regarding the color copies of the catalogs, you will also receive those within 24-48 hours. Regarding the identities of the Quiksilver 30(b)(6) witnesses and the areas of their knowledge, we are working through that issue, and will provide this information as soon as we can.

Barry


Barry M. Benjamin
Attorney at Law
Day Pitney LLP
7 Times Square | New York NY 10036-7311 | *t* (212) 297-5835 | *f* (212) 916-2940
bbenjamin@daypitney.com | www.daypitney.com | *m* (917) 560-1094
*******************************************************************************************
IRS Circular 230 Notice: Any tax advice provided herein (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed on any taxpayer.
*******************************************************************************************


-----Original Message-----
**From:** Dan Levy [mailto:dan.levy@bozlaw.com]
**Sent:** Thursday, July 10, 2008 5:33 PM
**To:** Benjamin, Barry; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Barry:

This is to confirm that instead of returning my phone call, you sent me a ridiculous, condescending email. I am still awaiting your call, and I apologize if my insistence that you respond to my emails and phone calls within one week's time inconveniences you.


Thanks,

Dan Levy

**From:** Benjamin, Barry [mailto:BBenjamin@daypitney.com]
**Sent:** Thursday, July 10, 2008 5:01 PM
**To:** Dan Levy; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany
**Subject:** RE: Rule 26a1 disclosures

Really? You needed to send me an email confirming that you left me a voice mail? Really?

If you are going to insist on conducting matters in this fashion, and telephone calls are insufficient for you, then perhaps we should limit ourselves entirely to written communications so that everything is documented.

I do not generally conduct litigation in this fashion. I get along with and have a good relationship with all of my adversaries, save for a very small number.

Dan, you are new to this. You have a long career ahead of you. I suggest that you re-evaluate how you conduct yourself. Your conduct in this matter has not been, in my experience, common in the industry.

I will call you shortly.

Barry

-----Original Message-----
**From:** Dan Levy [mailto:dan.levy@bozlaw.com]
**Sent:** Thursday, July 10, 2008 4:26 PM
**To:** Benjamin, Barry; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Barry:

I just left you a voicemail; please call me back.

Thanks,

Dan Levy

**From:** Benjamin, Barry [mailto:BBenjamin@daypitney.com]
**Sent:** Thursday, July 10, 2008 4:03 PM
**To:** Dan Levy; Feingold, Stephen
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany
**Subject:** RE: Rule 26a1 disclosures

Dan - as I am sure you know by now, Steve and I called you at around 3:00 today. We got your voice mail, so we left a message. We await your return phone call.

Barry

-----Original Message-----
**From:** Dan Levy [mailto:dan.levy@bozlaw.com]
**Sent:** Thursday, July 10, 2008 2:19 PM
**To:** Feingold, Stephen; Benjamin, Barry
**Cc:** Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

What time are you planning on calling?

Thanks,

Dan Levy

**From:** Feingold, Stephen [mailto:SFeingold@daypitney.com]
**Sent:** Thursday, July 10, 2008 1:52 PM
**To:** Dan Levy
**Cc:** Benjamin, Barry; Morgan, Mark; Kayal, Justin M.; John Bostany
**Subject:** RE: Rule 26a1 disclosures

I have been in client meetings/conference calls since returning to the office. Barry and I will call you today.

Stephen W. Feingold
Day Pitney LLP
7 Times Square
New York, NY 10036

212-297-5845 (NY Office)
212-916-2940 (Fax)
203-977-7563 (Stamford Office)

Day Berry & Howard and Pitney Hardin merged to become Day Pitney LLP effective
January 1, 2007.

-----Original Message-----
**From:** Dan Levy [mailto:dan.levy@bozlaw.com]
**Sent:** Thursday, July 10, 2008 1:13 PM
**To:** Feingold, Stephen
**Cc:** Benjamin, Barry; Morgan, Mark; Kayal, Justin M.; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Steve:

I have not heard from you, and I left you another voicemail today.  Please
respond


Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Wednesday, July 09, 2008 6:33 PM
**To:** 'Feingold, Stephen'; 'Benjamin, Barry'
**Cc:** 'Morgan, Mark'; 'Kayal, Justin M.'; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Steve:

Now that you are back from vacation, I hope that we can resolve some of these
issues that your colleagues left lingering during your absence.  I tried to reach
resolution with Barry Benjamin, Mark Morgan, and then Justin but was
unsuccessful.

You still have not made your 26a1 disclosures; these are very much overdue
and you are in violation of Rule 26.  During my conversation with Justin, he
confirmed that although my 3 previous requests for these disclosures were
received, Day Pitney still has not completed its draft and it is presently unknown
when Day Pitney will complete this.

You still have not gotten back to me regarding the 30b6 witnesses.  I spoke with
Justin earlier today, and he advised me that Day Pitney has not yet resolved
this issue with Quiksilver further complicating our ability to take this discovery.

I still have not received color copies of the Quiksilver catalogs.  As I further
explained to Justin earlier today, Quiksilver produced 3 or 4 different catalogs in
black and white, which were very difficult to read since they are almost entirely
composed of photographs.  Although Mark Morgan sent me a color version of
one of these catalogs in PDF format, I still have not received a color version of

any of the other catalogs.  Does your client not have any catalogs that it can simply send us?

I left you a voicemail earlier today since you advised me that you would be back in the office this afternoon, and I hope that we can promptly resolve all of these issues once you return my call.

Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Monday, July 07, 2008 1:10 PM
**To:** 'Feingold, Stephen'; 'Benjamin, Barry'
**Cc:** 'Morgan, Mark'; 'Kayal, Justin M.'; John Bostany; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Steve and Barry:

I have still heard nothing from your firm regarding the Rule 26(a)(1) disclosures.  For some reason you have ignored all of my previous emails, and I am now writing for the third time on this issue concerning disclosures that are way overdue.

Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Thursday, July 03, 2008 11:56 AM
**To:** 'Feingold, Stephen'; 'Mark J. Rosenberg'; Benjamin, Barry
**Cc:** 'Morgan, Mark'; 'Kayal, Justin M.'; 'Mark Olinsky'; John Bostany; Ron Paltrowitz; Dan Levy
**Subject:** RE: Rule 26a1 disclosures

Gentleman:

I wrote you earlier this week regarding the Rule 26(a)(1) disclosures and I am now writing to follow up.  Again, please cure this violation as soon as possible.

Thanks,

Dan Levy

**From:** Dan Levy
**Sent:** Wednesday, July 02, 2008 3:03 PM
**To:** Feingold, Stephen; Mark J. Rosenberg
**Cc:** Morgan, Mark; Kayal, Justin M.; Mark Olinsky; John Bostany; Ron Paltrowitz; Dan Levy
**Subject:** Rule 26a1 disclosures

Gentleman:

Your Rule 26(a)(1) disclosures regarding your counterclaims are well overdue. Please cure this violation as soon as possible to avoid judicial involvement.