UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

GMA ACCESSORIES, INC.,

            Plaintiff,

    - against -

QUIKSILVER, INC., NORDSTROM, INC.,
and JILL STUART, INC.,

           Defendants.

------------------------------------------------------x

07 CV 11527 (VM) (RLE)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION TO COMPEL DISCOVERY**

**PRELIMINARY STATEMENT**

This matter was referred by Hon. Victor Marrero to Hon. Ronald L. Ellis for pre-trial issues on June 30, 2008. On July 1, 2008, the plaintiff GMA Accessories, Inc. ("GMA") submitted a letter application to Hon. Ronald L. Ellis summarizing the disputes at that time. At a pre-trial hearing before this court, Hon. Ronald L. Ellis directed the parties to make submissions regarding Quiksilver's purported difficulties in producing orders and invoices for CHARLOTTE products by August 13. With regard to GMA's request for travel costs pursuant to Local Rule 30.1, the court directed briefing from the parties by August 13.

**FACTS**

As laid out in the accompanying Declaration of John P. Bostany dated August 13, 2008, GMA served defendant Quiksilver, Inc. ("Quiksilver") with its discovery requests on April 9,

- 1 -

2008. Quiksilver failed to produce orders and invoices, despite GMA's constant efforts to secure them, and its spreadsheets were incomplete, only covering a brief period and only some products.

## ARGUMENT

### Point 1:  Quiksilver should produce summary reports for all CHARLOTTE products sold by Quiksilver in the past six years and the orders and invoices with regard to these products

Quiksilver contends that it is too difficult to respond to these requests, despite the fact that they have had more than *four months* to do so. The issue is whether Quiksilver's blanket allegation is sufficient to discharge its burden under Fed.R.Civ.P. Rule 26.

Pursuant to Rule 26, parties may obtain discovery regarding any relevant matter. *See* Fed.R.Civ.P. Rule 26(b)(1). When discovery is sought from electronically stored sources, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. *Id*. at (b)(2)(B). It is clear that Rule 34 applies to electronic data compilations, and electronic records are no less subject to disclosure than paper records, even if they are not currently in use and have been deleted and stored on backup disks. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316, 317 (S.D.N.Y. 2003). Even when the electronically stored records have been summarized and produced in a report, the underlying records still must be produced. *See Margel v. E.G.L. Gem Lab Ltd.*, 2008 WL 2224288 at *5 (S.D.N.Y.).

In this case, Quiksilver's production can best be broken down into two major issues. First, Quiksilver failed to produce *any* discovery whatsoever regarding products other than the hat and hoodie, despite the fact that Quiksilver admitted that, in the least, it manufactured shorts,

tank tops and thermal tops using CHARLOTTE in addition to the hat and hoodie. Quiksilver also failed conduct further searches for infringing products that GMA has not identified for them.

Within the Second Amended Complaint annexed as **Exhibit A**, GMA alleges, among other things, the following: "Defendants were aware or should have been aware of the GMA marks before it began using CHARLOTTE to identify its headgear, clothing, and/or bags" (¶28); "Defendants …and those acting in concert with it have used the mark CHARLOTTE alone and/or in conjunction with generic or descriptive terms and/or other brands to identify headgear, clothing, and/or bags" (¶30); "Defendants …along with its customers and agents are intentionally infringing and have in the past intentionally infringed upon the CHARLOTTE mark" (¶31); "Since at least 2006, Defendant QUICKSILVER sold an infringing line of 'CHARLOTTE' headgear and clothing" (¶39); "The goods that Defendants advertise, promote, sell, or offer for sale in connection with the CHARLOTTE mark are products closely related to those for which GMA owns registered trademarks and are in the same Class for which GMA owns a trademark registration to the mark CHARLOTTE" (¶53); "Defendants have been offering for sale products using a confusingly similar name, e.g., CHARLOTTE" (¶61); etc.

The Second Amended Complaint is in no way limited to a discrete selection of infringing goods; as stated above, quite the opposite is the case. Information regarding products that use GMA's CHARLOTTE trademark is clearly relevant to this trademark infringement case to determine both the extent of the infringement and the manner in which the mark was used by defendants in sales. Therefore, these documents are discoverable under Rule 26, and the spreadsheets in order to answer the interrogatories must be completed.

The second issue is Quiksilver's view that they should only be required to produce a summary report of electronic records (something it has yet to do) to exhaust its obligations

pursuant to the Federal Rules, and that it is overly burdensome for them to produce the underlying records (i.e. purchase orders, invoices, sales orders, etc.). These records are clearly discoverable because electronic records and documents are no less discoverable than their paper equivalents. *See Zubulake, supra.*

Where, as here, a defendant seeks to preclude discovery of electronic records, it is that party's burden to show that the information is not reasonably accessible. *See* Fed.R.Civ.P. Rule 26(b)(2)(B). However, Quiksilver has not alleged that the data in question is erased, fragmented or stored in some form of inaccessible medium. Rather, the data is stored on Quiksilver's computer systems and/or off-line storage/archive devices, and all of these forms of data storage are "deemed accessible" within the meaning of Rules 26 and 34. *See Zubulake,* at 318-321 (holding that active, on-line data, data stored in robotic library storage devices, and data stored in removable optical disks [i.e. CD's and DVD's] or magnetic tape are all "deemed accessible" because the data does not need to be manipulated in order to be usable). In fact, the court in *Zubulake* specifically stated that such data is still "deemed accessible" even if it takes days for people to search through it. *Id.* at 320. Accordingly, Quiksilver cannot avoid producing these documents based on undue burden and cost.

Quiksilver also contends that an order requiring them to produce summary reports of the underlying data would be sufficient under the Rules. When faced with this same issue, Judge Pitman commented that, "it is beyond question that the report produced in discovery could not even be admitted on [defendant's] motion unless the underlying data were produced to plaintiffs." *Margel v. E.G.L. Gem Lab Ltd.* at *5 citing Fed.R.Evid. 1006. Judge Pitman also noted that the electronic data is necessarily not in a form that is identical to a report prepared on the basis of that data. *Id.* The instant case is identical to this situation, and therefore,

Quiksilver's obligation to produce its documents is not satisfied if and when it produces a summary report.

### Point 2: Quiksilver should advance GMA's travel costs for depositions outside of this forum pursuant to Local Rule 30.1

Quiksilver was noticed for depositions pursuant to a Rule 30(b)(6) notice, dated June 20, 2008. According to the notice, the deposition was to take place on July 17 at the offices of GMA's attorneys in New York. At no point did Quiksilver ever make a motion to quash or modify the subpoena. Quiksilver demanded that the depositions should occur in California. GMA could have moved for an order to compel Quiksilver to appear in New York for its deposition, yet it agreed to conduct the deposition in California if Quiksilver gave us a date, agreeing to postpone the issue of Quiksilver's payment of travel costs and fees pursuant to Local Rule 30.1. Quiksilver did not accept this invitation despite GMA's earnest attempts to secure the deposition dates.

While there is a presumption that a defendant shall be deposed in the district where the deponent resides or has a principal place of business, that presumption can be overcome by the considerations of forum choice, cost, convenience and litigation efficiency. *Devlin v. Transportation Communications Intern. Union*, 2000 WL 28173 at *3 (S.D.N.Y. 2000); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550-52 (S.D.N.Y. 1989) ("courts retain substantial discretion to designate the site of a deposition"). *See also Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) ("Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum for the convenience of all parties and in the general interests of judicial economy.").

*Choice of Forum*

Where the plaintiff is constrained in its choice of forum, the presumption is diminished. *Devlin*, 2000 WL 28173 at *3. *See also Mill-Run Tours, Inc.*, 124 F.R.D. at 550 ("although the plaintiff initiated the litigation in this district, it had little choice"). Here, since Quiksilver operates throughout the country and distributors of the alleged infringing items operate in New York, and the Plaintiff is a New York entity, the logical choice of forum was the Southern District of New York.

*Cost*

**Quiksilver is a huge, publically traded company with a market cap of over $1 billion; it can easily handle the cost of transportation to New York, a state in which it purposely transacts business.** *See Sugarhill Records, Ltd.*, 105 F.R.D. at 171 ("Motown is a large corporation and cannot seriously contend that travel on behalf of the corporation by one of its managing agents is unexpected or that such travel to New York for deposition imposes a severe burden on it.").

*Convenience*

The convenience factor includes considerations of hardship to counsel, the residence of the deponents and the extent to which the witness' affairs might be disrupted. *Devlin*, 2000 WL 28173 at *4. **All of the parties' law firms are located in this forum and therefore, it would be in the interests of all counsel to hold the depositions in New York.** *Mill-Run Tours, Inc.*, 124 F.R.D. at 551 ("the interests of counsel would best be served by holding the depositions in

New York, since the attorneys all practice here…plaintiff's counsel is a solo practitioner, making it more difficult for him to arrange his schedule to take depositions aboard").

Plaintiff's counsel is a 2 lawyer firm and it would present far greater difficulty for it to send 1 of its 2 lawyers to the west coast. Quiksilver, on the other hand, has not asserted that the witnesses that they plan to produce are key members of the corporation whose absence for an extra day would disrupt their organization. *Sugarhill Records, Ltd.*, 105 F.R.D. at 171 ("Rather than make all three attorneys (and probably others with them) travel to Los Angeles, it seems wiser to have one witness come here."). *See also Mill-Run Tours, Inc.*, 124 F.R.D. at 551 ("the defendants have failed to provide affidavits demonstrating in any detail how their businesses or other interests might be harmed if they were to take the time to come to New York for deposition").

*Litigation Efficiency*

Litigation efficiency refers to both access to corporate documents and judicial supervision. *Devlin*, 2000 WL 28173 at *4. Documents are typically brought to the deposition by the attorney taking it. If the deposition is held in New York, counsel will not have to lug presumably thousands of documents through airports. Judicial supervision is best accomplished if the depositions are in New York, which is in the same time zone as this court is located, as opposed to Quiksilver's requested location in a different time zone. *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968) ("Certainly, the depositions could be scheduled to take place at such a time and in such a way that would be most convenient" for the travel of witnesses to New York).

However, if Quiksilver's witnesses are truly unavailable within the Southern District, Local Civil Rule 30.1, allows the Court to direct travel expenses to be borne by the out of state corporation. *Sugarhill Records, Ltd.,* 105 F.R.D. at 171 (defendants given choice of either paying for plaintiff's costs or proceeding in New York). Therefore, it is appropriate for Quiksilver to either produce its witnesses in New York or advance GMA's travel costs and fees.

## CONCLUSION

Wherefore, GMA respectfully requests that this court order Quiksilver to produce (i) summary reports for all CHARLOTTE products sold by Quiksilver in the past six years; (ii) the orders and invoices with regard to these products; and, (iii) its witnesses in New York or advance GMA's travel costs and fees for Quiksilver's depositions in California.

Dated: New York, New York
      August 13, 2008

Respectfully submitted,

By: John P. Bostany
THE BOSTANY LAW FIRM
Attorneys for Plaintiff
40 Wall Street – 61st Floor
New York, New York 10005